UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 26-cr-25 (LMP/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NEKIMA LEVY-ARMSTRONG, )<br>)<br>Defendant. ) | **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO MODIFY CONDITIONS OF RELEASE** |

Defendant Nekima Levy Armstrong, through undersigned counsel, hereby submits her reply to the government's opposition to her motion to modify conditions of pretrial release. (Doc. 89). A reply is necessary to address inaccurate factual and legal arguments.

The government first asserts that the fact that three similarly situated co-defendants were subsequently released on their own recognizance without any Additional Conditions of Release is irrelevant.[1] The government provides no authority that states or holds that a court should not consider its treatment of similarly situated defendants or co-defendants when determining what if any conditions of release are appropriate. 18 U.S.C. § 3142(a-c), which the government cites, sets forth the options for release but does not state any standards for determining conditions of release. There is nothing to indicate that the Court should not consider its treatment of similarly situated defendants when

---

[1] The government correctly observes that the three co-defendants referenced in Ms. Levy Armstrong's motion were Crews, Fort and Lundy.

addressing issues relating to pretrial release.[2] It is not only appropriate but also necessary for the Court to consider treatment of similarly situated Defendants, particularly in the same case, in order to ensure that its rulings are not arbitrary or discriminatory. The fact that other co-defendants were released without any conditions provides justification for removing unnecessary conditions attached to Ms. Levy Armstrong's release.

The government also asserts that it "it is not workable" to compare decisions for other defendants. It provides no support for this proposition. The Reports of the co-defendants are not by any means voluminous or complicated. Like Ms. Levy Armstrong, they all lack criminal records, have stable lives and strong ties to the community. It is simple for the Court to recognize that there is no rational basis for Ms. Levy Armstrong to be treated differently.

The government next asserts that Ms. Levy Armstrong "is differently situated from at least some of her co-defendants." (Doc. 89 at 4). It refers to "facts set forth in Defendants' Pre-Trial Services Report" but fails to explain how the facts are materially different. The government next relies on allegations that in the complaint affidavit and Indictment that Ms. Levy Armstrong was the organizer or leader of the protest at the

---

[2] See United States v. Montoya-Vasquez, 2009 U.S. Dist. LEXIS 2148, *11 (D. Neb. Jan. 13, 2009)(When determining whether the threat of ICE removal was grounds for denying release, the court noted that "**similarly situated defendants** without alien status and ICE detainers have routinely been released by this court.")(emphasis added).

Cities Church. In this case, her leadership of the action is irrelevant to whether she poses any danger to the community or risk of flight. It is critical to recognize that unlike a more typical federal case, Ms. Levy Armstrong is not accused of being a leader of a drug trafficking conspiracy, a gang, a fraud ring, a terrorism plot, or anything that would normally be considered criminal activity or dangerous. She was the leader of a non-violent political protest. There is no dangerousness or risk of flight demonstrated by leading a non-violent political protest. It is fundamentally wrong and a constitutional affront to label her as dangerous for exercising her First Amendment rights. To the contrary, Ms. Levy Armstrong's status as a respected community leader lessens any concerns about danger or risk of flight.

The government also vaguely references its proffer at the initial appearance "facts bearing on issues of flight and/or Defendant's willingness to comply with basic conditions." (Doc. 89 at 5). The defense cannot ascertain what the government is referring to. In the next section the government gets a little more specific, referencing its unsubstantiated proffer that Ms. Levy Armstrong "was hiding out in a hotel with one co-defendant and appeared to notice that she was being followed and then fled back to her hotel." (Id. at 6). This proffer consisted solely of statements by the prosecutor without any documentary or other evidentiary support. The Magistrate Judge noted the lack of support

for the proffer and rightly chose to not give it weight. It should not be considered as a justification for imposing stricter conditions of release.[3]

The government finally argues that the conditions of release currently in place are not unduly restrictive while conceding that her husband should not be precluded from keeping his guns in the home. As explained, the conditions are unduly burdensome, and most importantly degrading to Ms. Levy Armstrong. She is a responsible respected upstanding leader in the community. She is a civil rights leader whose dignity is fundamental to her identity. Her dignity is undermined by having to be actively supervised by a probation officer, required to get permission to travel, and report to a probation officer any contact with law enforcement regardless of whether the contact has any relevance to the case.[4]

---

[3] The Magistrate Judge did not allow Ms. Levy Armstrong's counsel to respond to the government proffer because it was not material to the Court's decision. Had Ms. Levy Armstrong been given an opportunity to respond, she would have vigorously denied that she knew she was being followed and "fled" back to her hotel. She also would have explained that she was staying at a hotel because she had been receiving death threats as a result of top officials in the government denouncing her in the media, and because she was trying to be in a location where she could facilitate her self-surrender at the federal court several blocks away. As previously explained, the government through United States Attorney Daniel Rosen himself refused to allow Ms. Levy Armstrong to self-surrender at the courthouse but instead insisted on arresting her at the hotel where one of the arresting agents video recorded her arrest on his cell phone. Despite the agent promising that the video would not be on Twiiter, a photo of her being arrested was placed on DHS Secretary Kristi Noem's Twitter Feed, and then digitally altered to portray Ms. Levy Armstrong in a false and derogatory light and published on the White House Twitter feed.

[4] Ms. Levy Armstrong maintains her First Amendment right to participate in protests against the current federally imposed police state as well as any other issue she chooses. Incidental contact with law enforcement officers is very common at such actions. This

## CONCLUSION

For the foregoing reasons, Ms. Levy Armstrong respectfully requests that the Court grant her motion to modify the conditions of her release.

Dated:  February 9, 2026               LAW OFFICE OF JORDAN S. KUSHNER

                                       By s/Jordan S. Kushner
                                          Jordan S. Kushner, ID 219307
                                          Attorney for Defendant
                                          431 South 7th Street, Suite 2446
                                          Minneapolis, Minnesota  55415
                                          (612) 288-0545
                                          jskushner@gmail.com

---

requirement effectively compels Ms. Levy Armstrong to report to probation her political activities, further violating her First Amendment rights as this prosecution itself does.