**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal Case No. 26-25 (4)(8) (LMP/DLM)**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>[4] Don Renaldo Lemon, and<br>[8] Georgia Ellyse Fort,<br><br>Defendants. | **DON LEMON'S AND GEORGIA FORT'S JOINT OBJECTIONS TO JUNE 10, 2026 ORDER (ECF 540) DENYING JOINT MOTIONS FOR DISCLOSURE OF GRAND-JURY AND *BRADY* MATERIALS** |

Pursuant to Local Rule 72.2(a), Don Lemon and Georgia Fort respectfully object to those portions of the Magistrate Judge's June 10, 2026 Order ("Order"), ECF 540, denying their Joint Motions for Disclosure of Grand Jury Proceedings, ECF 125, and *Brady* Materials, ECF 413 (together, "Motions"). Because the Order is clearly erroneous and contrary to law in multiple respects, it must be set aside. The Court should, instead, order immediate disclosure of the full grand-jury transcripts to the defense or, alternatively, *in camera* review, which even the government concedes is appropriate.

## INTRODUCTION

There is substantial evidence of grand-jury irregularities in this case. Multiple judges, including at the Eighth Circuit, found there was no probable cause to charge Lemon and Fort. A federal agent falsely attested repeatedly to judges that Lemon and Fort engaged in "chanting" inside the Church, including to obtain a search warrant for Lemon's iPhone—an allegation not originally present in the denied complaint affidavit, and which was subsequently revised in future affidavits to clarify that only "some"

individuals had engaged in "chanting."[1] Another judge found no probable cause for warrants seeking subscriber information from Lemon's and Fort's YouTube channels. And the government persuaded the grand jury to indict at least one person, only to concede she was completely uninvolved in the events. Meanwhile, the government admits to making material misrepresentations about Fort in at least *eight* affidavits, but tellingly refuses to confirm whether it repeated those falsehoods to the grand jury. Despite these glaring irregularities—or perhaps because of them—the government has yet to produce all but one of the grand-jury transcripts, even those plainly containing *Brady* material, such as those containing misstatements that led to the indictment of an innocent person and the accusation that Lemon and Fort conspired with her.

Given this prosecution's checkered history, Lemon and Fort respectfully ask that the Court review the grand-jury proceedings to ensure no further improper conduct occurred. They do not make this request lightly. But the grand jury is not merely an investigative tool of the prosecution; it is also a "protector of citizens against arbitrary and oppressive governmental action" and "unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1984). There is every indication that the government prohibited the grand jury from playing that pivotal role here. Review of those

[1] The same agent reversed course in a subsequent affidavit used to obtain Lemon's cellphone, claiming "video obtained from Cities church shows" Lemon and Fort "chanting with agitators." *In the Matter of the Search of the Gold iPhone Described in Attachment A*, No. 26-MJ-106 (2/2/2026 Gerber Aff. ¶ 54). Agent Gerber reversed course yet again in subsequent affidavits seeking information from Lemon and Fort's YouTube Channels. *See In re Search Warrant*, No. 26-MJ-205 (3/6/2026 Gerber Aff. ¶ 25) (seeking information for YouTube Channel @TheDonLemonShow); *In re Search Warrant*, No. 26-MJ-206 (3/6/2026 Gerber Aff. ¶ 17) (seeking information for YouTube Channel @GeorgiaFort).

proceedings is therefore warranted.

## ARGUMENT

### I. THE ORDER'S PRIMARY CONCLUSION—THAT THE GOVERNMENT CAN MISINSTRUCT THE GRAND JURY—IS CONTRARY TO LAW

The Order rests on the flawed premise that, because the government is not required to provide legal instructions to the grand jury, it may provide demonstrably incorrect instructions. Order at 6, 7. Eighth Circuit precedent says otherwise.

