**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA

Plaintiff,

v.

[8] Georgia Ellyse Fort,

Defendant.

Case No. 26-cr-00025-LMP-DLM

**DEFENDANT GEORGIA ELLYSE FORT'S EXPEDITED MOTION FOR RETURN OR IMPOUNDMENT OF CALL AND TEXT LOGS AND REQUEST FOR HEARING**

Defendant Georgia Ellyse Fort, by and through her undersigned counsel, respectfully moves this Court for an order (1) finding that the government violated this Court's (Docherty, M.J.) prior rulings articulating the strict statutory and regulatory limits on compelled discovery of newsgathering materials from a journalist like Ms. Fort as well as third parties holding such materials, and (2) remedying that violation by either impounding or ordering the return of all copies of the improperly obtained materials.

## PRELIMINARY STATEMENT

By its own accounting, the government has collected and produced in discovery more than 40,000 pages and hours of video surveillance data. *See* Discovery Status Report at 2, 6 (ECF 582). Precious little of that discovery has anything to do with Ms. Fort, a credentialed journalist who covered the Cities Church protest on January 18, 2026, solely in that capacity, but who was nevertheless indicted as if she had participated. In dutifully reviewing that discovery, Ms. Fort's undersigned counsel was stunned to see that the government had obtained ***six months'*** worth of logs of her telephone calls and texts, invariably containing communications with sources for her newsgathering,

including months' worth of communications dealing with unrelated news stories. And, it appears, the government then produced those logs to each of the 37 other defendants.

Ms. Fort was particularly shocked to see that the government had obtained six months' worth of information given its representation "that this is a simple case that involves a conspiracy that commenced and was completed in a matter of days," with "[t]he *core* offense" occurring over "approximately two hours." *Id.* at 2. Counsel was similarly surprised to see such discovery from a journalist given that the government had already obtained "phone extractions" from 14 other defendants, including the leaders of the protest, calling into question the government's further need for call and text information from Ms. Fort. *Id.* at 4.

But most troublingly, counsel was astonished to see that the government had issued a customs summons under 19 U.S.C. § 1509 to T-Mobile for those logs, without any notice to her. In so doing, the government performed an end-run around statutory and regulatory parameters, clearly articulated by Magistrate Judge Docherty in orders dated February 24 and March 6, in which he denied warrants for Ms. Fort's newsgathering information. *See In re Search Warrant*, 26-MJ-206-JFD (D. Minn.). Those parameters included, for example, that she be given prior notice and an opportunity to challenge the government's demands, and that the government minimize its intrusion into her journalistic work. Indeed, in addition to her call and text logs, the government also brazenly attempted to use a Section 1509 summons to obtain information about Ms. Fort's YouTube viewers and subscribers, without notice to her, despite the fact that Judge Docherty's prior orders *directly* addressed a search warrant to

the same company for some of the same protected information. (Fortunately, Google—YouTube's parent company—properly refused to provide the requested records.)

When Ms. Fort's counsel raised these concerns, *see* Ex. A (Aug. 5, 2026 ltr. to government requesting meet and confer), government counsel forcefully asserted that it had done nothing wrong and that the underlying bases for Judge Docherty's March 6 Order were flawed. *See also* Ex. B (post meet-and-confer email from government counsel reiterating same). In response, Ms. Fort's counsel disagreed and explained that, even if the government disputed the order, it had not sought review of that order and was therefore still required to follow it. The government refused to delete or return the data.

Following the parties' meet and confer, the government confirmed that it had "not yet reviewed the data" obtained "from the T-Mobile summonses" and that, although it had no "legal obligation" to do so, it would "maintain th[at] data in segregated storage." *Id.*; *see also id.* (confirming "government will keep the call and text logs sequestered and will not review them until [Ms. Fort's] forthcoming motion is adjudicated, absent reasonable advance notice"). The government declined Ms. Fort's request to jointly seek the logs' return from the other defendants. Accordingly, Ms. Fort's counsel unilaterally contacted counsel for the other 37 defendants to request that they not review or disseminate her call and text logs until this Court rules on the instant motion.

