UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

NEKIMA LEVY ARMSTRONG, et al,
Defendants.

Case No. 0:26-cr-00025-LMP-DLM

**DEFENDANTS' JOINT MOTION TO STRIKE APPEARANCE OF GOVERNMENT'S COUNSEL**

Defendants Thomas Matthew Tier , Nakima Levy Armstrong, Chauntyll Louisa Allen, Trahern Jeen Crews, Ian Davis Austin, Jerome Richardson, Jamael Lydell Lundy, Aziza Mohammed Aboud, Ezra Chaim Pye Blumenfeld, Kelly Ann Carey, Monique Cullars-Doty, Tiffany Dunlap, Andrew Edwards, Rachel Goligoski, Ariel Hauptman, Krista Erin Hogan, Danielle Andrea Matthias, Catie Ann Michaelson, Eric Ryan Michaelson, David Okar, Jarmel Perry, Cheryl Ann Persigehl, Emmar Monike Pineda Moreno, Spencer Michael Rodriguez-Bocanegra, Katherine Shaw, Satara Strong-Allen, Charles Swenson, and John Vergin (collectively, "Defendants") move this Court to strike the appearance of an active-duty Army Judge Advocate ("JAG") appointed as Special Assistant U.S. Attorney ("SAUSA") to prosecute civilians for civilian offenses in civilian courts with no nexus to a military purpose. On March 19, 2026, the government filed a Notice of Appearance for John Arboleda. (Dkt. No. 398.) Upon information and belief, this attorney is a U.S. Army JAG.[1] Because U.S. military lawyers are prohibited from

[1] Although Defendants move to strike Mr. Arboleda, the government has refused to disclose whether other military personnel are or have been involved in this prosecution. (*See* Dkt. 589.) Accordingly, to the extent any other military personnel have appeared or

performing civilian law enforcement under the Posse Comitatus Act ("PCA") and other relevant government regulations, Defendants respectfully request that the Court strike his appearance, and the appearance of any other military personnel assisting in this prosecution.

## I. THE POSSE COMITATUS ACT BARS A JAG'S PARTICIPATION IN THIS CASE.

The Posse Comitatus Act provides:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army, the Navy, the Marine Corps, the Air Force, or the Space Force as a posse comitatus or otherwise to execute the laws shall be fined under this title or imprisoned nor more than two years, or both.

18 U.S.C. § 1385. Born from this country's tradition of "recogniz[ing] that the military is, by necessity, a specialized society separate from civilian society," *Parker v. Levy*, 417 U.S. 733, 743 (1974), Congress enacted § 1385 to prevent the use of federal troops to participate in domestic law enforcement. *United States v. Red Feather*, 392 F. Supp. 916, 921–22 (D.S.D. 1975). Because the prosecution of Defendants requires active participation and the exercise of regulatory, proscriptive, and compulsory power and no exception provided by the Department of Defense authorizes his direct involvement, the PCA bars a JAG's participation in this case.

### A. Every Federal Court Test Prohibits a JAG'S Prosecution of Defendants in This Case.

---

later appear in this matter, Defendants likewise request that the Court strike their appearances. Because Defendants' arguments apply equally to Mr. Arboleda and any other military personnel participating in the prosecution, Defendants hereinafter will collectively refer to such personnel as the general "JAG."

Federal courts apply three tests to determine whether the government has violated the PCA.

1. The *Red Feather* test asks whether the military involvement in civilian law enforcement was "direct" and "active." *Id.* at 925 (defining "direct active use" to include making arrest, seizing evidence, and interviewing witnesses).

2. The *Jaramillo* test asks whether the military involvement in question pervades the civilian law enforcement activities. *United States v. Jaramillo*, 380 F. Supp 1375, 1379 (D. Neb. 1974) (finding reasonable doubt as to whether federal authorities were lawfully engaged when military personnel counseled civilian law enforcement on use of force decisions, advised on negotiations, and dictated defensive restrictions).

