**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,<br><br>Defendants. | No. 0:26-cr-025-LMP-DLM<br><br>**OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS SUPPERSEDING INDICTMENT DUE TO OUTRAGEOUS USE OF SECTION 1509 SUMMONSES (Dkt. 695)** |

The United States of America submits this brief in response to Defendants' joint motion to dismiss the Superseding Indictment due to Homeland Security Investigation's ("HSI") outrageous use of summonses issued pursuant to 19 U.S.C. § 1509.[1]

## INTRODUCTION

Defendants contend that HSI's use of administrative summonses to obtain information from third parties (primarily telecommunication

[1] The motion was a joint motion by Defendants Armstrong, Allen, Kelly, Richardson, Lundy, Austin, Crews, Aboud, Adamson, Blumenfeld, Carey, Cullars-Doty, Dunlap, Edwards, Goligoski, Hauptman, Hogan, Matthias, both Michaelsons, Okar, Perry, Persigehl, Moreno, Bocanegra, Shaw, Strong-Allen, both Swensons, Tier, Tuggle, Vergin, Weinfurter, and Fort. Defendants Lemon (Dkt. 734), Bollman (735) and Hansa (785) separately joined the motion.

companies) is so far beyond the pale as to constitute outrageous government conduct thereby requiring dismissal of the Superseding Indictment.

As explained in other filings by the government, and reiterated here, HSI's use of summons pursuant to § 1509 was entirely appropriate, and even it was not, it did not rise to the level of intolerable conduct requiring dismissal. Accordingly, Defendants' motion should be denied.

## STATEMENT OF FACTS

### I. The Alleged Conduct

According to the indictment, on Sunday, January 18, 2026, Defendants descended on Cities Church in St. Paul, Minnesota. The agitators conspired to disrupt a liturgical worship service in "a coordinated takeover-style attack." (Dkt. 144 at 3.) Because of this attack, the pastor and congregants were forced to end their worship service. (*Id.*) Several congregants fled the Church, fearing a mass shooting. (*Id.* at 12.) In the rush to escape, one congregant suffered an injury to an elbow when she slipped on an icy, unused sidewalk. (Dkt. 23-1 at ¶ 43.)

### II. General Procedural History

On or about January 20, 2026, the Government obtained a complaint and arrest warrant against defendants Armstrong, Allen, and Kelly for a violation of 18 U.S.C. § 241 (Conspiracy Against Rights). (Dkt. 23-1.) On January 29, 2026, a federal grand jury issued an indictment against nine defendants.

On February 26, 2026, the grand jury issued a superseding indictment charging an additional 30 defendants. (Dkt. 144.) All Defendants are charged with the same two charges: (1) Conspiracy Against Federally Secured Rights, in violation of 18 U.S.C. § 241; and (2) Interference with the Free Exercise of Religion at a Place of Religious Worship, in violation of 18 U.S.C. § 248(a)(2).

## III. The Government's issuance of § 1509 Summonses

On or about January 20, 2026, the Government (via DHS-ICE agents who were working with Department of Justice counsel) began issuing a series of § 1509 summonses to a variety of third parties. HSI sent summonses primarily to telecommunication companies seeking phone subscriber and call log information. HSI also sent summonses to airlines in an attempt to identify potential travel of indicted defendants in an effort to pin-point their location to execute arrest warrants. HSI similarly issued § 1509 summonses to the Minnesota Department of Employment and Economic Development ("MDEED") to obtain defendants' employment data.

A recipient's failure to comply with a § 1509 summons can trigger a judicial enforcement action, but in this instance, the government did not pursue legal action against non-compliant third parties. For purposes of this case, there was nothing unusual about the summonses. It is a tool in the HSI investigatory toolbox that is regularly used to obtain third-party information in which defendants do not have a Fourth Amendment privacy interest.

Moreover, contrary to any assertion by the Defendants, the summonses were not used to obtain location tracking data.

