**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br>v.<br><br>**NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,**<br>Defendants. | Case No. 26-cr-25 (LMP/DLM)<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO SUPPRESS EVIDENCE (ECF 775).** |

Defendant Armstrong moves to suppress evidence obtained during the search of her phone's data and all evidence derived from that search. Doc. 775 ("Motion"). This court should deny her motion.

## BACKGROUND

On January 22, 2026, Armstrong was arrested pursuant to a bench warrant. (Doc. 2). Her cell phone was on co-defendant Allen's person, which was seized at the time of Allen's arrest. Doc. 775-2 at 25.[1] At the time, Armstrong's phone was placed in a Faraday bag and transported to the Warren

[1] Although Armstrong attached the warrant application and supporting affidavit to her motion, the affidavit is still under seal, thus requires the government to respond. Given the number of motions, the Government cannot file all of the challenged affidavits and related documents under seal, nor can we currently file motions to unseal in each miscellaneous case number for each warrant. Thus, if the Court believes it is necessary, the Government hereby requests entry of a general order that unseals all of the challenged warrants or permits the parties to make reference to the contents of the affidavits (as defendants already have), except to the extent they might disclose PII. The Government is prepared to present the warrants at any subsequent evidentiary hearing.

E. Burger Federal Building in St. Paul, MN. *Ibid.* Allen identified the phone seized at the time of arrest as Armstrong's phone. *Ibid.*

On January 23, Homeland Security Investigation Special Agent Timothy Gerber applied for a warrant to search Allen's phone. Doc. 775-2. That same day, Magistrate Judge Elkins issued a search warrant. 775-2 at 32. Previously, on January 21, Agent Gerber also applied for a warrant for Armstrong's phone information from her phone provider, T-Mobile. Doc. 775-1. That same day, Magistrate Judge Micko issued a search warrant. Doc. 775-1 at 20. Agents subsequently searched Armstrong's phone and electronic data. Armstrong does not challenge the seizure of her data from T-Mobile.

## ARGUMENT

Armstrong challenges the seizure of her phone. Because both seizure and search were lawful, this Court should deny her motion. Further, Armstrong incorporates by reference the joint motion related to the use of 19 U.S.C. 1509 Summons and requests suppression of all records obtained because of the summons. (Doc. 695). This Court should likewise deny this as well.

### I. Federal agents lawfully seized Armstrong's phone.

Law-enforcement officers ordinarily need a warrant to conduct a search or seize property. However, the Supreme Court has long recognized a "search-incident-to-arrest exception to the Fourth Amendment's warrant requirement." *Arizona v. Gant*, 556 U.S. 332, 335 (2009). When conducting a

search incident to arrest, police may search "the space within an arrestee's immediate control, meaning the area from within which he might gain possession of … destructible evidence." *Id.* This space includes "the area into which an arrestee might reach." *Chimel v. California*, 395 U.S. 752, 763 (1969). "Because a seizure is generally less intrusive than a search, the Supreme Court 'has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant, where a warrantless search … would have been impermissible.'" *United States v. Bragg*, 44 F.4th 1067, 1071 (8th Cir. 2022) (quoting *Segura v. United States*, 468 U.S. 796, 806 (1984)).

Armstrong's phone was in the possession of Allen during her arrest. The phone therefore was plainly within Allen's "immediate control" and seized incident to Allen's arrest. This "seizure of [a] cell phone on [her] person was not unlawful." *United States v. Black*, 2015 WL 13660478 at *7 (D. Minn. Apr. 10, 2015). Armstrong has no reasonable expectation of privacy in property that is in the possession of a third party. *See generally Carpenter v. United States*, 585 U.S. v. 296, 303 (2018) (no reasonable expectation of privacy shared with wireless carriers); *California v. Greenwood*, 486 U.S. 35 (1988) (no reasonable expectation of privacy in bags placed outside for collection).

## II. The search warrant was lawful.

Courts may issue a warrant only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. When evaluating an application for a warrant, the "task of the issuing magistrate is simply to make a practical, common-sense decision whether … there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983) (cleaned up). In other words, courts reviewing a warrant after the fact should accord "great deference to the issuing judge's determination that [the] affidavit established probable cause." *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009) (quotation marks omitted).

### A. There was sufficient probable cause to seize and search the phone.

Defendant Armstrong's arguments that no probable cause existed for seizing and searching her phone (Mot. at 2), fail as there was sufficient probable cause for the search warrant obtained for her phone. A warrant requires a fair probability that evidence will be found in the place searched, assessed through practical, commonsense inferences. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).

