**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
Crim. No. 26-25 (LMP/DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, et al.,<br><br>Defendants. | **GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR A BILL OF PARTICULARS (Dkt. 763)** |

## I. INTRODUCTION

As fully described in the charging document, this case involves a short-duration conspiracy that began and ended within days, with the core conduct occurring approximately over two hours on the morning of January 18, 2026.

The Defendants' Joint Motion does not detail any deficiencies regarding specific defendants, but instead, collectively asks the government to tell the Defendants, before trial, how the government will prove the charged offenses. The Defendants' ten requested particulars, among other items, demands the government identify the precise words and acts that will establish each individual defendant's liability, to assign every collective conspiracy allegation to specific defendants, and identify which theories (substantive, attempt, aiding and abetting, conspiracy, or vicarious liability) the government will pursue against each defendant. Dkt. 763 at 6–8. There is no rule or case law to support Defendants' requests.

Rule 7 requires an indictment state the essential facts of the offense in a plain, concise, and definite manner. Fed. R. Crim. P. 7(c)(1). It does not require the government draft a pretrial narrative of how it will prove its case. The Eighth Circuit has long made clear that a bill of particulars is meant to ensure adequate notice and prevent unfair surprise, not to require the government to disclose its trial strategy.

The Superseding Indictment already does far more than Rule 7 demands. It identifies the protected right and the place of worship, details the charged conspiracy to a two-day period, sets out the agreement's object and the operation's manner and means, and then details forty-one overt acts spanning planning, reconnaissance, briefing, coordinated entry, and the conduct inside and outside the Church. ECF No. 144 at 2, 5–6, 16. Count Two incorporates those allegations and charges all defendants, acting jointly and aiding and abetting one another, with using force, threats, and physical obstruction to interfere with persons exercising religious freedom. *Id*. at 18.

Even if Defendants could claim surprise based on the indictment — and they cannot — the discovery record also forecloses it. The planning and execution of this conspiracy was captured on video, and the government has produced a comprehensive discovery record, including communications, videos, witnesses' statements, medical reports, and data from Defendants' devices and accounts. These disclosures, together with the indictment, give Defendants full notice of the charges and evidence, eliminating any claim of unfair surprise.

The Defendants' Joint Motion should be denied.

## II. BACKGROUND

Defendants' Joint Motion asserts that the "indictment provides not a shred of detail." Dkt. 763 at 2. This is false.

The Superseding Indictment charges a single, tightly bounded course of conduct centered on Cities Church in St. Paul. It alleges that on the morning of January 18, 2026, the Church's pastor was leading a service while the pastor and congregation were exercising their First Amendment right to religious freedom at a place of worship. Dkt. 144 at 2. After the service began, approximately thirty-nine agitators, including all Defendants, entered the sanctuary in a coordinated takeover-style operation and engaged in acts of oppression, intimidation, threats, interference, and physical obstruction described in the indictment. *Id*. at 3. And the Defendants succeeded. Because of their conduct, the pastor and most worshipers ended their religious service and were driven from the Church, *id*. at 15, with some of the Defendants then chanting "Who shut this down? We shut this down." *Id*.

Count One charges all defendants with conspiring, from January 17 through January 18, 2026, to oppress, threaten, and intimidate clergy, staff, and congregants of Cities Church in their free exercise of religion, as protected by 18 U.S.C. § 241. Dkt. 144 at 3.

The indictment also details the conspiracy's manner and means. Among other things, it alleges that Armstrong, Allen, Strong, and Cullars-Doty organized the operation dubbed "Operation Pullup" and promoted it online. *Id*. at 5. Armstrong and Allen then conducted a pre-operation briefing to the defendants who responded to the Operation

Pullup flyer and proceeded to identify the target of their operation and explained how the operation would unfold. *Id*. at 5.

