**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,

Defendants.

No. 0:26-cr-00025-LMP-DLM

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS BASED ON FIRST AMENDMENT (DOC. 760)**

# TABLE OF CONTENTS

INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 3

ARGUMENT .......... 4

I. The First Amendment Does Not Require Dismissal of the FACE Act Charge. .......... 4

II. The First Amendment Does Not Require Dismissal of the Conspiracy Charge. .......... 16

CONCLUSION .......... 19

## INTRODUCTION

Thirty-one Defendants have moved to dismiss, advancing the argument that they have a First Amendment right to barge into a church, disrupt worship services, physically obstruct, threaten, and intimidate terrified congregants who tried to flee the church, and to conspire to do so. The Eighth Circuit's en banc decision in *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (en banc), which Defendants fail to even acknowledge in their motion, forecloses their argument and requires denial of their motion. Simply put, there is no First Amendment "right to enter the cathedral and disrupt the church services." *Id.* at 1233. Otherwise, "[c]hurches would be compelled to welcome into their buildings invaders who came but to scoff and jeer." *Gregory v. City of Chicago*, 394 U.S. 111, 125 (1969) (Black, J., concurring).

The FACE Act is a content-neutral statute that regulates conduct, not speech. It prohibits the use of force, threat of force, and physical obstruction, 18 U.S.C. § 248(a)(2), all of which are *conduct* unprotected by the First Amendment. Defendants do not have a First Amendment right to engage in this illegal conduct just because they shriek about matters of public concern while doing so. Nor do they have a First Amendment right to conspire to engage in such conduct. Accordingly, their motion to dismiss should be denied.

## BACKGROUND

On Sunday, January 18, 2026, all Defendants descended on Cities Church in St. Paul, Minnesota. They conspired to disrupt a liturgical worship service in "a coordinated takeover-style attack." Doc. 144 at 3. Because of this attack, the pastor and congregants were forced to end their worship service. *Id*. Several congregants fled the Church, fearing a mass shooting. *Id.* at 12. In the rush to escape, one congregant suffered an arm injury when she slipped on an icy, unused sidewalk. Doc. 23-1 at ¶ 43.

On January 20, 2026, the United States obtained a complaint and arrest warrant against Defendants Armstrong, Allen, and Kelly for a violation of 18 U.S.C. § 241 (Conspiracy Against Rights). Doc. 23-1. On January 22, 2026, federal agents arrested Armstrong, Allen and Kelly. On January 29, 2026, a federal grand jury issued an indictment against nine defendants.

On February 26, 2026, the grand jury issued a superseding indictment charging an additional thirty defendants. Doc. 144. All Defendants are charged with the same two offenses: (1) Conspiracy Against Federally Secured Rights, in violation of 18 U.S.C. § 241; and (2) Interference with the Free Exercise of Religion at a Place of Religious Worship, in violation of 18 U.S.C. § 248(a)(2).

Defendants have moved to dismiss on First Amendment grounds. Doc. 760 ("Mot."). They argue that "the factual allegations make clear that all of their conduct was protected by the First Amendment." Mot 3.

## LEGAL STANDARD

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble." U.S. Const. Amend. I. Congress therefore may not criminalize constitutionally protected speech or journalism. *E.g.*, *United States v. Stevens*, 559 U.S. 460 (2009). Indictments alleging speech or conduct that is protected by the First Amendment must be dismissed. *See United States v. Hobgood*, 868 F.3d 744, 747 (8th Cir. 2017).

When ruling on a motion to dismiss under Rule 12(b), courts "accept the government's allegations as true, without reference to allegations outside the indicting document." *United States v. Steffen*, 687 F.3d 1104, 1107 n.2 (8th Cir. 2012). The "analysis of [a] motion to dismiss is limited to what is contained in the indictment." *United States v. Hansmeier*, 988 F.3d 428, 432 n.2 (8th Cir. 2021).