Specifically, although there is "no obligation to give the grand jury legal instructions," *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) (involving no misinstruction), the Eighth Circuit does not permit "flagrantly misleading" the grand jury through *erroneous* legal instruction, *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994). To the contrary, in "guiding the progress of the grand jury," the government "may not engage in fundamentally unfair tactics or deliberately mislead the jury." *United States v. Lame*, 716 F.2d 515, 518 (8th Cir. 1983) (in addition to legal misinstruction, the government "may not, for instance, introduce evidence" it knows is "perjured, or conceal substantial evidence negating guilt").[2]

---

[2] Still pending before the Magistrate Judge is Fort's Motion for Disclosure. Order at 2 n.5 (addressing ECF 528). Unlike the Motions here, which addressed the substantial likelihood that the government presented materially misleading *legal* instructions, that motion addresses numerous falsehoods about Fort recited in (a) sworn search-warrant affidavits submitted to multiple judges, ECF 539 (admitting same), and (b) the superseding indictment—all of which are uniformly contradicted by witness statements, video footage, and the one grand-jury witness whose testimony has been produced, ECF 542, 544 at 1-2. Lemon and Fort respectfully suggest the need for disclosure of grand-jury transcripts, including as *Brady* material, is further bolstered when these additional misrepresentations are viewed together with those discussed herein. *See United States v. Peralta*, 763 F. Supp. 14, 20 (S.D.N.Y. 1991) (combination of improper instructions and

The Order's reliance on *United States v. Finn*, 919 F. Supp. 1305 (D. Minn. 1995) and *United States v. Buchanan*, 787 F.2d 477 (10th Cir. 1986), was misplaced. Although the Order recites *Finn*'s subsequent history, Order at 6, the defendant did not object to the pertinent portion of the ruling, including on appeal; accordingly, neither the district court nor the Eighth Circuit considered whether the grand jury was misinstructed on the law. *See* 911 F. Supp. at 373-74, *aff'd sub nom. United States v. Pemberton*, 121 F.3d 1157, 1164-66 (8th Cir. 1997). And, in *Buchanan*, the Tenth Circuit acknowledged that even dismissal may be warranted where, as here, a misstatement of law "significant[ly] infringe[s] on the grand jury's ability to exercise independent judgment." *Buchanan*, 787 F.2d at 487. Accordingly, the Order must be set aside on this basis.

## II. THE CONCLUSION THAT PUBLIC MISSTATEMENTS OF LAW BY SENIOR GOVERNMENT OFFICIALS ARE IRRELEVANT HERE IS BOTH CLEARLY ERRONEOUS AND CONTRARY TO LAW

The Order also ruled that "specific statements by DOJ officials" do "not translate to a showing that those involved in presenting this matter to the Grand Jury made any inappropriate statements or engaged in improper conduct." Order at 7. But this conclusion glosses over the actual circumstances here.

As detailed in the Motions, not only did then-Attorney General Bondi and Assistant Attorney General Dhillon comment extensively to the press, but they were themselves both directly involved in this case. AG Bondi bragged on social media that

---

misleading factual testimony before grand jury—which "went both to the quality of the evidence before the grand jury and to the requirements of the legal theory at the core of the government's case"—justified dismissal) (citing *Bank of Nova Scotia v. United States,* 487 U.S. 250, 256 (1988)).

Lemon and Fort were arrested "[a]t my direction."[3] After career prosecutors from the Minnesota U.S. Attorney's Office refused to prosecute this case, AAG Dhillon's Civil Rights Division took it over. AG Bondi and AAG Dhillon personally flew to Minnesota for the grand-jury presentation. ECF 125 at 5-9. Their names are the first ones listed on both indictments. ECF 39 at 14; ECF 144 at 19. Further, although the government suggests otherwise, ECF 479 at 14, the grand-jury testimony disclosed so far reflects only Civil Rights Division attorneys involved in the presentation. ECF 545-1.