Ms. Fort respectfully submits that the government's conduct improperly violated Judge Docherty's February 24 and, especially, March 6 Orders. Prompt relief is necessary to protect her journalistic work. Accordingly, Ms. Fort respectfully requests that the Court schedule a hearing and that it thereafter (a) either impound or direct the

destruction of all copies of the logs; (b) require the government and the other defendants to certify in writing that they have no copies or information derived therefrom in their possession, custody, or control, and (c) require the government to adhere to this Court's orders and applicable law in connection with any further investigation, including to provide notice to Ms. Fort before seeking her journalistic records.[1]

## FACTUAL BACKGROUND

1. On February 24, 2026, the government applied for a search warrant seeking various information, including the names and personal information for all of Ms. Fort's YouTube subscribers.[2]

2. Judge Docherty denied the government's application. The Court found that there was no probable cause to justify issuance of the warrant, not least of all because "subscriber information is not needed to prove or disprove the commission of a crime." Feb. 24, 2026 Order at 5.

---

[1] Ms. Fort is filing this motion in the main criminal case in which the Court is presiding over various pretrial matters. That said, given that this motion (a) seeks a declaration that the government disregarded directives issued by Judge Docherty and (b) seeks return of materials obtained in violation thereof (rather than, for example, their suppression at trial), Ms. Fort defers to the Court on whether the motion should be transferred to Judge Docherty for adjudication.

[2] The government subsequently asserted that its proposed warrant only sought information about Ms. Fort, not her viewers and subscribers. Judge Docherty found the government's claim less "plausible" given that the proposed warrant sought information about both the "Account Holder" (*i.e.*, Ms. Fort) and, separately, about "subscribers" (*i.e.*, Ms. Fort's third-party viewers and subscribers). *See* Feb. 24, 2026 Order at 4 n.2, *In re Search Warrant* (ECF 2).

3. To demonstrate probable cause, the government had attached the January 29, 2026 initial indictment to its application and referred the Court to its contents. Although Judge Docherty ruled that the Court was not responsible for connecting the dots based on reviewing the indictment, he nevertheless did so "[i]n order to be thorough" and confirmed the finding that the affidavit and indictment contained "no facts *at all* that support probable cause." *Id.* at 4 (emphasis added).

4. On March 6, 2026, the government submitted an amended search warrant affidavit, seeking information about Ms. Fort's YouTube account, including videos posted to her YouTube channel.[3]

5. In the Court's March 6, 2026 Order, Judge Docherty declined to approve the government's renewed application. The Court explained that:

> [s]ince three of the warrants [including the one to Ms. Fort] are directed at seizing records documenting activity by defendants to prepare a broadcast, the Privacy Protection Act, 42 U.S.C. § 2000aa, potentially forbids the issuance of those three warrants. The Court will therefore require, consistent with regulations promulgated by the Attorney General concerning warrants directed at the press, that the government notify the three defendants whose records are at issue . . . and that those defendants be

[3] Both the February 24 and March 6 applications included sworn affidavits testifying that Ms. Fort engaged in "chanting" at the Cities Church protest and, in the case of the March 6 application, that she shouted specific chants, including "ICE Out!," "Hands Up, Don't Shoot!," and "Stand Up, Fight Back." As the Court is aware, the government subsequently admitted that (a) each of these statements was false and (b) it had improperly included the false "chanting" statements about Ms. Fort in at least fifteen separate search warrant affidavits and one draft complaint affidavit presented to no fewer than three judges of this Court and at least one judge in another District. ECF 539 at 1-2, 7-8; *see* ECF 542 at 3-5 (explaining that excuse government offered for this error was likewise false); July 24, 2026 Hr'g Tr. at 33:21-22 (government counsel conceding that "[t]he second complaint was lodged with the Court . . . , [s]o it was submitted").

> given an opportunity to intervene before the Court decides whether those search warrants will be authorized.

*Id.* at 1-2. The Court explained that these applications to journalists also "remain concerning on First Amendment grounds, because they seek information that was related to the preparation of broadcasts." *Id.* at 3.

6. The Court faulted the government for not bringing the Privacy Protection Act to the Court's attention. In particular, the Court emphasized:

> When the government presented these warrants, both originally and for re-presentment, it did not direct the Court's attention to the Privacy Protection Act, 42 U.S.C. § 2000aa. It should have. *In the Matter of the Search of the Real Property and Premises of Hannah Natanson*, No. 1:26-sw-0054 (WBP), 2026 WL 510727, at *5 (E.D. Va. Feb. 24, 2026) (expressing "significant concern" at the government's failure to address the Privacy Protection Act in a search warrant application within that Act's scope and pointing out that this omission "undermined the Court's confidence in the government's disclosures in this proceeding.").