3. The *McArthur* test asks whether the use of the military in civilian law enforcement was regulatory, proscriptive, or compulsory in nature over civilians. *United States v. McArthur*, 419 F. Supp. 186, 194 (D.N.D. 1975). Under this test, regulatory power "controls or directs," proscriptive power "prohibits or condemns," and compulsory power "exerts some coercive force." *United States v. Yunis*, 681 F. Supp. 891, 895–96 (D.D.C. 1988); *see also Bissonette v. Haig*, 776 F.2d 1384, 1390 (8th Cir. 1985) (refining *McArthur* to ask if military involvement in civilian law enforcement "actually regulates, forbids, or compels some conduct on the part of those claiming relief").

Assigning an active-duty JAG to prosecute Defendants for civilian offenses in a civilian court with no nexus to a military purpose violates the PCA under each test.

First, a JAG's prosecution of Defendants exercises direct and active military involvement in civil law enforcement because he will control material aspects of Defendants' criminal case. *Red Feather*, 392 F. Supp. at 925. Second, a JAG's involvement pervades civilian law enforcement far beyond general advice. If the government merely needed his counsel, it could have consulted him directly; there is no need for him to appear on the government's behalf. *Jaramillo*, 380 F. Supp. at 1379. Third, a JAG exercises "regulatory" power by acting as a prosecutor, deciding what

motions to file, how to rebut raised defenses, and overall trial strategy; "proscriptive" power by bringing the federal government's authority to prosecute ***thirty-eight*** Defendants' peaceful activity motivated in response to the federal government's policies and activity in Minnesota; and "compulsory" power by exerting coercive force to secure a conviction. *McArthur*, 419 F. Supp. at 194; *Yunis*, 681 F. Supp. at 895–96. In other words, the JAG is not passively assisting this matter, *Red Feather*, 392 F. Supp. at 925, delivering military materials or equipment, *Jaramillo*, 380 F. Supp. at 1379F, training local law enforcement, *Red Feather*, 392 F. Supp. at 925, or explaining contingency plans used in the event of military intervention, *Bissonette*, 776 F.2d at 1388; he has appeared in this case and regularly acts as government counsel in contacts with defense counsel and filings with the court.[2] The PCA prohibits this, and the Court should strike his appearance and the appearance of all military personnel assisting with this case.

### B. The Department of Defense Instructions Do Not Authorize a JAG's Prosecution of Defendants in This Case.

While the Department of Defense ("DOD") Instructions authorize specific areas in which DOD personnel ***may*** participate in civilian law enforcement activities, no such exception authorizes a JAG's participation in this case. For example, U.S. Dep't of Def., DOD Instruction 3025.21, *Defense Support of Civilian Law Enforcement Agencies*, enclosure 3, ¶ 1.b.(1) (Feb. 8, 2019), authorizes direct assistance to civilian law enforcement when actions are "taken for the primary purpose of furthering a [DOD] or foreign affairs function of the United States, regardless of incidental benefits to civil

[2] Indeed, Mr. Arboleda participated in Defendants' meet and confer for this very motion.

authorities." This authorization includes "[i]nvestigations and other actions related to a commander's inherent authority to maintain law and order on a [DOD] installation or facility." *Id.* enclosure 3, ¶ 1.b.(1).(c). And U.S. Dep't of Def., DOD Instruction 5525.07, *Implementation of the Memorandum of Understanding Between the Departments of Justice and Defense Relating to the Investigation and Prosecution of Certain Crimes* § 4(C)–(C.3) (March 5, 2020), permits DOD attorneys to be designated as SAUSAs in cases where both agencies have jurisdiction over the underlying matter. But neither authorizes a JAG's involvement in this case.