**LEGAL STANDARD**

Dismissal of a criminal case based on alleged outrageous government conduct is an extraordinary remedy that applies only in the rarest of circumstances. *See United States v. Combs,* 827 F.3d 790, 794 (8th Cir. 2016) (citing *United States v. Russell,* 411 U.S. 423, 432 (1973) and *United States v. King,* 351 F.3d 859, 867 (8th Cir. 2003)). Dismissal is "reserved for conduct that falls within the narrow band of the most intolerable government conduct." *King*, 351 F.3d at 867. Dismissal is appropriate only where law enforcement conduct violates "that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause." *Combs*, 827 F.3d at 794 (citing *Russell*, 411 U.S. at 432). This is a demanding standard. The government's conduct must be more than aggressive, persistent, or even questionable, it must be conduct that violates fundamental fairness and shocks the conscience before dismissal is warranted. *United States v. Bugh,* 701 F.3d 888, 894 (8th Cir. 2012); *King*, 351 F.3d at 867; *Combs,* 827 F.3d at 795. Because dismissal is such a drastic remedy, the defendant bears a heavy burden to demonstrate that the government's conduct is outrageous. *King,* 351 F.3d at 867.

**ARGUMENT**

The level of misconduct required to justify dismissal is "quite high," and the government's conduct must truly "shock the conscience of the court." *King*, 351 F.3d at 867; *see also Combs*, 827 F.3d at 795 ("We are aware of only two reported court of appeals decisions—both from the 1970s—that have deemed the government's conduct so outrageous as to violate due process.");[2] *United States v. Bugh*, 701 F.3d 888, 894 (8th Cir. 2012) (noting that dismissal is warranted only when government conduct falls within the "narrow band of the most intolerable government conduct") (emphasis added). Defendants come nowhere close to justifying dismissal.

Defendants allege that HSI abused § 1509 by issuing summonses as part of its criminal investigation, thereby exceeding the authority conferred by Congress, and that this abuse is so shocking to the conscience that dismissal is required.[3] Defendants are incorrect. HSI's use of § 1509 summonses was

---

[2] In both instances, government agents were directly involved in initiating and furthering the criminal conduct. *See United States v. Twigg*, 558 F.2d 373 (3d Cir. 1978) and *United States v. Greene*, 454 F.2d 783 (9th Cir. 1971). Here, government agents were in no way involved in the charged conduct.

[3] At least one court has noted that "[b]ecause the alleged government misconduct occurred after the conclusion of the criminal acts, the outrageous-government-conduct doctrine would not apply." *United States v. Dominguez*, 2026 U.S. App. LEXIS 3529, 2026 WL 294406 (11th Cir. Feb. 4, 2026).

lawful, and even if they were not, the § 1509 summonses at worst resulted from a reasonable misinterpretation of the law, not outrageous misconduct.

## I. The Government's Use of § 1509 Summonses Was Lawful

Courts have repeatedly held that the information typically sought via a § 1509 summons is subject to the third-party doctrine and that defendants do not have reasonable expectation of privacy for such data.[4] *See United States v. Wellbeloved-Stone*, 777 Fed. Appx. 605, 607 (4th Cir. 2019) (internet and phone subscriber information); *Merrell*, 88 F.Supp.3d at 1032 (employment records from Minnesota Department of Economic and Employment Development); *United States v. Meyrand*, 2025 WL 1282638 at *1-2, 2025 U.S. Dist. LEXIS 84060 (E.D. Mo., May 2, 2025) (internet subscriber information) (citing *United States v. Wheelock*, 772 F.3d 825, 828 (8th Cir. 2014)). Accordingly,

Congress has vested administrative summons or subpoena authority with a variety of federal agencies, including those with a law enforcement function. *See, e.g.,* 18 U.S.C. § 3486; 21 U.S.C. § 876. The use of § 1509 summonses is a similar tool used by DHS to investigate crimes within its expanded portfolio of responsibilities. Section 1509 summonses have been

[4] The Supreme Court has held that criminal defendants generally do not have standing under the Fourth Amendment to challenge government obtaining third-party data. *United States v. Payner*, 447 U.S. 727 (1980).

employed to obtain information from third parties, much like the use of other administrative subpoenas or summonses. *See e.g., United States v. Hassanshahi*, 145 F.Supp.3d 75, 86 (D.D.C. 2015) (analyzing alleged abusive use of administrative subpoenas issued under 21 U.S.C. § 876).[5]

Defendants argue that the summonses are unlawful because § 1509 summons authority originally was conferred upon the former Customs Service for the purpose of investigating compliance with international trade statutes. But when Congress enacted the Homeland Security Act of 2002, it transferred all "functions, personnel, assets, and liabilities of the United States Customs Service of the Department of Treasury" to DHS. 6 U.S.C. § 203(1).