This affidavit met that standard. The alleged criminal conspiracy operation was saturated with electronic activity. It was advertised on Instagram by Armstrong (Doc. 775-2 at 15-16); organizers electronically distributed a secret address; Armstrong planned the pre-operation briefing. Doc. 775-2 at 5; Armstrong identified "Operation Pullup" as a "clandestine operation" and addressed the agitators to "disrupt business as usual" Doc. 775-2 at 7; Armstrong encouraged agitators to hide anything identifying their activism, *Ibid.*; and identifying that the reason the church was being targeted was a pastor's employment with ICE. Doc. 775-2 at 11-12.

From those facts, the issuing judge could reasonably infer that probable cause existed that the phone contained communications, contacts, Internet activity, travel or location information, photographs, videos, or attribution evidence concerning the alleged offenses. There was probable cause to believe that Armstrong used her phone "to contact co-conspirators during or after [or before] committing a crime." *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021). And as discussed below, the detailed affidavit was not so lacking in probable cause that the phone contained evidence "connected to criminal activity" (Mot. at 3), that reliance on the issuing judge's determination was objectively unreasonable. *United States v. Leon*, 468 U.S. 897, 922-223 (1984).

**B. The warrant was not overbroad.**

Armstrong argues that the warrant was overbroad. Mot. at 3-4. These arguments also fail and should be rejected.

*First,* the application for the warrant provided the requisite nexus. "In order to support an application for a search warrant, there must be evidence of a nexus between the contraband and the place to be searched." *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) (cleaned up). A nexus exists where "information in the affidavit establishe[s]" a search … would likely result in the discovery of evidence" of a crime. *Id.*

The warrant application makes clear that evidence related to Armstrong's alleged crimes could be found on her cell phone. As discussed above, Armstrong is charged with leading a conspiracy, so there was more than a "fair probability" that she used her phone "to contact co-conspirators during or after [or before] committing a crime." *Gates*, 462 U.S. at 238 (first quote); *James*, 3 F.4th at 1105 (second quote). The warrant application explained this. *See* Doc. 775-2 at 30 (¶ 71) (explaining that the phone "might serve as direct evidence of the crimes described on the arrant, but also forensic evidence that establishes how the [phone] were used, the purpose of its use, who used it, and when.").

Armstrong argues that the warrant application failed to establish that Armstrong "used her phone in connection with any criminal activity or that

the phone could contain evidence of a crime." Mot. at 4. Further, she argues that there was no explanation of how Armstrong's "travel history, financial activity[], personal or business emails, photos, videos, social media activity, or anything else" related to her actions in planning the invasion of Cities Church on January 18, 2026. Mot. at 4. This argument is without merit. The warrant specified social media activity that Armstrong used from her personal accounts to advertise the invasion, (Doc. 775-2 at 15-16), communications with other co-conspirators for a "clandestine" pre-operation briefing, (Doc. 775-2 at 5), and knowledge of the location of Cities Church so she could direct others to it, (Doc. 775-2 at 5). The warrant contained sufficient evidence to establish the connection between the crimes alleged and Armstrong's phone.

*Second*, the warrant is not an impermissible general warrant. The Fourth Amendment requires that warrants "particularly describe[e] the place to be searched." U.S. Const. Amend. IV. The particularity requirement "is a standard of practical accuracy rather than a hypertechnical one." *United States v. Summage*, 481 F.3d 1075, 1079 (8th Cir. 2007) (quotation marks omitted). "The degree of specificity required will depend on the circumstances of the case and the type of items involved." *Id.*

The warrant authorized the United States to search only "records on the SUBJECT DEVICE . . . that relate to the [charged offenses." Doc. 775-2 at 34.

Although the warrant contained "broad language," it did "did not authorize a blanket search of documents for no particular purpose, but rather for the purpose of discovering evidence" of a specific crime. *United States v. Fiorito*, 640 F.3d 338, 346-347 (8th Cir. 2011) (upholding as "sufficiently particularized" a warrant seeking "[e]ntire files involving [a mail-fraud defendant], including but not limited to … any other document for any other residential real property transaction.").

Any pre-January 18 communications between Armstrong and her codefendants in the planning of the pre-operation briefing, coordinate going from that meeting to the church, and instructing others to "disrupt business as usual," could uncover evidence relating to "motive, opportunity, [or] intent" to conspire to use force or threat of force against ICE agents. Fed. R. Evid. 404(b)(2). And in any event, "the infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant … but does not require the suppression of anything described in the valid portions of the warrant." *United States v. Fitzgerald*, 724 F.2d 633, 637 (8th Cir. 1983). If this Court determines that the warrant is temporally overbroad, evidence created on or after January 18, 2026, therefore should not be suppressed.

Even though Armstrong's "phone very likely also contain[ed] a plethora of information unrelated to the government's investigation, such as business-related correspondence and transactions; photographs; passwords; apps;

potential attorney-client communications; and private communications with friends, family, and business associates, this fact does not transform the warrant into a general warrant." *Lindell v. United States*, 82 F.4th 614, 620 (8th Cir. 2023). Lastly, even if this Court were to conclude that the warrant was so obviously overbroad as to render official belief in its validity objectively unreasonable, this Court should suppress only that information obtained pursuant to the potentially overbroad portion of the warrant. *See United States v. Fitzgerald*, 724 F.2d 633, 636 (8th Cir. 1983) (en banc).