The forty-one overt acts add additional further detail. They performed reconnaissance of the Church and its parking areas, including Allen's remark that they could "clog up this whole alleyway." They prepared and distributed the Operation Pullup flyer, with six named defendants advertising the flyer on their social media accounts. *Id*. at 7-8. The overt acts continue, noting the specific measures taken to preserve operational secrecy, rehearsed chants, and Armstrong's instruction that a "first wave" enter undercover, disperse through the sanctuary, and avoid activist-identifying clothing until entry by a second wave. *Id*. at 7–10. Defendant Lemon recorded the pre-operation briefing, with Armstrong telling the pre-operation briefing and Lemon's viewers that they intended to show up at a key location and disrupt business as usual. Dkt. 144 at 9. Allen directed everyone proceed to the location "bumper to bumper" and confirmed that everyone has the address. *Id*. The indictment then alleges that the Defendants traveled to the Church in unison, entered the Church in the two planned waves, and participated in the operation. *Id*. at 11.

The charging document also details conduct inside the sanctuary. It alleges that Armstrong interrupted the sermon; that others joined by yelling and blowing whistles; that the situation became chaotic and menacing; and that thirty-three defendants joined chants accompanied by hostile and aggressive gestures perceived by congregants and staff as threats of violence. *Id*. at 12–13. It further alleges all the Defendants' collective occupation of aisles and seating areas, menacing behavior, and the physical obstruction of

congregants and pastors attempting to exit or move within the Church. *Id*. at 13. Additional overt acts describe individualized conduct by Austin, Lundy, Crews, Kelly, Dunlap, Lemon, Richardson, Fort, and Beute, including physical obstruction and intimidation. *Id*. at 13–15.

The final overt acts allege that some defendants blocked stairs leading to the childcare area, that Lemon physically obstructed congregants trying to exit through the main door, and that Kelly, Armstrong, and Fort stood or moved in front of a departing minivan as described in Overt Act 41. *Id*. at 16.

Count Two of the superseding indictment incorporates Paragraphs 1 through 8, including those forty-one overt acts, and charges all Defendants under 18 U.S.C. §§ 248(a)(2), 248(b), and 2(a). Dkt. 144 at 17. It expressly alleges that Defendants, "each aiding and abetting one another, by use of force, threat of force, and physical obstruction, intentionally injured, intimidated, and interfered with, and attempted to injure, intimidate, and interfere with" persons exercising religious freedom at the Church, and that the conduct resulted in bodily injury to one congregant. *Id*. at 18. Accordingly, the superseding indictment, with its fulsome recitation of overt acts, more than adequately informs the Defendants of details supporting the charges such that they can prepare a defense.

## III. DISCOVERY

Even if the Defendants could identify some theoretical basis for claiming surprise, the discovery provided in this case eliminates any such possibility. As the Eighth Circuit has recognized, extensive pretrial disclosures can independently ensure adequate notice

and preclude claims of unfair surprise where the indictment and discovery together apprise the defendants of Rule 7 notice. *United States v. Livingstone*, 576 F.3d 881, 883 (8th Cir. 2009); *see also United States v. Brandstrom*, 2026 WL 74109 at *7 (D. Minn. Jan. 9, 2026), *report and recommendation adopted*, 2026 WL 632478 (D. Minn. Mar. 6, 2026) (finding the government's discovery productions provided details that otherwise may have been required in a bill of particulars).

Here, the government has provided voluminous discovery, including more than 40,000 documents and files. It includes text messages and videos depicting the planning and reconnaissance, including a recording of Defendants casing Cities Church the day before the operation, video of the pre-operation briefing in the Cub Foods parking lot, multiple video recordings documenting Defendants' coordinated entry and disruptive conduct inside the sanctuary, contemporaneous 911 calls, medical documentation listing the specific injuries and name of a Cities Church congregant, extensive victim-witness interviews for how they reacted and perceived the invasion of the church, and evidence extracted from Defendants' cell phones and social-media accounts. *See* Dkt. 582.

It is difficult to understand how Defendants can claim they lack notice of the acts the government is charging when each stage of the conspiracy and the aiding and abetting was captured on video, documented, and disclosed in discovery.

## IV. ARGUMENT

### A. Rule 7(f) Protects Against Inadequate Notice And Unfair Surprise. It Does Not Require A Preview Of The Government's Proof.