Contrary to Defendants' assertion, First Amendment challenges to a statute are not governed by *strictissimi juris*, which supposedly "calls for a stricter evidentiary standard, stricter admissibility standard, and direct confirmation of circumstantial evidence sought to be drawn from speech." Mot.

12 (italics added). The rule "grew out of penalties based on membership as such." *United States v. Casper*, 541 F.2d 1275, 1279 (8th Cir. 1976) (Heaney, J., concurring in part and dissenting in part). Thus, it has no application here, where Defendants "have not been indicted for membership in a political party [or] for their personal political preferences." *United States v. Cerilli*, 603 F.2d 415, 422 (3d Cir. 1979).

## **ARGUMENT**

### I. The First Amendment Does Not Require Dismissal of the FACE Act Charge.

There is no First Amendment right to storm a church and use force, threat of force, or physical obstruction against worshippers. Defendants insist that their conduct is constitutionally protected because they were "assembl[ing]" and shouting "political" messages while admittedly impeding congregants' efforts to "mov[e] about or leav[e] the Church." Mot. 3, 5-6.[1] But "[a]ctivities that injure, threaten, or obstruct are not protected by the First Amendment," *United States v. Gregg*, 226 F.3d 253, 267 (3d Cir. 2000)

---

[1] By acknowledging that "[t]he Superseding Indictment asserts that some congregants had difficulty moving about or leaving the Church due to Defendants' presence," Mot. 3, Defendants concede that the United States has alleged the "force, threat, of force, or physical obstruction" element of a FACE Act violation. 18 U.S.C. § 248(a)(2). *See New York v. Cain*, 418 F. Supp. 2d 457, 480 n.18 (S.D.N.Y. 2006) ("[O]bstruction need not be permanent or entirely successful.").

(affirming FACE Act conviction), even if the people "engaging in the conduct intend[] thereby to express an idea," *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

**1.** The Eighth Circuit's decision in *Action* forecloses Defendants' First Amendment argument. There, the district court, pursuant to 42 U.S.C. § 1985(3), enjoined two activist groups "from continuing to disrupt the religious services of a … Catholic parish." *Action*, 450 F.2d at 1229. The activists repeatedly staged "demonstrations" inside a cathedral. *Id.* On one occasion, they "entered the cathedral during services, marched down the center aisle, and formed a line in front of the communion rail." *Id.* "[U]sing an amplifier," one demonstrator shouted the groups' "demands" that the archbishop discipline Catholic police officers who supposedly violated suspects' constitutional rights and that the church use its resources to "for the benefit of economically deprived black people." *Id.*[2] Another time, the activists "went directly to the communion rail and sat down, blocking the area where the service was to be held. The service was then cancelled." *Id.* at 1230. The

[2] Specifically, the activists demanded that the archbishop "place all police officers of [his] religious jurisdiction, guilty of firing at Black fleeing suspects, wounding or killing a Black fleeing suspect, under disciplinary action of the church and make it public." *Gannon v. Action*, 303 F. Supp. 1240, 1243 (E.D. Mo. 1969).

following week, they "walked down the center aisle," and at least one activist "chant[ed], 'Racists, racists–white Christian racists.'" *Id.*

The Eighth Circuit affirmed the injunction. As relevant here, the court determined that the injunction "does not detract from the defendants' own First Amendment rights." *Action*, 450 F.2d at 1232. The court acknowledged that the defendants were "stimulated to disrupt the church services by racial and economic motives" and had "a right to voice their opinion that the plaintiffs have not fulfilled their obligation to the black community." *Id.* at 1232. To that end, the activists could "engage in peaceful pamphleteering and picketing on public property" or "make requests upon the plaintiffs if such requests are not joined with threats to disrupt church services and are not otherwise unlawful." *Id.* However, the activists did "not have a right to enter the cathedral and disrupt the church services of the plaintiffs. Such disruption is an intolerable violation of the rights of those engaged in worship." *Id.* at 1233.