It is equally clear such direction or influence by administration officials can fatally infect a case and its presentation to the grand jury. *See United States v. Abrego Garcia*, No. 3:25-cr-00115, ECF 312 at 12-21 (M.D. Tenn. May 22, 2026). There, the Court dismissed the indictment because, like here, the government rushed to indict; local prosecutors and Main Justice had extensive contact up "until the indictment was returned," *id.* at 21; senior administration officials, including now-Acting Attorney General Blanche, issued public statements demanding prosecution and prejudging the case; and the attorneys who presented to the grand jury report directly to those officials. *Id*. at 27. At a minimum, those same factors warrant conducting *in camera* review of the grand-jury transcripts here.

## III. THE CONCLUSION THAT SECTION 248(d)(1) AND THE FIRST AMENDMENT ARE "AFFIRMATIVE DEFENSES" IS CONTRARY TO LAW

Confronted with these public statements, the government all but conceded it misinstructed the grand jury about how the FACE Act must be construed under its

[3] https://x.com/AGPamBondi/status/2017238803639845115.

express terms and the Constitutional limitations on Sections 241 and 248. ECF 479 at 10-12; *see* 18 U.S.C. 248(d)(1) (excluding from law's scope "any expressive conduct … protected from legal prohibition by the First Amendment"). Indeed, the government forcefully defended as "correct" AAG Dhillon's statement that the FACE Act applies to "*anyone*" interfering "with those exercising the right of religious freedom at a house of worship, *for any reason*," ECF 479 at 9, despite both the statute and the First Amendment saying otherwise.

The government attempted to wave away this glaring defect in its presentations by claiming that this statutory rule-of-construction and the First Amendment are *affirmative defenses* that need not be addressed. Not so. The Order's adoption of this argument was contrary to law. Order at 8.

Multiple courts have recognized that the FACE Act itself describes Section 248(d) as a "Rule of Construction" that limits what is deemed criminal conduct in the first place. *See*, *e.g.*, Minute Order, *United States v. Handy*, No. 22-cr-096 (D.D.C. Aug. 14, 2023) (Section 248(d) is "a rule of construction," "not an affirmative defense"); *Planned Parenthood Ass'n of Se. Pa., Inc. v. Walton*, 949 F. Supp. 290, 293 (E.D. Pa. 1996) (FACE Act "*by its terms* may not be *construed* to prohibit any expressive conduct" protected "by the First Amendment"); *United States v. Gallagher*, 2024 WL 71705, at **1, 6-7 (M.D. Tenn. Jan. 5, 2024) (FACE Act's rule-of-construction and definitions "draw the line between lawful" and unlawful conduct). The government has not pointed to a single case to the contrary.

Similarly, multiple courts have properly recognized that the First Amendment establishes a constitutional floor for what may be criminalized and therefore is not merely an affirmative defense. *See Jingrong v. Chinese Anti-Cult World All.*, 314 F. Supp. 3d 420, 438 (E.D.N.Y. 2018) (so holding); *United States v. Dinwiddie*, 76 F.3d 913, 921-27 (8th Cir. 1996) (failing to characterize defendant's constitutional arguments limiting FACE Act as affirmative defenses); *N.Y. ex rel. Spitzer v. Operation Rescue Nat'l*, 273 F.3d 184, 195 (2d Cir. 2001) (nowhere characterizing First Amendment limitations on FACE Act as affirmative defenses and cautioning that "erroneous application of [the law]" necessarily "threatens to impinge legitimate First Amendment activity"); *Gallagher*, 2024 WL 71705, at **6-7 (analyzing First Amendment limitation on FACE Act separately from defendants' affirmative defenses); Aug. 14, 2026 Minute Order, *Handy* (same).[4]

In contrast, none of the cases the government cited involves the FACE Act or the obligation to accurately instruct grand juries on a statute's rules of construction. *See* Part I, *supra*. Three involve self-defense claims, the quintessential affirmative defense. *See Guam v. Cruz*, 913 F.2d 748, 749-50 (9th Cir. 1990); *United States v. Clark*, 2011 WL 1990443, at *1 (D. Minn. May 23, 2011) ("Self-defense is an affirmative defense and not an element of any of the crimes charged."); *United States v. Clark*, 2011 WL

[4] Without any analysis, two older decisions in civil cases recited in passing the defendants' own characterizations of their First Amendment arguments as affirmative defenses, but then analyzed First Amendment limitations on penalizing protected conduct separately from actual defenses. *See United States v. Scott*, 958 F. Supp. 761 (D. Conn. 1997); *United States v. Vazquez*, 145 F.3d 74 (2d Cir. 1998) (affirming dismissal because First Amendment protected defendant's conduct and government therefore failed to state a claim).