*Id.* at 4.

7. The Court noted in its March 6 Order that "Congress passed the Privacy Protection Act in response to the Supreme Court's opinion in *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978)," which found that the *First Amendment* did not prohibit a search warrant to a newspaper's offices. *Id.* (citing and quoting *Binion v. City of Saint Paul*, 788 F. Supp. 935, 948 (D. Minn. 2011) ("the Act was passed in response to *Zurcher v. Stanford Daily*")). This Court then explained that Congress passed the Act in order to statutorily "forbid[ ] 'a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize' (a) work product materials or (b) documentary materials 'possessed by a person reasonably believed to

have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication. . . .' 42 U.S.C. § 2000aa(a), (b)." March 6 Order at 4-5.

8. Although the Court reserved final decision pending further briefing from Ms. Fort following notice to her, the Court noted that she is, "*according to the search warrant application affidavits submitted by the government itself*, preparing YouTube broadcasts about the events at Cities Church." *Id.* at 5 (emphasis added). As such, "adherence to government counsel's duty of candor towards the tribunal should have led them to inform the Court of that statute. ***Government counsel can argue against the statute's applicability, but they cannot ignore it***." *Id.* (emphasis added).

9. The Court also noted that the Privacy Protection Act requires the Attorney General to promulgate regulations and that "[a]lmost none of the procedures set out in the regulations seem to have been followed in this case," including that "[t]here is no indication that negotiations with these defendants occurred, and the applications are not narrowly drawn. *See* 28 C.F.R. § 50.10(c)(4)(iii)(A), (c)(4)(v); *see also* 28 C.F.R. § 50.10(d)(3) (requiring Attorney General to consider § 50.10(c)(4) for news-media search warrants)." March 6 Order at 6.

10. The Court likewise observed that "[t]here is no indication that the government has plans to put a filter team in place or even that a filter team was considered, no indication that the government engaged in any negotiations . . . over the scope of the warrants, and no indication that use of subpoenas duces tecum was attempted before resort was made to search warrants." *Id.* at 3.

11. The Court emphasized that, "[m]ost pertinently," there "is no indication that the defendants were 'given reasonable and timely notice' of the impending warrant." *Id.* at 6-7 (quoting 28 C.F.R. § 50.10(e)(1)(i)). The Court explained that it could not "foresee any harm that will come from advising the defendants that these three warrants have been applied for" and ordered the government "to give 'reasonable and timely' notice (under seal) to the defendants of these warrant applications." *Id.* at 7.

12. Rather than provide Ms. Fort with notice of its attempt to obtain her journalistic materials, the government withdrew its search warrant applications. *See* Withdrawn Appl., *In re Search Warrant*, 26-MJ-206-JFD (Mar. 23, 2026) (ECF 5). The government did not seek review of either the February 24 or March 6 Order.

13. When the Court later unsealed the warrant applications and orders denying them, it set forth its understanding that the government had abandoned its efforts to obtain the relevant records. *See* Dkt. 524 at 3 (Order to Unseal, docketed in this case at Judge Docherty's direction) ("this Court, in its March 6, 2026 Order, sought to clarify [various issues] through adversarial litigation. There was no such litigation because the United States withdrew the search warrant applications. The Court therefore will not express any views on these legal questions, except to note that, adversarial litigation having been foregone, there was no need to further belabor these issues.").

14. The government nevertheless issued multiple administrative summonses in April 2026, under the pretense of an investigation carried out under 19 U.S.C. § 1509, for Ms. Fort's protected information, namely, (a) multiple summonses to YouTube for information related to Ms. Fort's broadcasts and (b) a summons to T-Mobile for her

cellphone call and text logs for the six-month period from October 2025 through April 2026. Those summonses were issued without any notice to Ms. Fort. *See* Exs. C, D, E.