Here, Defendants are accused of violating 18 U.S.C. § 241 and 18 U.S.C. § 248(a)(2), § 2(a) in a civilian court proceeding in the District of Minnesota. But a JAG's prosecution of a case against a civilian—or civilians—is ***not*** an exception delineated by in Instruction 3025.21. Moreover, these charges have nothing to do with the United States Army. There is no nexus to a military purpose, and the government has never claimed one. Because DOD lacks jurisdiction over cases for which there is no military nexus, Instruction 5525.07 likewise does not authorize a JAG's assignment to this case. Put simply, the PCA was designed to prohibit the military from unlawfully executing law enforcement responsibility in purely civilian affairs. Assigning a JAG to this case violates the PCA and the government's own regulations.

### C. Assigning JAGs to Prosecute Civilians in Civilian Courts for Civilian Offenses with No Nexus to a Military Purpose Was *Not* Expressly Authorized.

Because a JAG is acting as a prosecutor in this case without any nexus to a military purpose, the next question is whether an express constitutional or statutory

exception to the PCA authorizes the JAG to prosecute civilians in civilian courts for civilian offenses. Under the plain meaning of the word "expressly" and the legislative history of the PCA, the PCA's language reflects Congress's choice to prohibit military involvement in civil law enforcement unless Congress (or the Constitution) specifically allows it. And no such express authorization exists here.

### *1. PCA exceptions must specifically authorize military involvement in civilian law enforcement.*

The plain language of the PCA demonstrates that Congress must explicitly permit military involvement. In 1878, as is true today, "expressly" meant "[i]n an express manner" or "in direct terms." Noah Webster, *A Dictionary of the English Language* 156 (1878 ed.). In other words, Congress must explicitly recognize an exception to the PCA to permit military involvement.

The legislative history of the PCA further reinforces this conclusion. In a report for the Military Cooperation with Civilian Law Enforcement Agencies Act, Congress stated that "[c]ertain military activities, although otherwise prohibited by the [PCA], are permissible if ***expressly authorized by statute***"—i.e., "***are specifically defined*** and are generally restricted to instances involving civil disorders…disasters…and threats to Federal property." H.R. Rep. No. 97-71, pt. 2, at 6 (1981), *reprinted in* 1981 U.S. Code Cong. & News 1785, 1789 (emphasis added). Moreover, Congress has also explained that it is "fully aware that exceptions to the [PCA] prohibition involving military personnel as participants in civilian law enforcement activities must be narrow and should be

authorized only when absolutely necessary." H.R. Rep. No. 97-624, at 10-11 (1982), *reprinted in* 1982 U.S. Code Cong. & News, 3229, 3238-39.

In furtherance of this purpose, Congress authorized DOD to provide military assistance to civilian law enforcement pursuant to the following statutes:

- 18 U.S.C. §§ 112, 1116, and 1201: "the Attorney General may request assistance from any Federal, State, or local agency, including the Army, Navy, and Air Force, any statute, rule, or regulation to the contrary[,] notwithstanding" to protect foreign officials and internationally protected persons from assault, manslaughter, murder, and kidnapping.

- 10 U.S.C. § 282(a): in emergency situations involving weapons of mass destruction, "[t]he Secretary of Defense, upon the request of the Attorney General, may provide assistance in support of [DOJ] activities," "including personnel of the [DOD]" if the Secretary of Defense and Attorney General jointly determine an emergency exists and such assistance will not harm military preparedness.

- 10 U.S.C. § 283(a): "Upon the request of the Attorney General, the Secretary of Defense may provide assistance in support of [DOJ] activities" related to bombings of government facilities and places of public use.

- 18 U.S.C. §§ 351(g), 1751(i): in FBI investigations of the assassination, kidnapping, or assault of the President or a Member of Congress, "[a]ssistance may be requested from any Federal, State, or local agency, including the Army, Navy, and Air Force, any statute, rule, or regulation to the contrary notwithstanding."

- 18 U.S.C. § 831(e), (f)(1): regarding criminal transactions in nuclear materials, "[t]he Attorney General may request assistance from the Secretary of Defense . . . and the Secretary of Defense may provide such assistance . . . except that the Secretary of Defense may provide such assistance through any [DOD] personnel." "Notwithstanding section 1385 of this title, the Secretary of Defense may, in accordance with other applicable law, provide such assistance to the Attorney General . . . ."