One historical responsibility that DHS inherited from the legacy Customs Service is the investigation of assaults on federal officers. Indeed, the Justice Manual, which also has not been accurately updated to reflect the advent of DHS, notes that the Customs Service (now subsumed into ICE and HSI) typically maintains the authority to investigate assaults on its own

[5] The use of summons or administrative subpoena authority aimed at targeting specific criminal conduct is not a bar from using information obtained via that summons authority in a criminal prosecution unrelated to the underlying summons authority. *Hassanshahi* involved alleged systematic and intentional abuse of administrative subpoenas issued under 21 U.S.C. 876, which is a tool for investigating narcotics violations. But the charges in the case were for violations of foreign sanctions, completely unrelated to controlled substances. 145 F.Supp.3d at 75, 85.

federal officers. *See* Justice Manual § 9-65-600, Assaults on and Kidnappings of Federal Officers, (updated Jan. 2020). As such, HSI now has the authority to investigate assaults or attempted assaults on ICE officials.

HSI may investigate such assaults via the issuance of § 1509 summonses. Crucially, 19 U.S.C. § 1589a, provides that "an officer of the customs" may "execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States" and make lawful arrests without a warrant "for **any offense** against the United States … or for a felony, **cognizable under the laws of the United States**." 19 U.S.C. § 1589a (emphasis added). Although the statute, which was originally enacted in 1930, contains the language "officer of the customs," courts have held that this language now refers to any officer of DHS. *See, e.g., United States v. Jackson*, 2023 WL 7320614 at *11-12, 2023 U.S. Dist. LEXIS 199739 (D. Vt., Nov. 7, 2023) (noting traditionally broad investigative power of Customs Service now merged into DHS) (emphases added). These courts are correct. Under the axiom *lex posterior derogat legi priori* (a later law repealed an earlier law), Congress's creation of DHS and transfer of the Customs Service into DHS override the use of customs-specific language in earlier statutes. *See Patterson v. Indep. School Dist.*, 742 F.2d 465, 468 (8th Cir. 1984) (abrogated by later statute).

Several federal courts accordingly have held that HSI may issue § 1509 summonses for purposes unrelated to customs investigations. In *United States v. Smajlovic*, 2026 WL 785026 at *3, 2026 U.S. Dist. LEXIS 59147 (E.D. Mo. Mar. 20, 2026), the court held that HSI could use § 1509 summons to investigate cyber-crime and child pornography. The court explained that the creation of DHS subsumed all of the former Customs Service's authority into DHS. And when Congress granted DHS authority to investigate cyber-crime and child pornography, it thereby implicitly authorized DHS to use § 1509 summons authority as part of these investigations. *Id.* at 4. Other courts have approved DHS's use of § 1509 summonses for non-traditional customs investigations. *See, e.g., United States v. Merrell*, 88 F.Supp.3d 1017 (D. Minn. 2015) (approving use of § 1509 summonses in child pornography investigation); *United States v. Cray*, 673 F.Supp.2d 1368 (S.D. Ga. 2009) (same).

The summonses here were lawful. Defendants allegedly sought to threaten or intimidate the acting Regional Director of Immigration and Customs Enforcement ("ICE"), an agency within DHS. Their conduct may amount to assault on a federal officer, chargeable under 18 U.S.C. § 111 or § 372. HSI therefore may investigate their actions. *See Hallock v. United States*, 253 F. Supp.2d 361, 365 (N.D.N.Y. 2003) (noting broad authority of legacy Customs agents to assist in investigating "any crime" including those not "traditionally thought to be a customs function"). The fact that—to date—the

investigation has resulted only in the filing of civil rights charges is irrelevant. An investigation is not illegal just because it ultimately does not result in charges; the point of an investigation is to determine whether charges can be brought.

Contrary to Defendants' argument, 28 U.S.C. § 535 does not eliminate HSI's authority to issue a § 1509 summons. Section 535 allows the Attorney General and the FBI to investigate violations of Federal law involving government officers. It does not confer *exclusive* authority on the Attorney General and the FBI or limit other agencies' statutory authority to investigate these matters.

## II. Even If Unlawful, the § 1509 Summonses Do Not Warrant Dismissal

At the very worst, the government has a colorable and good-faith argument, supported by precedent, that the § 1509 summonses were lawful. Any legal errors here were not outrageous enough to warrant dismissal.

In *United States v. Reed*, the court examined the alleged misuse of a § 1509 summons, in which the defendant argued that the evidence obtained be excluded or the indictment dismissed for outrageous government conduct. There, the court correctly noted

> that no Fourth Amendment interests [were] implicated because Defendant has no reasonable expectation of privacy in the … information which was gathered. Likewise, no Fifth Amendment interests [were] implicated because the conduct was not so

> outrageous that it shocks the conscience or offends judicial notions of fairness or is offensive to human dignity.