**C. The seizure and subsequent search of Armstrong's phone does not violate Fourth Amendment safeguards as it was a product of inevitable discovery.**

The United States maintains the position that the warrant for Armstrong's phone was properly sought with sufficient probable cause and properly executed. However, the search and seizure of Armstrong's phone is admissible evidence because the phone and electronic data were inevitably going to be discovered. *Nix v. Williams*, 487 U.S. 431 (1984). A search that may have been inadmissible is still proper if the "evidence would have been acquired by lawful means had the unlawful search not occurred" but was acquired by "lawful means." *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). Although Armstrong's phone was found on Allen, Allen's search was a lawful search incident to arrest, (*See* Doc. 858), and Armstrong's phone, were it within her control at the time of her arrest, would have been a lawful search

incident to arrest or lawful under the plain view doctrine. *See Black*, 2015 WL 13660478 at *7 (D. Minn. Apr. 10, 2015); *United States v. Oliver*, 2017 WL 187142 (D. Minn. Jan. 17, 2017). As explained below, due to the circumstances and Armstrong's involvement in the conspiracy against rights, her phone would have inevitably been discovered. *See Baez*, 983 F.3d at 1037.

Armstrong was an organizer for the events which led to her arrest and indictment for violations of 18 U.S.C. 248(a)(2) and 18 U.S.C. 241. Armstrong planned the pre-operation briefing. Doc. 775-2 at 5. Armstrong defined herself as an "activist" who identified "Operation Pullup" as a "clandestine operation" and addressed the agitators to "disrupt business as usual." Doc. 775-2 at 7. Armstrong encouraged agitators to hide anything identifying their activism. *Ibid.* While being interviewed by defendant Lemon, defendant Armstrong reiterated that the agitators were at Cities Church because a pastor is employed by Immigration and Customs Enforcement (ICE). Doc. 775-2 at 11-12.

Federal agents identified advertisements for "Operation Pullup" posted on Armstrong's personal Instagram account. Doc. 775-1 at 15-16; Doc. 775-2 at 15-16. Agents also identified that Armstrong routinely listed her personal phone number as the contact for activism events. Doc. 775-2 at 16.

Sufficient probable cause existed, such that, even if the application and warrant violated the Fourth Amendment, there is ample reason to conclude

that agents would have sought a warrant for Armstrong's phone and it would have been seized, thereby satisfying the exception to the warrant requirement under the inevitable discovery doctrine. *See Baez*, 983 F.3d at 1037.

### D. The Government appropriately searched the phone according to filter-team protocols.

Additionally, The United States acknowledges that it established a filter team in accordance with standard Department of Justice procedures to ensure that prosecutors would not have access to messages outside the "temporal limitation" of the warrant. The United States has explained that the filter team "has been instructed to respect the attorney-client privilege and related interests and to seize only those items falling within the scope of the warrant." And this Court has recognized that these procedures are "appropriate." Doc. 86 at 2. The United States has followed the filter procedures in searching Armstrong's phone. The filter team produced to the prosecution team only the post-filter documents that fall within the scope of the warrant, and it did not produce any "unredacted extraction report" or other documents that fall outside the scope of the warrant.

## III. Even if the warrant violated the Fourth Amendment, the good faith exception still proves the warrant valid.

Even if the application and warrant violate the Fourth Amendment, the good-faith exception requires this Court to deny Armstrong's request to suppress "all evidence obtained from her cell phone." Mot. 5. Pursuant to the

good-faith exception, suppression is not "an appropriate remedy" where officers "obtained [evidence] in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922. "[A]n officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Id.* Thus, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926. Thus, "suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926; *see also United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (same).

Armstrong does not argue that Special Agent Gerber or any other law-enforcement officer was dishonest, reckless, or lacked an objectively reasonable belief that there was probable cause to search Armstrong's phone. The good-faith exception therefore applies.

**IV. The use of the 1509 summons was proper.**

The government refers this Court to Doc. 817 which thoroughly encompasses the government's argument on the proper use of 1509 summonses in this case and specifically with respect to defendant Armstrong.

## CONCLUSION

This Court should deny Armstrong's motion to suppress the search of her phone and the use of a 1509 summons as both were objectively proper.[2]

DATED: October 16, 2026.

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE HEDLEY
Acting Senior Litigation Counsel

KELSEY E. MCGEE
Attorney

*/s/ Kelsey E. McGee*
Kelsey E. McGee

Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 297-3424
E-Mail: Neville.Hedley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[2] Not including this footnote, this motion response is 2,736 words as measured by Microsoft Word.