"A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial [and] to avoid or minimize the danger of surprise at trial." *United States v. Hernandez*, 299 F.3d 984, 989–90 (8th Cir. 2002). "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993) (internal citation omitted). And contrary to how Defendants seek to employ the requested bill of particulars, "it is not to be used to provide detailed disclosure of the government's evidence at trial." *United States v. Wessels*, 12 F.3d 746, 750 (8th Cir. 1993). Consequently, it is not a device to force disclosure of the government's proof or trial strategy. Moreover, contrary to Defendants' suggestion, the government is not obligated "to reveal all of its proof before trial." *United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025).

Defendants claim that the indictment "provides not a shred of detail" (Dkt. 763 at 2) and rely on *United States v. Barnes* to support their claim. But *Barnes* is distinguishable. There the indictment first mentioned the defendant in Count 27, grouping him with thirty-three others in a multi-year drug-distribution conspiracy. *United States v. Barnes,* 158 F.3d 662, 664 (2d Cir. 1998), The indictment then gave a three-and-a-half-year timeframe, the names of co-defendants, and four listed narcotics—nothing further. The Barnes indictment states the:

> conspiracy that began in about November 1991 and continued to the date of the indictment, May 3, 1995. The indictment alleges that during this period Barnes and his co-conspirators "conspired and agreed together ... and with others to the grand jury known and unknown, to possess with intent to distribute heroin and marijuana, Schedule I controlled substances, and cocaine and cocaine base, Schedule II controlled substances, contrary to the provisions of Title 21 United States Code Section 841(a)(1)."

*Id*. By contrast, the Superseding Indictment here bears no resemblance to the skeletal indictment in *Barnes*. It is replete with the details that were lacking in *Barnes*.

But Defendants seek an even more detailed preview of the government's case and proposed evidence. Dkt. 763 at 6–7. The Eighth Circuit, however, has consistently rejected efforts to use Rule 7(f) to demand such level of evidentiary detail. In *United States v. Buffington*, the court it affirmed denial of a bill of particulars where the defendant sought precisely such a "mass of evidentiary detail." 578 F.2d 213, 214 (8th Cir. 1978). Likewise, the Court should reject Defendants' excessive request for evidentiary detail.

### B. Count One Identifies The Charged Agreement And Gives Concrete Notice Of How The Alleged Conspiracy Was Carried Out.

Defendants' principal objection to Count One is that it alleges collective conduct without specifying for each defendant the precise acts demonstrating each person's agreement, intent, or participation. Dkt. 763 at 4–5. This argument confuses what the grand jury must charge with what the government must ultimately prove at trial.

Count One, Section 241, is a conspiracy offense that does not require an overt act. The agreement and specific intent constitute the crime. *United States v. Shabani*, 513 U.S. 10, 13–17 (1994). When conspiracy is itself the offense, an indictment is sufficient

if it tracks the statutory language and identifies the charged crime, it need not enumerate overt acts or provide technical detail. *Wong Tai v. United States*, 273 U.S. 77, 81–82 (1927) (affirming denial of bill of particulars); *Hamling v. United States*, 418 U.S. 87, 117–18 (1974). Although not required to, the Superseding Indictment did allege multiple overt acts and described with some detail the actions of multiple Defendants.

The Eighth Circuit has repeatedly rejected the argument that a conspiracy indictment must contain defendant-by-defendant detail. *In United States v. Bowie*, the defendant argued that a 27-page indictment involving twelve defendants and two conspiracies spanning seventeen years failed to provide adequate notice of his individual acts. 618 F.3d 802, 817 (8th Cir. 2010). The Eighth Circuit affirmed denial of a bill of particulars because the indictment sufficiently enabled preparation for trial. *Id*.

In *United States v. Huggans*, 650 F.3d 1210 (8th Cir. 2011), the court held that an indictment need not describe each defendant's role, identify all coconspirators, or specify precise times and locations. It is sufficient to track the statutory elements and provide the basic parameters of the offense, such as the time frame and nature of the underlying conduct. *Id*. at 1218, 1220.

The indictment here exceeds those requirements. Paragraph 6 clearly alleges the agreement: that Defendants conspired with one another to oppress, threaten, and intimidate clergy, staff, and congregants of Cities Church in the free exercise of religion.

ECF No. 144 at 4–5.[1] The manner-and-means section and the forty-one overt acts then describe how the conspiracy was carried out. The indictment identifies organizers, outlines the operation, describes online promotion, reconnaissance, pre-operation meetings, operational instructions, an undercover first wave, a second wave, coordinated entry into the sanctuary, chanting, threatening conduct, obstruction, and individualized actions by multiple defendants. Dkt. 144 at 5, 7, 9–11, 13, 15–16.

Defendants' reliance on *United States v. Sloan*, 293 F.3d 1066 (8th Cir. 2002), is also misplaced. *Sloan* relates to post-trial sufficiency of the evidence, not the adequacy of an indictment or the scope of Rule 7(f). *Sloan* reiterates the well-known trial standard that "mere presence" coupled with knowledge is insufficient for the government to prove a conspiracy at trial, not what must be plead by the government in an indictment. 293 F.3d at 1067. Count One easily satisfies the constitutional standards and Rule 7.

**C. For Count Two, The Law Does Not Require The Government To Particularize How Each Defendant Aided And Abetted Or To Elect A Defendant-By-Defendant Theory Before Trial.**

Defendants argue that the overt acts underlying Count Two fail to allege conduct amounting to force, threat of force, or statutory physical obstruction. ECF No. 763 at 4. For Count Two, Request #10 also asks the government to identify, for each defendant, whether the government intends to proceed on a completed § 248(a)(2) violation, an attempted violation, aiding and abetting a completed violation, aiding and abetting an

[1] Request 4 — which seeks identification of "the specific agreement each defendant joined" — simply demands repetition of what the grand jury has already charged. Dkt. 763 at 6.

attempted violation, conspiracy liability, foreseeable conduct of coconspirators, or some combination of these theories. Dkt. 763 at 7–8.

These requests exceed the purpose of Rule 7(f). Count Two already specifies the statutory basis for liability, including § 2(a), and alleges that defendants "were each aiding and abetting one another." Dkt. 144 at 17–18. That allegation alone places every Defendant on notice that principal and aiding-and-abetting theories must be defended in this case. The government does not need to delineate, defendant-by-defendant, which precise combination of statutory modes of liability it will pursue. The Eighth Circuit has made clear that indictments need not specify "how and in what manner" a defendant aided and abetted another. *United States v. Garrison*, 527 F.2d 998, 999 (8th Cir. 1975). Indeed, allegations of aiding-and-abetting liability do not need to even be charged for a defendant to be convicted on that basis. *United States v. Lugo-Baez*, 412 F.2d 435, 440 (8th Cir. 1969) ("It is well settled that a person may be convicted as an aider and abettor even though the indictment does not specifically charge him in that capacity."). If neither is required in the indictment itself, Defendants cannot use Rule 7(f) to demand the government itemize the legal theory applicable to each defendant in a multi-defendant offense.

This same reasoning applies to attempt liability. In *United States v. Huggans*, the defendant argued that the indictment was deficient because it did not describe the facts constituting a "substantial step" for an attempt. The Eighth Circuit rejected that argument and reiterated that an indictment need not specify any overt act, and that Rule 7(f) is not a vehicle for demanding factual or theoretical detail about alternative liability pathways.

650 F.3d at 1219–20 (citing to *United States v. Resendiz–Ponce*, 549 U.S. 102, 127 (2007)). Here, Count Two alleges both completed and attempted conduct and incorporates extensive factual allegations under which those theories may apply. Rule 7(f) does not require the Government to commit pretrial which Defendants will be tried as principals, which as attempted offenders, or which under both theories of liability.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' motion for a bill of particulars should be denied.[2]

DATED: October 16, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/ Neville S. Hedley*

NEVILLE S. HEDLEY
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 297-3424
E-Mail: neville.hedley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[2] This brief contains 2858 words, except for the caption and signature block.