The conduct of the activists in *Action* is materially indistinguishable from Defendants' conduct here. In both cases, a mob entered a church during worship services, physically blocked key locations, and forced the cancellation of the services. *See* Doc. 144 ¶ 8 (Overt Acts #24-39). In both cases, the defendants believed that the church's leadership was complicit in police or ICE brutality; as Defendants acknowledge, their conduct "was directed at the political issue of a church pastor's role in perpetrating government oppression."

Mot. 6; *see also* Doc. 144 ¶ 8 (Overt Acts #1, 6, 18, 25). And in both cases, the defendants' speech consisted of anti-law-enforcement chants and condemnations of either "Christian nationalism," or "Christian racists." *Id.* ¶ 8 (Overt Act #27); *Action*, 450 F.2d at 1231. The only notable difference between the two cases is that *Action* concerned an injunction under Section 1985(3), and this case is a prosecution under the FACE Act. That difference is immaterial because a plaintiff's cause of action has no bearing on whether a defendant's speech or assembly is protected by the First Amendment. *Action* therefore necessitates denial of Defendants' Motion.

Incredibly, Defendants fail to acknowledge, much less distinguish, *Action*. They presumably were aware of *Action* because the United States cited it in opposition to the joint motion to disclose grand-jury transcripts. Doc. 510 at 2. *See United States v. Sterling*, 959 F.3d 855, 862 n.3 (8th Cir. 2020) ("Courts "expect attorneys to advise [them] when adverse precedent may control an issue they are raising.").

**2.** *Action* aside, this Court should deny Defendants' motion because the FACE Act "governs conduct[,] not speech." *Gregg*, 226 F.3d at 267; *see also, e.g.*, *United States v. Hart*, 212 F.3d 1067, 1073 (8th Cir. 2000); *United States v. Weslin*, 156 F.3d 292, 298 (2d Cir. 1998); *United States v. Wilson*, 154 F.3d 658, 662-663 (7th Cir. 1998). Defendants were not indicted for their "pure

political speech." Mot. 6. They were indicted for their constitutionally unprotected conduct.

Defendants' guilt or innocence does not turn on the content of their speech. The FACE Act is "content neutral," *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996), because this Court need not "examine the content of [Defendants'] speech to determine" whether they physically obstructed congregants, *Ness v. City of Bloomington*, 11 F.4th 914, 923-924 (8th Cir. 2021). As Defendants acknowledge, the indictment alleges they prevented congregants from "moving about or leaving the Church." Mot. 3. It makes no difference to the physical-obstruction inquiry whether Defendants shouted anti-religion slurs, calmly expressed pro-religion messages, praised or condemned ICE, objected to Target's most recent advertisements, read the Twins box score, sang in Swedish, or remained silent. *See Hart*, 212 F.3d at 1073; *Dinwiddie*, 76 F.3d at 923 (explaining that the FACE Act "prohibit[s] striking employees from obstructing access to a clinic … even if the workers were carrying signs that said, 'We are underpaid!' rather than 'Abortion is wrong!'").

While the jury might have to examine Defendants' words to determine whether, under the totality of the circumstances, they constituted threats or intimidation, that does not undermine the constitutionality of the FACE Act. "[S]tatutes that outlaw threats of violence" or "intimidat[ion]" are not "content-

based restriction[s] on speech" because they "regulate[] speech that is not protected by the First Amendment." *Dinwiddie*, 76 F.3d at 922.

The FACE Act's prohibition of Defendants' conduct does not violate the First Amendment even though the indictment "incidentally affect[s] … protected expressive elements." *Dinwiddie*, 76 F.3d at 923. There is no First Amendment right to "injure, threaten, or obstruct." *Gregg*, 226 F.3d at 267. Nor is there a First Amendment right to "cordon off … [the] entrance to a … private building, and allow no one to pass who did not agree to listen to their exhortations." *Cox v. Louisiana*, 379 U.S. 536, 555 (1965). Such a right does not magically arise when those who are injuring, threatening, or obstructing speak while doing so. "If combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006).

The First Amendment does not license violations of the FACE Act simply because the underlying misconduct is intertwined with political speech. Protesters may not peacefully "picket abortion clinics, distribute literature, … and lead anti-abortion protests in public prayer and slogan chanting" if doing so physically obstructs abortion facilities in violation of Section 248(a)(1). *Terry v. Reno*, 101 F.3d 1412, 1414 (D.C. Cir. 1996). Protestors cannot engage in the same misconduct if doing so physically obstructs worshippers in

violation of Section 248(a)(2). While the "Constitution does not contain any exception to free speech in churches," Mot. 3, it recognizes that physically obstructing, injuring, or intimidating worshippers is not "free speech." *See generally Action*, 450 F.2d 1227. As such, Section 248(d)(1), which recites the truism that the FACE Act does not "prohibit any expressive conduct … protected from legal prohibition by the First Amendment," does not bar the charges in this case. It simply has no application. *Contra* Mot. 7.

**3.** Defendants' meritless counterarguments ignore the "fundamental" distinction between "regulating speech and regulating conduct that has expressive components." *Weslin*, 156 F.3d at 297 (affirming FACE Act conviction). Defendants observe that their speech "involved a matter of public concern;" that "even speech that is provocative, invites dispute, stirs some to anger, or is annoying to some is protected by the First Amendment;" and that the First Amendment generally protects the "decision to engage in chanting, hold signs, [and] state … opinions loudly." Mot. 7-9. That is irrelevant. As discussed above, a "person's intent to express an idea through conduct cannot alone bring that conduct within the First Amendment's protection of speech," regardless of how important the speech is. *Redlich v. City of St. Louis*, 51 F.4th 283, 287 (8th Cir. 2022).

The cases Defendants cite do not support dismissal. Unlike this case, which concerns conduct intertwined with speech, Defendant's cases addressed

the legality of speech itself and held that content-based restrictions on pure speech violate the First Amendment.

In *Snyder v. Phelps*, 562 U.S. 443 (2011), protestors picketed a funeral and held up signs that displayed controversial messages on matters of public concern. The Supreme Court held that the protestors' speech was protected by the First Amendment and could not give rise to tort liability. *Id.* at 458. Crucially, the defendants spoke "on public land," and "did not "interfere[] with the funeral service itself." *Id.* at 454, 460; *see Lloyd Corp., Ltd. v. Tanner*, 407 U.S. 551, 568 (1972) ("[T]his Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used non-discriminatorily for private purposes only."). In contrast, Defendants admittedly spoke inside Cities Church and concede that they interfered with the worship services because "congregants had difficulty moving about or leaving the Church due to Defendants' presence." Mot. 3.

In *Texas v. Johnson*, 491 U.S. 397 (1989), the Supreme Court recognized a First Amendment right to burn the American flag. The statute at issue in *Johnson* was "content based" because it prohibited "the desecration of a venerated object," rather than the conduct of lighting fires. *Id.* at 400, 411. Likewise, in *Boos v. Barry*, 485 U.S. 312 (1988), the Supreme Court held unconstitutional a content-based statute prohibiting "the display of any sign within 500 feet of a foreign embassy if that sign tends to bring that foreign

government into 'public odium' or 'public disrepute.'" *Id.* at 315. "Whether individuals may picket in front of a foreign embassy depends entirely upon whether their picket signs are critical of the foreign government or not." *Id.* at 318-319.[3] However, the FACE Act "appl[ies] to anyone who blockades a clinic [or church] … regardless of the message expressed by the blockade." *Dinwiddie*, 76 F.3d at 923.

In *Terminiello v. Chicago*, 337 U.S. 1, 3 (1949), the defendant spoke at an indoor rally and "criticized various political and racial groups." He was convicted of violating an ordinance that prohibited speech that "stirs the public to anger, invites dispute, brings about a condition or unrest, or creates a disturbance." *Id.* at 4. The Supreme Court held that the First Amendment does not allow criminalization of speech that "invites dispute;" the Constitution protects "provocative and challenging" speech. *Id.* *Terminiello* stands for the unremarkable rule that government may not impose content-based restrictions on speech or target political speech because of its effect on listeners. It did not, as Defendants suggest, establish a rule that the First Amendment protects "provocative" speech when such speech is intertwined

[3] Defendants mischaracterize *Boos v. Barry*, 485 U.S. 312 (1988), as holding that "a statute criminalizing burning the American flag was content based." Mot. 5, 9. *Boos* had nothing to do with the American flag or with burning objects.

with conduct that violates "content-neutral laws" such as the FACE Act. *Dinwiddie*, 76 F.3d at 921.

Lastly, in *Baribeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir. 2010), the Eighth Circuit held that speech does not lose its First Amendment protections based on adverse effects on listeners. The plaintiffs dressed as zombies as part of a political protest and were arrested for disorderly conduct after "a young girl bec[a]me frightened." *Id.* at 481. The court held that the arrest violated Defendants' right to free speech because "an objectively reasonable person would not think probable cause exists under the Minnesota disorderly conduct statute to arrest a group of peaceful people for engaging in an artistic protest." *Id.* at 479. Contrary to Defendants' interpretation of the case, *Baribeau* does not establish a sweeping rule that "conduct that is inextricably linked to the political message that is being communicated is part of First Amendment protected speech." Mot. 9-10. It merely held that under the specific facts of the case, plaintiffs' conduct did not violate Minnesota law.

Defendants were not indicted because of their "pure political speech," because "the content of their message criticizing the government's actions" or because "the church pastor and attendees were emotionally upset by [their]

actions."[4] Mot. 6, 9. They were indicted for their conduct, and the cases they cite do not hold that such conduct is protected by the Free Speech Clause.

Defendants also wrongly assert that they were indicted due to "the choice of a venue for their message." Mot. 9. The FACE Act's limitation on venue is a content-neutral place restriction that "leave[s] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Section 248(a)(2) allows Defendants to protest "anywhere and anytime" they want except inside a place of religious worship while congregants are exercising their First Amendment right of religious freedom. *Weslin*, 156 F.3d at 298. And the Act does not prohibit all such protests—only those that use "force or threat of force or … physical obstruction." 18 U.S.C. § 248(a)(2).

**4.** This Court also should reject Defendants' attempt to repackage their free-speech defense as a free-assembly defense. Defendants claim that their "decision to gather as a group to communicate [a] political message is protected by the First Amendment." Mot. 9. However, "not every gathering falls under

---

[4] For the avoidance of any doubt, Defendants obviously have the First Amendment right to express their views about ICE, church leadership, and Christianity, so long as they do not violate a content-neutral and generally applicable law in doing so. "The fact that [their] … opinions may be offensive to the parishioners does not render them outside the protection of the First Amendment." *Action*, 450 F.2d at 1232.

the umbrella of the First Amendment. The right of association presupposes that the purpose is to 'engag[e] in those activities protected by the First Amendment.'" *Molina v. City of St. Louis*, 59 F.4th 334, 340 (8th Cir. 2023) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984)). In other words, the right of assembly is limited to the right to "assemble for any lawful purpose." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980) (brackets omitted). Because Defendants' underlying conduct is not protected by the First Amendment and violates the FACE Act, they have no constitutional right to assemble for the purpose of engaging in such conduct for the purpose of trampling the First Amendment rights of others.

**5.** Defendants invite this Court to dismiss this case "at the pretrial stage" even though they acknowledge that dismissal would "not [be] common" because of disputed factual issues. Mot. 10. They argue that this case should be dismissed because "no reasonable jury could conclude the statements were threats." *Id.* However, as the United States argues in its forthcoming oppositions to Defendants' motions to dismiss for failure to state an offense, a reasonable jury could conclude that Defendants used force, threats of force, and physical obstruction in violation of the Act. Dismissal therefore is improper. *See United States v. Grubb*, 135 F.4th 604, 607 (8th Cir. 2025) ("There is no procedure in federal criminal cases equivalent to the motion for summary judgment in civil cases."); *United States v. Avalos*, 2026 WL 1472361,

at *2-3 (D. Minn., May 7, 2026) (report and recommendation against dismissal of indictment based on First Amendment grounds because the United States had not yet an opportunity to present its case). Regardless, Defendants have admitted that the indictment "asserts that Defendants physically obstructed congregants," Mot 2, so the United States need not also allege that Defendants threatened or intimidated the congregants.[5]

## II. The First Amendment Does Not Require Dismissal of the Conspiracy Charge.

There is no First Amendment right to conspire to commit a crime. Many long-established criminal proscriptions[] such as laws against conspiracy … criminalize speech … that is intended to induce or commence illegal activities." *United States v. Williams*, 553 U.S. 285, 298 (2008). Laws against conspiracy are constitutional because the underlying speech "ha[s] no social value and thus … enjoy[s] no First Amendment protection." *Id.* Criminalization of

[5] Defendants also argue that "there are no allegations supporting a conclusion that [their] actions were intended to interfere with freedom of worship." Mot. Mot. 5. They "ignore[] th[e] elementary distinction between intent and motive." *Rosemond v. United States*, 572 U.S. 65, 88 (2014) (Alito, J., concurring in part and dissenting in part). Intent "refers to the mental state required by the particular statute which makes the act a crime." *United States v. Kabat*, 797 F.2d 580, 587 (8th Cir. 1986). Motive, in contrast, "reflects the ultimate end sought which compelled the defendant to act." *Id.* The indictment alleges that Defendants *intended* to intimidate, oppress, obstruct, and interfere with the exercise of religious freedom at a place of religious worship. Their *motives* for doing so are irrelevant.

speech in furtherance of a conspiracy "is permitted" because the statute targets "speech integral to criminal conduct." *Hobgood*, 868 F.3d at 747 (quotation marks omitted). Because "speech is not protected by the First Amendment when it is the very vehicle of the crime itself," *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970), the First Amendment does not protect Defendants' alleged "conspir[ing] and agree[ing] with one another" to violate rights secured by the FACE Act. Doc. 144 at ¶ 6.

Defendants argue that the First Amendment bars the Section 241 charge because their underlying "expressive conduct" is protected by the First Amendment. Mot. 5. But Defendants have no First Amendment right to "oppress, threaten, and intimidate multiple persons … in the free exercise and enjoyment of the[ir] rights." Doc. 144 at ¶ 6. There is no First Amendment right to conspire to do what the First Amendment does not protect.

Defendants rely on *United States v. Lee*, 6 F.3d 1297 (8th Cir. 1993) (en banc) (per curiam), but the object of the alleged conspiracy there was to engage in conduct protected by the First Amendment. The defendants were convicted of violating Section 241 based on their agreement to burn a cross. *Id.* at 1298 (Gibson, J., concurring). The controlling concurrence explained that the conviction was unconstitutional because the jury instructions did not require "a threat of physical force or the intimidation of physical fear." *Id.* at 1300. Thus, "the subjective reactions of residents who witnessed the cross burning

and upon the perception of the viewer [was] an inherent aspect of the prosecution." *Id.* at 1301. "As applied … section 241 focuses on the conduct's communicative and emotive impact." *Id.* at 1301. But here, the application of Section 241 focuses on whether Defendants violated the FACE Act, which does not turn on the content of their speech or on subjective reactions on the congregants of Cities Church.

## CONCLUSION

For the foregoing reasons, defendants' Joint Motion to Dismiss based on First Amendment grounds should be denied.[6]

DATED: October 16, 2026

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/ Joshua R. Zuckerman*

JOSHUA R. ZUCKERMAN
Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: joshua.zuckerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[6] This brief contains 3,703 words, excluding the caption, table of contents, and signature block.