2015224, at *3 (D. Minn. Apr. 15, 2011) (similar). The government's reliance on them was therefore misplaced. *See also* Order at 8 (citing *Clark*, 2011 WL 2015224).

*United States v. Sisson*, 399 U.S. 267 (1970), actually undermines the government's point. After concluding that its lacked jurisdiction (because the case arose out of a directed verdict acquitting Sisson), the Supreme Court noted in *dicta* that his conscientious-objector claim did not call into question the sufficiency of the indictment because the indictment did not "allege facts that themselves demonstrate the availability of a constitutional" limitation on the charge. *Id*. at 288.

By contrast, the superseding indictment here expressly alleges that Lemon and Fort engaged in paradigmatic journalistic conduct: newsgathering before and during the events, interviewing key participants, and disseminating that information to the public. ECF 144 ¶¶ 8(13), (15), (32), (35), (41). Thus, even under *Sisson*'s *dicta*, the government was required to explain the limits imposed by Section 248(d) and the First Amendment precisely because the facts alleged "demonstrate the availability of a constitutional limitation" on indicting Lemon and Fort in the first place.

On this basis as well, the Order must be set aside.

## IV. THE ORDER FAILED TO ADDRESS SEVERAL OTHER KEY ISSUES

*First*, the Order denied the request for disclosure of the grand-jury materials under *Brady* because "the Court has [already] Ordered the government to comply with" *Brady* and "warned the government that failure to" do so "may result in consequences." Order at 9-10. But where, as here, there are serious questions about whether the transcripts contain *Brady* material—including because the government indicted Fort and Lemon for

conspiring with a person it concedes is factually innocent—failing to at least review them *in camera* is grounds to set aside the Order. *See United States v. Erickson*, No. 24-CR-7 (JMB/DLM), ECF 132 at 4 (D. Minn. May 12, 2025) (setting aside order denying request for grand-jury testimony and directing magistrate judge to review them for exculpatory evidence because "courts abuse their discretion when they deny a request for *in camera* review of nonpublic documents that possibly contain exculpatory evidence") (citing *United States v. Garcia*, 562 F.3d 947, 953 (8th Cir. 2009)); *Kyles v. Whitley,* 514 U.S. 419, 446 n.15 (1995) (information undercutting reliability or good faith of investigation informs whether withheld information is exculpatory); *Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 830 (10th Cir. 1995) (exculpatory information—such as, knowing "police were investigating" another person—would "have been useful in 'discredit[ing] the caliber of the investigation or the decision to charge the defendant,'" factors relevant under *Brady*).

*Second*, the government offered no response to the contention that a prosecutor's introductory remarks and legal instructions are not covered by Rule 6(e)'s secrecy provisions, ECF 125 at 10-11 n.16, conceding the argument. *See United States v. Greene*, 513 F.3d 904, 906 (8th Cir. 2008) (government's failure to respond constitutes waiver). The Order's failure to address this issue was error. The government should immediately produce those materials to the defense or, at a minimum, for *in camera* review.

*Third*, the government argued that it is entitled to a presumption of regularity here, including because it maintains a separation between prosecutors and other administration officials. *See* ECF 479 at 18 n.5, 19 (contending "the White House … does not speak for

the Department of Justice"). As explained above, the government cannot credibly maintain that its attorneys are operating independently of the Civil Rights Division, when it is in charge of this case.

Even if it could, there are numerous other grounds to deny it the presumption of regularity, as court after court has ruled. *See* ECF 125 at 20-25 (listing three dozen decisions so ruling). After the government raided a *Washington Post* reporter's home, multiple courts denied the government the presumption of regularity for failing to alert the signing judge to a federal statute generally prohibiting search warrants to reporters. *See In re Search of Real Prop. and Premises of Natanson*, 2026 WL 510727 (E.D. Va. Feb. 24, 2026), *R. & R. adopted*, 2026 WL 1458902 (E.D. Va. May 4, 2026). Here, the government *twice* improperly sought warrants for Lemon's and Fort's journalistic materials while failing to alert the judge to the same statute. *See In re Search Warrant*, No. 26-MJ-206-JFD, ECF 4 at 4-5 (D. Minn. Mar. 6, 2026) (citing *Natanson*).

Just last week, Chief Judge Schiltz quashed six grand-jury subpoenas, ruling they were "part of an unconstitutional effort to coerce Minnesota officials … and to harass and retaliate against them." *In re Grand Jury Subpoenas*, No. 26-MC-43 (PJS), ECF 1 at 14 (D. Minn. June 17, 2026). Relying on repeated public threats by the President and senior administration officials and the administration's "well-established" pattern of mis-using the criminal legal system against perceived adversaries, he deemed the government's conduct "a blatantly unlawful and unethical use of the grand-jury process," and ruled that any presumption of regularity, if it even applied, had been overcome, *id*. at 3-11, 15, 16 n.23; *see also* ECF 525 at 2-4 (listing recent cases nationwide rejecting presumption of

regularity).[5]

The prosecution of Lemon and Fort fits comfortably within the pattern of bringing deeply flawed prosecutions to appease administration officials: On January 20, the President demanded that everyone involved in the Cities Church protest be "thrown in jail, or thrown out of the country."[6] Within days, the government tried (and failed) to charge Lemon and Fort by complaint. Less than two weeks later, it indicted and publicly arrested them.[7]

Animated by similar concerns, Judge Tunheim recently dismissed a prosecution with prejudice to deter future prosecutorial harassment. *United States v. Ahmed*, No. 26-MJ-24 (JRT/ECW), ECF 73 (D. Minn. June 12, 2026). He determined that AG Bondi's social media posts announcing the defendant's arrest and other agencies' posts of her booking photo "violated a Court order, likely violated the Department of Justice's own policies, and undermined the presumption of innocence that lies at the heart of our criminal justice system." *Id*. at 11-12. The same conduct recently led Magistrate Judge

---

[5] Just yesterday, a *third* federal prosecution in Chicago was dismissed over "serious irregularities" in the grand-jury proceedings after the U.S. Attorney's Office discovered improper communications between a prosecutor and grand jurors. *United States v. Ishkirat*, No. 1:25-cr-00562 (N.D. Ill. June 23, 2026).

[6] https://truthsocial.com/@realDonaldTrump/posts/115926042315145030.

[7] *See also* https://truthsocial.com/@realDonaldTrump/posts/115239044548033727 (President's demand to prosecute James Comey and Letitia James); https://www.justice.gov/opa/pr/attorney-general-bondi-director-patel-statements-regarding-indictment-former-fbi-director (announcing first Comey indictment); https://www.justice.gov/usao-edva/pr/new-york-state-attorney-general-indicted (announcing James indictment).

Cohen Wright to recommend dismissal with prejudice in *United States v. Adbebe*, No. 26-MJ-77 (SRN/ECW), ECF 64 (D. Minn. June 3, 2026).

So too here. On January 29, after the indictment returned, the case was sealed. ECF 47-48. The next morning, the White House announced Lemon's arrest on social media, even though the case was not unsealed until that afternoon, ECF 60.




Senior administration officials also persisted in making public comments that prejudged Lemon and Fort, *see* ECF 125 at 5-8, violating DOJ policy and undermining the presumption of innocence to which Lemon and Fort are entitled.

*Fourth*, the government advanced several speculative arguments about why continued grand-jury secrecy is needed. ECF 479 at 16-17; ECF 539 at 14. None overcomes the substantial, particularized concerns Lemon and Fort have raised. *See In re*

*Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 308 (8th Cir. 1988) ("the continued need for secrecy is reduced" where the grand jury has "ceased its investigation"). In any event, the government's hypothetical concerns do not arise with *in camera* review or disclosure under seal to defense counsel. Further, one witness's testimony has already been produced and, to counsel's knowledge, none of the government's theoretical concerns has materialized.

## V. RECENT REVELATIONS FURTHER SUPPORT DISCLOSURE OR *IN CAMERA* REVIEW

In opposing the Motions, the government argued in the alternative that, "if this Court concludes there is a risk that the Government made misstatements before the grand jury, it should review the transcripts *in camera*." ECF 479 at 20. It claimed, however, that "Defendants have made no showing" here, *id*, and more pointedly, that Fort could not identify any misstatement about her, *id*. at 16. Those claims have not aged well.

After discovery and newly unsealed search warrant applications revealed that the government made numerous material misrepresentations of fact about her conduct, including under oath, Fort moved for disclosure or *in camera* review of the grand-jury materials. ECF 528; *see also* note 1, *supra*. In response, the government admitted those statements were false but disclaimed any harm because they were not included in the complaint affidavit or either indictment. ECF 539 at 1-5, 7-8. Yet, the government determined that "two lines" of grand-jury testimony needed to be reviewed *in camera*, *id*. at 16, and it refuses to say whether it presented those falsehoods to the grand jury. Worse, the recently disclosed testimony of the government's primary grand-jury witness wholly

rebuts the superseding indictment's principal averments about Lemon's and Fort's conduct. ECF 545 & 545-1. The discovery produced to date—including video footage of the events and witness statements—further confirms that the superseding indictment contains material falsehoods about Fort. Taking the government at its word, this means *in camera* review of the entire grand-jury transcripts is warranted.

## CONCLUSION

For all these reasons, Lemon and Fort respectfully object to the Order denying their Motions for disclosure of the grand-jury proceedings and for *Brady* materials. Even putting aside the factual falsehoods, there is substantial risk here that the grand jury was misleadingly instructed, leading to the indictment of two journalists for engaging in quintessential journalistic conduct. The Court should direct immediate disclosure of the grand-jury materials to the defense or for *in camera* review.

Dated: June 24, 2026

Respectfully submitted,

By: *s/ Abbe David Lowell*

**LOWELL & ASSOCIATES, PLLC**
Abbe David Lowell (admitted *pro hac vice*)
David A. Kolansky (admitted *pro hac vice*)
Isabella M. Oishi (admitted *pro hac vice*)
1250 H Street NW, Suite 250
Washington, DC 20005
Tel: 202-964-6110
Fax: 202-964-6116
ALowellpublicoutreach@lowellandassociates.com
DKolansky@lowellandassociates.com
IOishi@lowellandassociates.com

**THOMPSON JACOBS PLLC**
Joseph H. Thompson (#0343031)
222 N. Second Street, Suite 220
Minneapolis, MN 55401
Tel: (612) 416-3322
joe@thompsonjacobs.com

*Counsel for Don R. Lemon*

By: *s/ Matthew S. Ebert*

**BALLARD SPAHR LLP**
Leita Walker
Matthew S. Ebert
Isabella Salomão Nascimento
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3211
walkerl@ballardspahr.com
ebertm@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
berlins@ballardspahr.com

**THE LAW FIRM OF KEVIN C. RIACH, PLLC**
Kevin C. Riach
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com
*Counsel for Georgia Ellyse Fort*

## CERTIFICATE OF COMPLIANCE

I, Matthew S. Ebert, hereby certify that the foregoing Objections to June 10, 2026 Order (ECF 540) Denying Joint Motions for Disclosure of Grand-Jury and *Brady* Materials comply with Local Rules 72.2(c)(1) and (2). The length of this document is 3,496 words. It was prepared using Microsoft Office 365, and this word-processing program was applied specifically to include all text, including headings, footnotes, and quotations for word count purposes.

*s/ Matthew S. Ebert*
Matthew S. Ebert