15. As noted above, Google declined to respond to the summons. It stated that, "[b]ased on the information provided" by the government, "we are currently unable to fulfill your administrative subpoena. . . . The [Stored Communications Act] generally prohibits Google from disclosing to a governmental entity any information pertaining to a customer or subscriber," absent some compulsory legal process "authorized by a Federal or State statute." Ex. F. It continued: "Section 1509 authorizes subpoenas to obtain records relating to the importation of prohibited merchandise" and "[a]t this time, Google does not have sufficient information" to conclude that "the subpoena relates to the importation of prohibited merchandise." *Id.*

16. By contrast, on April 12, 2026, T-Mobile produced six months' worth of call and text logs in response to the government's Section 1509 summons, again without notice to Ms. Fort. *See* Exs. G, H (describing T-Mobile's production). The logs themselves were produced in electronic format and, for obvious reasons, are not filed herewith. The logs provide details of more than **10,000** calls and texts over the six-month period at issue.

17. On May 1, 2026, Judge Docherty issued an order to the government to show cause by May 15, 2026 as to why the Court's February 24 and March 6 Orders, and the accompanying warrant applications to Ms. Fort and other defendants, should not be unsealed. *See* Order to Show Cause, *In re Search Warrant*, 26-MJ-206-JFD (May 1, 2026) (ECF 6). The Court reiterated its prior conclusion about providing notice to Ms.

Fort and the other defendants. *Id.* at 3 ("What was true on March 6 is still true today; the Court can see no reason to continue the sealing of these search warrant applications and court orders."). After the government advised that it had no objection, the Court unsealed the above-described warrant applications and orders on May 22, 2026. Dkt. 524 at 3.

18. Although the logs were apparently produced by T-Mobile to the government in April, *see* ¶ 16 *supra*, the government—flatly disregarding the discovery deadlines set by the Court—did not produce the logs to Ms. Fort until July 17. When her counsel discovered that the government had obtained six months' worth of her call and text logs *and* produced them to the 37 other defendants in this case, they promptly wrote to counsel for the government to object and to request an immediate meet and confer. *See* Ex. A.

19. The parties met two days later. During that hour-long "Teams" videoconference, counsel for the government forcefully resisted any suggestion that the government had violated the Privacy Protection Act, the implementing regulations, or Judge Docherty's orders. Counsel for the government threatened that, if Ms. Fort's counsel sought an order to show cause as to why the government should not be held in contempt, they would seek sanctions.[4]

[4] Although Ms. Fort's August 5, 2026 correspondence to the government indicated that she planned to seek such a "show cause" order, *see* Ex. A, she has focused herein on her overriding goal of securing her protected journalistic work-product, and not on the question of whether the government and its officials acted in contempt of court by circumventing the Court's orders. She has therefore styled this motion accordingly.

20. As noted above, the government subsequently confirmed that its agents had not analyzed the logs and represented that it would refrain from doing so during the pendency of this motion, "absent reasonable advance notice." Ex. B.

21. Because Ms. Fort believes that the government violated both the letter and the spirit of governing law *and* Judge Docherty's orders—and is, frankly, perplexed at the government's insistence on retaining her call and text logs—she has filed the instant motion. She respectfully requests an expedited deadline for the government to respond, a hearing on this matter, and prompt relief.

## **ARGUMENT**

### I. THE GOVERNMENT VIOLATED GOVERNING LAW AND THIS COURT'S ORDERS.

As Judge Docherty's orders make abundantly clear, (a) Ms. Fort is a journalist, including as confirmed by the government's own search warrant application affidavits; (b) she therefore enjoys the protections of the First Amendment, the Privacy Protection Act, corresponding regulations, and this Court's Orders, which, taken together, required the government to proceed by subpoena or otherwise provide notice, rather than issuing a no-notice warrant or summons to a third-party for her journalistic materials; (c) the government should have, but did not, attempt to minimize the impact on Ms. Fort's protected news reporting interests, including by limiting the scope of the request and/or using a filter team to review the materials; and (d) the government violated its duty of candor to the Court by failing to notify it of the Privacy Protection Act (as it had also done in the *Natanson* case). Ms. Fort addresses each of those points in turn, including, in

the interests of streamlining the resolution of this matter, to address here the various arguments that the government proffered during the parties' meet and confer.

***First***, it cannot be seriously disputed that Ms. Fort is a journalist, as this Court has concluded many times over. Indeed, as Judge Docherty noted, the search warrant affidavits presented by the government expressly confirmed her status as a journalist. *See* Mar. 6 Order at 5. Lest there be any doubt, substantial additional information about her award-winning work as a journalist is set forth in her Motion to Dismiss Superseding Indictment Under the First Amendment. *See* ECF 592 at 5-8.

***Second***, as a journalist, Ms. Fort enjoys the protections of the First Amendment, the Privacy Protection Act, and the applicable regulations. And even if the government disagrees, it was still obliged to comply with Judge Docherty's orders enforcing those protections.

As he recognized, if the government seeks compelled production of a journalist's materials, the Privacy Protection Act, and the regulations that have grown up around it, typically require the government to proceed by a subpoena or direct summons, not by a warrant or third-party summons, so that the journalist has notice and an opportunity to object before her materials are seized. *See also, e.g.*, 28 C.F.R. § 50.10(a)(3) (seeking records from "members of the news media" should be treated "as extraordinary measures, not standard investigatory practices"). That statutory requirement applies unless "there is reason to believe that the giving of notice pursuant to subpoena *duces tecum* would result in the destruction, alteration, or concealment" of the materials sought. 42 U.S.C. § 2000aa(b)(3), (b)(4). Of course, here, because the materials sought were held by T-

Mobile and Google/YouTube, the government asserted no reason for such a belief, nor could it.[5]

**The "Suspect" Exception:** The government contends that the Privacy Protection Act does not apply because Ms. Fort is a suspect, indicted by a grand jury, and therefore falls within the "suspect" exemption to the statute. *See* 42 U.S.C. § 2000aa(a)(1), (b)(1). Putting aside that *reporting* on an unlawful assembly does not equate "to *participating* in an unlawful assembly," *Goyette v. City of Minneapolis*, 2021 WL 5003065, at *5 (D. Minn. Oct. 28, 2021), the actual language of the statutory exemption is far more limited on its face. It only applies where "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense *to which the materials relate*." 42 U.S.C. § 2000aa(a)(1), (b)(1) (emphasis added). The government's claim that six months' worth of records relates to an offense that, by the government's own description, took place over, at most, a couple of days, and for which the core events lasted only a couple of hours, is not well-taken.

As such, this case differs from two out-of-circuit cases cited by the government during the parties' meet and confer. In *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 567 (6th Cir. 2007), the government seized cameras containing video footage of plaintiff trespassing, and therefore "the cameras 'relate[d]' to the alleged

[5] A predicate issue is the government's improper use of a § 1509 customs summons to secure information in this civil rights case. That issue has been separately presented to the Court by other defendants and remains pending. *See* Dkt. 569 at 6-9, 13-14; Dkt. 611 at 11-12. Ms. Fort concurs fully with their arguments and hereby preserves her objection to the summonses on that basis, but otherwise does not repeat that discussion here.

trespass offense." *See also id.* (exemption applied because cameras directly "related to that investigation" for trespassing). And in *Sennett v. United States*, 667 F.3d 531 (4th Cir. 2012), the government seized videotapes to establish that the photojournalist who recorded them personally participated in acts of vandalism, rather than, as here, merely recording allegedly unlawful acts by others (indeed, as the government was forced to admit, *see* note 3 *supra*, Ms. Fort did not even participate in chanting). The contention that the rulings in those cases somehow translate into treating six months' of call and text logs as "related to" the government's investigation—particularly when it had already performed cell phone extractions for 14 other defendants—does not withstand scrutiny.

In any event, unlike either of the cases relied on by the government, this Court already found that the Act applied to Ms. Fort, and, as the Court put it, "Government counsel can argue against the statute's applicability, but they cannot ignore it." Mar. 6 Order at 5. The same is true of the Court's order: the government can seek review but, having failed to do so, it cannot simply ignore an order it thinks is wrong.

**Obtaining Records From Third Parties:** The government also contended that the statute does not apply to records obtained from third parties, citing *Reporters Committee for Freedom of the Press v. AT&T*, 593 F.2d 1030 (D.C. Cir. 1978). But that case *pre-dates* the passage of the Privacy Protection Act (enacted in 1980) and therefore addressed the question of whether the *Constitution* itself *required* a *third party* not to produce records—not whether the *government* is *statutorily* precluded from *seeking* them and, if so, by which kind(s) of compelled process. Subsequent authority confirms that any "protection that protects the reporters also protects their third party telephone records

sought by the government." *New York Times Co. v. Gonzales*, 459 F.3d 160, 168 (2d Cir. 2006). That is because, "[w]ithout question, the telephone is an essential tool of modern journalism and plays an integral role in the collection of information by reporters." *Id.*; *see also Food Lion, Inc. v. Cap. Cities/ABC Inc.*, 1996 WL 575946, at *1 (M.D.N.C. Sept. 6, 1996) (party cannot evade privilege for journalists by serving subpoenas on "hotels, letter carriers, and telecommunications companies," because such discovery "improperly infringes upon a protected First Amendment interest of ABC, namely the protection of confidential sources"), *aff'd*, 951 F. Supp. 1211 (M.D.N.C. 1996).[6]

In any event, the Court's March 6 Order was clear that the various protections applied with equal force to a warrant to a third party (YouTube). As such, the government cannot credibly contend that its subsequent customs summonses issued to YouTube and T-Mobile were proper because they sought information from third parties. Again, the government is free to disagree with the Court's rulings, but the government may not disregard them.[7]

---

[6] In *Gonzales*, the Court ultimately ruled that the protection for the journalists' sources was overcome where they had shared information of "imminent law enforcement asset freezes/searches" of two organizations linked to terrorism. 459 F.3d at 171. Here, the government has not made any claim that it needs the identities of Ms. Fort's sources to avoid imminent harm. Nor could it, where it waited over a month to submit the initial warrant applications and then waited another month to issue § 1509 summonses.

[7] *See also* 28 C.F.R. § 50.10(b)(2)(i) (restricting government's ability to subpoena "third parties communications records"); *id.* § 50.10(b)(2)(ii) (same for warrants); *id.* § 50.10(b)(3)(i)(A) (defining "communications records" to include "email transaction logs and local and long distance telephone connection records, stored or transmitted by a third-party communication service provider with which the member of the news media has a contractual relationship"). Citing *Citicasters v. McGill*, 89 F.3d 1350 (8th Cir. 1996), the government contends that these regulations are not, by their terms, enforceable

**The Orders' Application to T-Mobile:** The government also advanced the remarkable contention that, even if this Court's order required notice to Ms. Fort prior to issuing summonses to *YouTube*, the government was under no such obligation when issuing a summons to *T-Mobile*. But that level of hair-splitting is not well-taken. The Court's March 6 Order is clear that, because Ms. Fort is a journalist, the government needed to give her notice and an opportunity to object before seizing—whether by warrant or a no-notice administrative summons—materials directly related to her journalism. That admonition applies regardless of whether the records are held by YouTube or T-Mobile. *See Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 873 (8th Cir. 2013) (cautioning against an "exercise in hair-splitting formalism").

***Third***, the government did not take any steps to minimize the intrusive nature of the summons and the materials obtained as directed by Magistrate Judge Docherty, steps that notice to Ms. Fort would have gone a long way to addressing.[8] Had the government

---

in court. But there is a fundamental difference between *a party* seeking to enforce the regulations and obeying an *order* in which *the Court* previously consulted them in concluding that the law limits compelled disclosures from the press without notice.

[8] *See* 28 C.F.R. § 50.10(c)(4)(v) (any subpoena to the press "should be narrowly drawn," "directed at material and relevant information regarding a limited subject matter, should cover a reasonably limited period of time, should avoid requiring production of a large volume of material, and should give reasonable and timely notice of the demand."); *id.* § 50.10(c)(4)(i)(A) (government should consider whether "information sought is essential to a successful investigation or prosecution" and should not use subpoena "to obtain peripheral, nonessential, or speculative information"); *id.* § 50.10(c)(4)(vi) (investigators should "minimize intrusion into potentially protected materials or newsgathering activities unrelated to the investigation," including by using "filter teams (reviewing teams separate from the prosecution and investigative teams)"); *id.* § 50.10(d)(4) (same).

given her the required notice, Ms. Fort could have explained that the government already obtained phone extractions from 14 defendants, markedly diminishing any value from her call and text log—particularly in light of the countervailing interest in maintaining the confidentiality of her journalistic sources. She could also have challenged the scope of the data sought by the government (six months' worth of logs) for a prosecution over an event that the government itself alleges lasted at most only a couple of days. Ms. Fort would likewise have been able to urge the Court to first conduct an *in camera* review or to mandate a filter team. And, she could have asked the Court to limit the dissemination of the information obtained, rather than sharing it with 37 other parties and their counsel. Instead, the government failed to take any of these steps.

***Finally*,** as described above, the government violated its duty of candor to the Court. It should have flagged the Privacy Protection Act, but did not, despite the then-recent, highly publicized example of the *Natanson* case, where multiple judges faulted the government for the same conduct. And then, rather than comply with Judge Docherty's orders to give Ms. Fort notice, or file objections to those orders with the District Court, the government instead pursued a surreptitious end-run around the Court.

The government left the Court—and later Ms. Fort—with the impression that it had simply abandoned its efforts to obtain the information, when in fact that was nothing further from the truth. *See, e.g.*, Dkt. 524 at 3 ("adversarial litigation having been foregone, there was no need to further belabor these issues"). While the government's statement that it was withdrawing the search warrant applications was perhaps technically true, it was, to say the very least, materially misleading.

The upshot of the government's conduct is that Ms. Fort is now in the unfortunate position of not only being prosecuted for doing her job as a journalist, but having the prosecution invade her other protected news reporting. Neither the governing law nor this Court's Orders allow such a result, and it must therefore be corrected.

## II. THE COURT SHOULD ISSUE VARIOUS RELIEF TO REMEDY THE GOVERNMENT'S CONDUCT.

To redress the government's misconduct, Ms. Fort respectfully requests the following relief. ***First***, the Court should either impound all copies of the logs or direct the government and the other defendants to return or destroy them. That is because allowing the government "to search a reporter's work product—most of which consists of unrelated information from confidential sources—is the equivalent of leaving the government's fox in charge of the [] henhouse." *In re Search of Real Prop. and Premises of Natanson*, 2026 WL 510727, at *10 (E.D. Va. Feb. 24, 2026). For that reason, in *Natanson*, "the Court reject[ed] the government's request to conduct an unsupervised, wholesale search of all Movants' seized data" and instead ruled that it would "conduct the review itself." *Id*. at *11; *see also In re Search of Real Prop. and Premises of Natanson*, 2026 WL 1458902, at *9 (E.D. Va. May 4, 2026) (affirming magistrate judge's order and overruling government's objections because "this case requires an independent judicial officer to conduct a review of the Seized Material in order to adequately protect Movants' constitutional and statutory interests"). The government should not be permitted to rifle through a journalist's protected information, including sensitive information involving her sources, her other stories, and her viewers.

***Second***, Ms. Fort respectfully requests that the Court require the government and each of the other defendants to certify in writing that they no longer have any copies of the logs, or information derived therefrom, in their possession, custody, or control.

***Finally***, Ms. Fort respectfully requests that the Court direct the government to adhere to governing law, as outlined in Judge Docherty's February 24 and March 6 Orders, in connection with any further investigation into her.

While Ms. Fort has framed her request for relief based on the information known to date, she reserves the right to seek other relief necessary to remedy the government's actions.

## CONCLUSION

For the foregoing reasons, Ms. Fort respectfully requests that the Court grant this motion, find that the government violated governing law and this Court's prior orders, including by not providing notice to her, and that the Court enter the relief outlined above. Because of the weighty issues raised in this motion, issues that go to the heart of the protections for a journalist, Ms. Fort respectfully requests a hearing on this motion, as the Court's schedule allows.

Dated: August 26, 2026

Respectfully submitted,

**BALLARD SPAHR LLP**

By: *s/ Isabella Salomão Nascimento*
Leita Walker
Matthew S. Ebert
Isabella Salomão Nascimento
2000 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3211
walkerl@ballardspahr.com
ebertm@ballardspahr.com
salomaonascimentoi@ballardspahr.com

Seth D. Berlin (*pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
berlins@ballardspahr.com

**THE LAW FIRM OF KEVIN C. RIACH, PLLC**
Kevin C. Riach
125 Main St. SE, Suite 339
Minneapolis, MN 55412
Tel: (612) 203-8555
kevin@riachdefense.com

*Counsel for Georgia Ellyse Fort*