These recognized PCA exceptions share common elements: (1) they define permissible military actions, citing assistance provided by a military service or the Secretary of Defense; (2) they involve a civilian cabinet official or agency requesting assistance from

DOD; (3) they include language recognizing the PCA's reach and negating its application in the specific, enumerated context; (4) they have legislative history identifying them as express PCA exceptions; and (5) they are narrowly tailored to limit military participation in civilian law enforcement. *See Newsom v. Trump*, 797 F. Supp. 3d 1092, 1116 (N.D. Cal. 2025). Anything that fails to satisfy any of these elements cannot constitute an express exception to the PCA.

***2. 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1) are not express exceptions to the PCA.***

In response to Defendant's Motion to Compel (Dkt. 569), the government argued that because "the Court held that the appointment of military attorneys as [SAUSAs] to prosecute civilians was authorized by statute[,]" Defendant Tier was not entitled to information "regarding the involvement of U.S. Military attorneys in this case." (Dkt. 582) (citing *United States v. Johnson*, 2026 WL 1194953 (D. Minn. May 1, 2026); *United States v. Redmond*, 2026 WL 1196702 (D. Minn. May 2, 2026)). In *Johnson* and *Redmond*, the magistrate judges found that 28 U.S.C. § 543 and 10 U.S.C. § 806(e)(1) "operate" as express PCA because their text authorizes JAGs to be appointed as SAUSAs "without limitation." *Johnson*, 2026 WL 1194953, at *4; *Redmond*, 2026 WL 1196702, at *5. But these statutes neither grant authority to assign a JAG SAUSA to prosecute cases that violate the PCA nor provide an express PCA exception.

First, 28 U.S.C. § 543 fails every marker of the recognized PCA exceptions. It states: the "Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires." *Id.* There is no reference to the matters that may be

assigned to these attorneys, no mention of the military, nor any discussion of the PCA—much less any evidence that Congress enacted Section 543 as a PCA exception. *See* H.R. Rep. No. 97-71 at 6-7 (Section 543 is not listed among PCA exceptions). Nor is there any indication that DOD considers it as one. *See* DOD Instruction 3025.21, supra encl. 3, ¶ 1.b.(5) (same). Because PCA exceptions must "be construed narrowly" and "authorized only when absolutely necessary," 28 U.S.C. § 543 cannot serve as an express PCA express exception.[3]

Second, 10 U.S.C. § 806(e)(1) is likewise not an express PCA exception. It states:

> A judge advocate who is assigned or detailed to perform the functions of a civil office in the Government of the United States under section 973(b)(2)(B) of this title may perform such duties as may be requested by the agency concerned, including representation of the United States in civil and criminal cases."

*Id.* Like § 543, this provision of the Uniform Code of Military Justice ("UCMJ") does not authorize military service or the Secretary of Defense to provide law enforcement assistance to civilian authorities when this assistance violates the PCA. And although the *Johnson* and *Redmond* courts reasoned that 10 U.S.C. § 806(e)(1) "explicitly" permits JAG lawyers to represent the United States in civil and criminal cases, they incorrectly conflate two distinct issues: (1) whether the DOJ may appoint a JAG as a SAUSA to represent the United States, and, if so, (2)

---

[3] In *Johnson*, the judge notes that "the plain language of 28 U.S.C. § 543 does not limit whom the Attorney General may appoint as a SAUSA." 2026 WL 1194953, at *2. But the ***absence*** of limitation is not an express PCA authorization—especially given Congress's intent to require specificity for exceptions to the PCA.

whether the DOJ may then assign that JAG to handle matters in violation of the PCA or any other provision of law.[4]

Regarding the former, there are circumstances in which a JAG appointed as a SAUSA may prosecute civilians in civilian courts under § 806. Days after § 806(e)(1)'s enactment, the Deputy Secretary of Defense instructed the Service Secretaries that they "may assign or detail judge advocates to the [DOJ] under 10 U.S.C. §§ 806(d) and 973(b)(2)(B) *with respect to cases of interest to the Department of Defense*." *See* William H. Taft, IV, Memos from Deputy Sec'y of Def. and Sec'y of Army, THE ARMY LAWYER, at 5 (Mar. 1987), https://tile.loc.gov/storage-services/service/ll/llmlp/75615419_03-1987/75615419_03-1987.pdf (emphasis added). The Secretary of the Army then instructed the Army Judge Advocate General ("TJAG") that "[r]ecent legislation codified our authority to assign or detail judge advocates to the [DOJ] to represent the United States *in cases of interest to the Department of Defense*. 10 U.S.C. § 806(d)." John O. Marsh, Jr., Memo for the JAG, THE ARMY LAWYER, at 6 (Mar. 1987), https://tile.loc.gov/storage-services/service/ll/llmlp/75615419_03-1987/75615419_03-1987.pdf (emphasis added).(emphasis added). And the Army TJAG then instructed his JAG subordinate leaders that he supported "prosecutions *arising out of Army operations*," including "prosecutions of misdemeanors and

[4] DOJ attorneys, including SAUSAs, are strictly prohibited from handling certain specific matters, including those matters involving conflicts of interest or outside legal practice. Appointment as an AUSA or SAUSA is not a grant of authority to engage in otherwise illegal activity.

felonies *occurring on Army installations*" and SAUSA programs "to prosecute felonies *affecting Army activities* in U.S. District Court." Hugh R. Overholt, Memo from TJAG to Staff and Command JAGs, THE ARMY LAWYER, at 3 (Mar. 1987) https://tile.loc.gov/storage-services/service/ll/llmlp/75615419_03-1987/75615419_03-1987.pdf (emphasis added). Thus, a DOJ may appoint a JAG as a SAUSA to represent the United States but only if a nexus to a military purpose exists.

This understanding is codified in Army regulations. *See* 32 C.F.R. § 516.4(e)(1); AR 27-10, Military Justice, ch. 2. And subsequent amendments neither alter this interpretation nor make any mention of the PCA. *See* National Defense Authorization Act for Fiscal Year 1987, Pub. L. No. 99-661, tit. VIII, § 807(a), 100 Stat. 3816, 3909 (1986) (amending 10 U.S.C. § 806 to clarify that JAG officers serving as SAUSAs under 10 U.S.C. § 973(b)(2)(B) did not violate the UCMJ); *see also* H.R. Conf. Rep. No. 99-1001, at 493 (1986), *reprinted in* 1986 U.S. Code Cong. & News 6529, 6552 (emphasis added) (stating that when "judge advocates are detailed to assist, for example, the Department of Justice in litigation involving the Department of Defense"). Given that no other recognized PCA exception appears in the UCMJ, 10 U.S.C. § 806(e)(1) only answers the former question: whether DOJ appointing a JAG as a SAUSA is lawful under the UCMJ—not whether DOJ may assign a JAG SAUSA a duty that violates the PCA .

In sum, §§ 543 and 806(e)(1) are not express PCA exceptions. Neither resembles a recognized exception or has been identified as one by Congress or the DOD. Congress does not "hide elephants [e.g., a sweeping grant of authority to use the military for

domestic law enforcement] in mouseholes [e.g., one subsection of a procedural statute].” *Newsom*, 797 F. Supp. 3d at 1116 (citation modified). When there is ambiguity whether a statute is an express PCA exception, the PCA’s text, purpose, and history demand a court default to finding no express exception.

## II. APPOINTING MILITARY ATTORNEYS AS SAUSAS IN THIS CASE VIOLATES THE GOVERNMENT’S REGULATIONS.

In addition to the PCA, the government’s appointment of a JAG lawyer as a SAUSA to prosecute civilians for civilian offenses in civilian courts also violates government regulations. “Federal regulations have the force and effect of law.” *Resol. Tr. Corp. v. Home Sav. of Am.*, 946 F.2d 93, 96 (8th Cir. 1991). All “[a]gencies must follow their own regulations.” *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)).

Relevant here are 32 C.F.R. § 516.4 and AR 27-10, which, like the PCA, protect civilians from unauthorized military involvement in civilian affairs by limiting JAG participation as SAUSAs to cases “in which the Army has an interest.” However, as discussed, this prosecution bears no nexus to any military purpose and implicates no cognizable Army interest. The appointment of JAG personnel to prosecute this case therefore exceeds the authority afforded by the government’s own regulations.

This Court has the authority to remedy this violation. It is “long recognized that a district court possesses inherent powers that are ‘governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.’” *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)

(citation modified). These powers include supervising attorneys, crafting sanctions for conduct abusing the judicial process, *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 749 (8th Cir. 2018), and disqualifying counsel, *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999). And where the Government violates regulations governing its own conduct, courts can—and do—provide relief. *See, e.g.*, *Serv. v. Dulles*, 354 U.S. 363, 388 (1957) (holding federal employee's dismissal invalid where agency failed to comply with its regulations); *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959) (same). Indeed, judges in this District have recently granted relief against the federal Government for precisely that reason. *See, e.g.*, *Roble v. Bondi*, 803 F. Supp. 3d 766, 770 (D. Minn. 2025); *Sarail A.*, 803 F. Supp. 3d at 785.

The Court should exercise that authority here. This is not the first time the government has disregarded regulations governing its conduct, and its conduct to date provides little reason to believe it will be the last.[5] Left unchecked, this pattern of willful disregard for the rule of law threatens not only the integrity of this prosecution, but also to dismantle the very safeguards designed to constrain the government from dictatorship-like overreach. Thus, Defendants respectfully request that the Court exercise its supervisory authority, enforce the applicable regulatory limitations, and strike the JAG's appearance in this case.

**CONCLUSION**

[5] Indeed, Defendant Tier has already identified several other instances of government misconduct in its Motion to Compel and further instances continue to come to light. (*See* Dkt. 569.)

The Posse Comitatus Act stands as a bulwark against military intrusion into civilian legal affairs. By assigning a JAG to prosecute a civilian offense without any military nexus, the government has crossed a clear line—one drawn by Congress and memorialized in the Army's own regulations. The Court should strike the appearance of Mr. Arboleda and any and all other military counsel assisting in this prosecution.

Dated: August 31, 2026

DORSEY & WHITNEY LLP

By s/ Meredith LaVine
John Marti (#0388393)
marti.john@dorsey.com
Ashley Repp (#0399661)
repp.ashley@dorsey.com
Meredith LaVine (#0506725)
lavine.meredith@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Attorneys for Defendant Thomas Matthew Tier (36)

**LAW OFFICE OF JORDAN S. KUSHNER**

s/ Jordan S. Kushner
Jordan S. Kushner, Reg. No. 219307
431 South 7th Street, Suite 2446
Minneapolis, MN 55415
(612)288-0545
jskushner@gmail.com

Attorneys for Defendant Nekima Levy Armstrong (1)

**THE JAB FIRM**

s/ Jill A. Brisbois
Jill A. Brisbois, Reg. No. 0345477
150 South 5th Street, Suite 1850
Minneapolis, MN 55402
(651)209-7797
jill@thejabfirm.com

Attorneys for Defendant Chauntyll Louisa Allen (2)

**BIRRELL LAW FIRM, PLLC**

s/ Ian S. Birrell
Ian S. Birrell, Reg. No. 0396379
Andrew S. Birrell, Reg. No. 133760
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
(952) 356-2393
ian@birrell.law andy@birrell.law

Attorneys for Defendant Jerome Deangelo Richardson (5)

**CAPITOL CITY LAW GROUP, LLC**

s/ A.L. Brown
A. L. Brown (# 331909)
287 East Sixth Street, Suite 20
Saint Paul, Minnesota 55101
(651) 705-8580
a.l.brown@cclawg.com

Attorneys for Defendant Jamael Lydell Lundy (6)

**LAW OFFICES OF ROBERT D. RICHMAN, LLC**

s/ Robert D. Richman
Robert D. Richman, Reg. No. 226142
P.O. Box 16643
St. Louis Park, MN 55416
(651)278-4987
robert@rdrichmanlaw.com

Attorneys for Defendant Trahern Jeen Crews (7)

**GAD & GAD LAW OFFICES LLP**

s/ Sarah R. Gad
Sarah R. Gad, Reg. No. 0403328 8 E 25th Street
Minneapolis, MN 55402
(612) 512-1870
sarah@gadlawoffice.com

Attorneys for Defendant Ian Davis Austin (9)

**KENNETH UBONG UDOIBOK, PA**

s/ Kenneth U. Udoibok
Kenneth U. Udoibok, Reg. No. 0262523
Flour Exchange Building, Suite 5010
310 Fourth Ave S.
Minneapolis, MN 55415
(612) 808-6031
k@kenulaw.com

Attorneys for Defendant Aziza M. Aboud (10)

**DEVORE LAW OFFICE, P.A.**

s/ Kevin DeVore
Kevin W. DeVore, Reg. No. 0267302
724 Bielenberg Drive, Ste 110
Woodbury, MN 55125
(651) 435-6500
kevin@devorelawoffice.com

Attorneys for Defendant Ezra Chaim Pye Blumenfeld (13)

**LEACH LAW OFFICE**

s/ Patrick G. Leach
Patrick G. Leach, Reg. No. 0286825
8961 Aztec Drive
Eden Prairie, MN 55347
(763) 220-6164
pgl@leachlawoffice.com

Attorneys for Defendant Kelly Ann Carey (15)

**DE LEÓN & NESTOR, LLC**

s/ Bruce D. Nestor
Bruce D. Nestor, Reg. No. 0318024
3547 Cedar Avenue South
Minneapolis, MN 55407
(612) 659-9019
nestor@denestlaw.com

Attorneys for Defendant Monique Cullars-Doty (16)

**MELVIN R. WELCH**

s/ Melvin R. Welch
Melvin R. Welch, Reg. No. 0387750
Commerce at the Crossings Bldg
250 South Second Street, Suite 205
Minneapolis, MN 55401
(612) 741-3272
mel@melvinwelchlaw.com

Attorneys for Defendant Tiffany Lynn Dunlap (17)

**LAW OFFICE OF STEVEN J. WRIGHT, LLC**

s/ Steven J. Wright
Steven J. Wright, Reg. No. 387336
331 Second Ave S, Suite 705
Minneapolis, MN 55401
(612) 669-8280
stevejameswright@gmail.com

Attorneys for Defendant Andrew Edwards (18)

**CHARLES F. CLIPPERT**

s/ Charles F. Clippert
Charles F. Clippert, Reg. No. 248848
101 East Fifth Street, Suite 1500
St. Paul, MN 55101
(651) 300-4109

charlie@clippertlaw.com

Attorneys for Defendant Rachel Goligoski (19)

**FORSGREN FISHER MCCALMONT DEMAREA TYSVER LLP**

s/ Caitlinrose H. Fisher
Caitlinrose H. Fisher, Reg. No. 0398358
1500 Capella Tower
225 South 6th Street
Minneapolis, MN 55402
(612) 474-3300
cfisher@forsgrenfisher.com

Attorneys for Defendant Ariel Hauptman (21)

**LOTUS LEGAL PLLC**

s/ Caroline H. Brunkow
Caroline H. Brunkow, Reg. No. 0398936
331 Second Ave South, Ste 420
Minneapolis, MN 55401
(612) 293-6963
cari@lotuslegalpllc.com

Attorneys for Defendant Krista Erin Hogan (22)

**KOCH AND GARVIS, LLC**

s/ Andrew S. Garvis
Andrew S. Garvis, Reg. No. 257989
3109 Hennepin Avenue South
Minneapolis, MN 55408
(612) 827-8101
andrew@uptownlawyer.com

Attorneys for Defendant Danielle Andrea Matthias (24)

**F. CLAYTON TYLER, P.A.**

s/ Karen Mohrlant
Karen E. Mohrlant, Reg. No. 388093
331 Second Avenue South, Suite 230

Minneapolis, MN 55401
(612) 333-7309
kmohrlant@fctyler.com

Attorneys for Defendant Catie Anne Michaelson (25)

**JOHNSON & GREENBERG PLLP**

s/ Lee R. Johnson
Lee R. Johnson, Reg. No. 0189935
5775 Wayzata Boulevard, Suite 700
St. Louis Park, MN 55416
(952) 545-1621
lrjohnsonslp@gmail.com

Attorneys for Defendant Eric Ryan Michaelson (26)

**LAW OFFICE OF ROBERT A. LENGELING, PLLC**

s/ Robert A. Lengeling
Robert A. Lengeling, Reg. No. 304165
310 Fourth Avenue South, Suite 1050
Minneapolis, MN 55415
(612) 963-1555
robert@lengelinglaw.com

Attorneys for Defendant David Okar (27)

**LAW OFFICES OF THOMAS H. SHIAH, LTD.**

s/ Thomas H. Shiah
Thomas H. Shiah, Reg. No. 100365
331 Second Avenue South, Ste 705
Minneapolis, MN 55401
(612) 338-0066
ths@tomshiah.com

Attorneys for Defendant Jarmel Perry (28)

**BEST & FLANAGAN LLP**

s/ Amy S. Conners
Amy S. Conners, Reg. No. 0387375

60 South 6th Street, Suite 2700
Minneapolis, MN 55402
(612) 349-5665
aconners@bestlaw.com

Attorneys for Defendant Cheryl Ann Persigehl (29)

**GOETZ & ECKLAND P.A.**

s/ Frederick J. Goetz
FREDERICK J. GOETZ
Attorney Registration No. 185425
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552
FGoetz@goetzeckland.com

Attorneys for Defendant Emmar Monike Pineda-Moreno (30)

**RINGSTROM DEKREY PLLP**

s/ Dane DeKrey
Dane DeKrey, Reg. No. 0397334
814 Center Avenue, Suite 5
Moorhead, MN 56560
(218) 284-0484
dane@ringstromdekrey.com

Attorneys for Defendant Spencer Michael Rodriguez-Bocanegra (31)

**ARNESON LAW OFFICE PLLC**

s/ Wyatt Arneson
Wyatt Arneson, Reg. No. 0392071
5 Grain Exchange Building
400 South 4th Street
Minneapolis, MN 55415
(612) 746-1188
wyatt@arnesonlawllc.com

Attorneys for Defendant Katherine Shaw (32)

**GERDTS LAW, PLLC**

s/ Daniel L. Gerdts
Daniel L. Gerdts, Reg. No. 207329
331 Second Avenue South, Suite 705
Minneapolis, MN 55401
(612) 800-5086
daniel@danielgerdtslaw.com

Attorneys for Defendant Satara Diann Strong-Allen (33)

**SIEBEN & COTTER, PLLC**

s/ Patrick L. Cotter
Patrick L. Cotter, Reg. No. 0319120
105 Hardman Court, Suite 110
South St. Paul, MN 55075
(651) 455-1555
patrick@siebencotterlaw.com

Attorneys for Defendant Charles Swenson (34)

**LANGERT LAW, LLC**

s/ Maggie G. Langert
Maggie G. Langert, Reg. No. 0308316
724 Bielenberg Drive #54
Woodbury, MN 55125
(612) 470-4810
maggie@langertlaw.com

Attorneys for Defendant John Vergin (38)