2008 WL 11350272, 2008 U.S. Dist. LEXIS 129651 at *10 (D.S.D. Nov. 17, 2008), *recommendation adopted* 2009 WL 10678958, 2009 U.S. Dist. LEXIS 139664 (D.S.D. May 7, 2009).

Defendants nevertheless essentially argue that they have due process rights regarding the utilization of § 1509 summons authority, which they assert HSI exceeded. Defendants are wrong on both the facts and the law. "The outrageousness required to prove this type of due process violation is high. Such claims involve coercion, violence, police brutality, or over-involvement in a crime that reaches of demonstrable level of outrageousness." *United States v. Harris*, 2007 WL 2236730, 2007 U.S. Dist. LEXIS 57114 at *3 (E.D. Ark., Aug. 3, 2007). Those factors are absent from this case. Moreover, as explained below, the § 1509 summonses were used to obtain third-party data in which the Defendants have no Fourth Amendment privacy interest. Accordingly, there is no due process violation because "the limitations of the Due Process Clause come into play only when the Government activity in question violates some protected right of the defendant." *United States v. Payner*, 447 U.S. 727, 736 n.9 (1980) (cleaned up).[6]

---

[6] Courts have also been unwilling to accept that a defendant has satisfied the high burden of demonstrating outrageous government conduct even when

## III. Defendants' Request for Discovery for Policies, Procedures and Guidance Should be Denied

Rule 16(a)(2) of the Federal Rules of Criminal Procedure exempts from discovery internal government documents made by government agencies in connection with the investigation or prosecution of the case. While any DHS policies, procedures, or guidance regarding use of § 1509 summons authority may not have been prepared specifically for this case, the underlying principle of Rule 16(a)(2) is applicable. "Materials relevant to agency guidelines are not discoverable as 'material to the defense' or *Brady*." *United States v. Salyer*, 271 F.R.D. 148, 168-69 (E.D. Cal. 2010) (citing *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000)). There, like here, the defendant sought discovery of internal guidelines, policies and procedures to "check the government's work." The Court, relying on Rule 16, denied the discovery request, emphasizing that "courts do not enforce internal executive branch guidelines." *Id.* (citing *United States v. Caceres*, 440 U.S. 741, 755-56 (1979)); *see also United States v. Riese*, 2024 WL 3402832, 2024 U.S. Dist. LEXIS 125162 at *10 (D.S.D May 23, 2024) (order denying discovery regarding law

---

it assumes for the sake of argument that the alleged misconduct is true. For instance, in *United States v. Chatman*, the district court refused to dismiss the indictment even accepting the defendant's allegations that the traffic-stop leading to his arrest and indictment was unlawful. 2011 WL 7037129, 2011 U.S. Dist. LEXIS 151380 at *7 (W.D. Pa. Nov. 23, 2011).

enforcement operations), *adopted by* 2024 WL 3400699, 2024 U.S. Dist. LEXIS 125470 (D.S.D. July 11, 2024).

"It is well established that the executive branch is privileged not to disclose intra-governmental documents reflecting advisory opinion, recommendations and deliberations compromising part of a process by which governmental decisions are formulated." *United States v. Berrigan*, 482 F.2d 171, 181 (3d Cir. 1973). The material Defendants seek in discovery is not relevant to the guilt or innocence of Defendants and is outside the scope of Rule 16 because it is unnecessary for their defense. Defendants' request is overbroad and moreover, seeks agency work-product which "enjoys almost absolute immunity" from production. *In re GMC*, 209 F.3d 1051, 1054 (8th Cir. 2000). "Criminal defendants do not have a general constitutional right to discovery." *United States v. Johnson*, 228 F.3d 920, 924 (8th Cir. 2000). Accordingly, Defendants overbroad and irrelevant discovery request for agency work-product related to the utilization of § 1509 summonses should be denied.

**CONCLUSION**

For the foregoing reasons, Defendants' motion should be denied.

DATED: September 18, 2026.

DANIEL N. ROSEN
United States Attorney

ABRAHAM KAPLAN
Assistant United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

FLAVIO ABREU
JOSHUA R. ZUCKERMAN
KELSEY E. MCGEE
Attorneys

JOHN ARBOLEDA
Acting Trial Attorney

*/s/ Neville S. Hedley*

Neville S. Hedley
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 297-3424
E-Mail: neville.hedley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA