**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,

Defendants.

No. 0:26-cr-00025-LMP-DLM

**GOVERNMENT'S OPPOSITION TO JOINT MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION (DOC. 674)**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. This Prosecution Is Not Selective. ..... 2

- A. Legal Standard ..... 2
- B. Defendants Were Not Prosecuted Based Upon the Exercise of a First Amendment Right. ..... 3
- C. Defendants Cannot Show That Similarly Situated People Were Not Prosecuted. ..... 5

II. This Prosecution Is Not Vindictive. ..... 13

- A. Legal Standard ..... 13
- B. The United States Is Prosecuting Defendants Because They Allegedly Committed Multiple Federal Felonies. ..... 15
- C. Defendants Have Not Provided Objective Evidence of Actual Vindictiveness. ..... 16
- D. Defendants Are Not Entitled to a Presumption of Vindictiveness. ..... 21

III. This Court Should Not Allow Discovery Regarding the Selective and Vindictive Prosecution Claims. ..... 22

CONCLUSION ..... 24

## INTRODUCTION

The United States charged Defendants with multiple felonies because they were members of a large mob that descended upon a church, disrupted its worships service; physically obstructed, intimidated, or interfered with congregants; prevented parents from reaching their crying children; and made at least one congregant fear that a mass shooting was about to happen. A grand jury indicted dozens of members of this mob. These defendants must stand trial, and a jury will decide whether they committed federal crimes.

Defendants nevertheless assert that this prosecution is both selective and vindictive. Doc. 674 ("Motion"). Their arguments are meritless.

*First*, the selective-prosecution claim fails because this prosecution does not punish them for the exercise of their constitutional rights. There is no First Amendment right to "enter the cathedral and disrupt the church services." *Action v. Gannon*, 450 F.2d 1227, 1233 (8th Cir. 1971) (en banc). Nor can Defendants identify a single similarly situated individual who was not prosecuted.

*Second*, the vindictive-prosecution claim fares no better. The United States indicted Defendants because, as the grand jury twice determined, there is probable cause to believe that they committed multiple felonies. Nothing in Defendants' Motion gives rise to a remotely plausible inference that they "would not have been prosecuted … *but for* the vindictive motive of prosecutors

to punish [them] for successfully exercising [their] right[s]" under the First Amendment, as is necessary to prevail on a vindictive-prosecution claim. *United States v. Wilson*, 262 F.3d 305, 317 (4th Cir. 2001). Their reliance on a single Presidential social-media post and some decontextualized remarks by a Department of Justice official fall far short.

Their motion to dismiss for vindictive prosecution should be denied.

## ARGUMENT

### I. This Prosecution Is Not Selective.

#### A. Legal Standard

"[A] selective prosecution claim is a *rara avis*"—a rare bird. *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 489 (1999). "Because such claims invade a special province of the Executive—its prosecutorial discretion— … the standard for proving them is particularly demanding, requiring a criminal defendant to introduce clear evidence displacing the presumption that a prosecutor has acted lawfully." *Id* (quotation marks omitted). A defendant "has the burden of proving the government engaged in selective prosecution." *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004) (citation omitted).

"In order to make a prima facie case of selective prosecution, [a defendant] must show: (1) people similarly situated to him were not prosecuted; and (2) the decision to prosecute was motivated by a

discriminatory purpose" or "the exercise of constitutional rights." *United States v. Hirsch*, 360 F.3d 860 (8th Cir. 2004) (first quote); *United States v. Parham*, 16 F.3d 844, 846 (8th Cir. 1994) (second quote). If a Defendant makes a prima facie showing of each element, "the burden shifts to the government to disprove defendant's case." *United States v. Wilson*, 806 F.2d 171, 176 (8th Cir. 1986).

### B. Defendants Were Not Prosecuted Based Upon the Exercise of a First Amendment Right.

Defendants' selective-prosecution claim must be denied because they fail to identify any "exercise of constitutional rights" for which they have been prosecuted. They do not allege that they were prosecuted on the basis of race, religion, sex, or any other suspect class. They allege only that they were prosecuted because they expressed anti-ICE "viewpoints" while occupying Cities Church. Mot. 27.

The fatal flaw in their argument is that Defendants had no First Amendment right to express their anti-ICE viewpoint while occupying Cities Church. In its Opposition to Defendants' Joint Motion to Dismiss Based on the First Amendment, Doc. 893, the United States explains at length that Defendants have no First Amendment right to barge into a church, disrupt worship services, physically obstruct and intimidate terrified congregants who

tried to flee the church, and conspire to do so. The United States incorporates its arguments here.

To briefly summarize, Eighth Circuit precedent forecloses Defendants' argument that their conduct is protected by the First Amendment. *See Action*, 450 F.2d at 1233 (holding that there is no First Amendment right to "enter [a] cathedral and disrupt the church services"). Additionally, the FACE Act "governs conduct[,] not speech" and prohibits "[a]ctivities that injure, threaten, or obstruct," which "are not protected by the First Amendment." *United States v. Gregg*, 226 F.3d, 253, 267 (3d Cir. 2000). Defendants were indicted under the "content neutral" FACE Act for allegedly engaging in such activities. *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996). Their unprotected conduct does not transform into protected speech simply because they chanted political slogans while violating the Act. *See Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006).

Thus, Defendants' alleged conduct is not protected by the First Amendment at all. They cannot, therefore, meet their heavy burden of showing that this prosecution is "based upon" their "exercise of [their] first amendment right to free speech." *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007). That dooms their selective-prosecution claim.

### C. Defendants Cannot Show That Similarly Situated People Were Not Prosecuted.

Because Defendants were not "singled out for prosecution" based on their "exercise of constitutionally protected conduct," there is no need for this Court to determine whether Defendants have presented evidence that "similarly situated [people] have not been prosecuted for conduct similar to that for which [they were] prosecuted." *Osborne*, 477 F.3d at 1006. Regardless, Defendants fail to identify similarly situated people.

A "similarly situated" person is one who "committed the same basic crime in substantially the same manner as the defendant." *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) (favorably cited by *United States v. White*, 928 F.3d 734, 743 (8th Cir. 2019)). There can be "no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to" a defendant and a comparator. *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

First, Defendants criticize what they perceive as the United States' "permissive attitude toward church invasions by ICE." Mot. 5. Defendants apparently assert, as does Defendant Georgia Fort (Doc. 594 at 9), that ICE agents violated the FACE Act by enforcing immigration law in churches and that the non-prosecution of these ICE agents establishes selective prosecution here. Defendants' attempted comparison of themselves to ICE agents is inapt.

ICE agents are not similarly situated to Defendants because ICE agents are law-enforcement officers, not civilians. They are legally authorized to use force or threat of force to enforce immigration law. 8 C.F.R. § 287.8(a)(1)(H). Further, the United States' decision to allow ICE agents to enforce immigration law in churches does not "disprove" "[t]he administration's claims that this prosecution is based on a desire to protect the right to practice religion." Mot. 27. The United States can protect religious worshippers from angry mobs while simultaneously recognizing that the right to worship cannot interfere with enforcement of immigration law. *See Church Sanctuary for Illegal Aliens*, 7 Op. O.L.C. 168, 1968 WL 160504 (1983).

Second, Defendants point out that some defendants convicted of attacking individuals near or inside abortion clinics in violation of 18 U.S.C. § 248(a)(2) were pardoned, while defendants who vandalized crisis-pregnancy centers were not pardoned. Mot. 7-8, 13-14. All of these defendants, pardoned or not, were prosecuted. They accordingly cannot serve as the necessary examples of similarly situated people who "have not been prosecuted." *Osborne*, 477 F.3d at 1006. Any pardons or lack thereof are unreviewable. "[C]ourts cannot examine" the President's use of the "conclusive and preclusive" decision to pardon these people. *Trump v. United States*, 603 U.S. 593, 609, 634 (2024).

Third, Defendants complain about a settlement "with an anti-abortion protester acquitted of FACE Act charges." Mot. 10. The key word here is "acquitted." Like those who received pardons, he was prosecuted by the Department of Justice. He therefore is not a similarly situated person who has not been prosecuted.[1]

Fourth, Defendants cite a November 2025 incident in which a woman disrupted a church service in New Braunfels, Texas, by shouting an anti-homosexuality message. Mot. 15-16, 29. This comparison and others is wholly improper, as the facts of these comparator cases are undeveloped. As the conduct is within the statute of limitations, the United also will not provide an ad hoc assessment of the viability of potential charges. But even assuming that this Texas woman violated the FACE Act, she is not similarly-situated to

---

[1] Because this defendant was prosecuted, the subsequent settlement is irrelevant. The United States nevertheless corrects Defendants' false assertion that this defendant was "rewarded" for attacking a Planned Parenthood volunteer. Mot. 30. After his acquittal, the defendant sued the United States, alleging that over a dozen federal officers raided his house and arrested him at gunpoint, traumatizing his children and leaving his wife infertile from three stress-induced miscarriages. *Houck v. United States*, 2025 WL 725261, at *2-3 (E.D. Pa. Mar. 6, 2025). The district court dismissed his claims, but the United States settled the case during appeal. Appellees often settle rather than risk a loss on appeal, and the settlement here compensates an innocent man for considerable alleged harms. True, "[i]ndividuals who merely vandalized crisis pregnancy centers have not been rewarded with dismissals and settlements," but Defendants do not cite any examples of such individuals who were acquitted of FACE Act charges by juries of their peers and then sued the United States. Mot. 30.

Defendants because she acted alone, whereas Defendants allegedly conspired. A "collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual delicts." *Callanan v. United States*, 364 U.S. 587, 593 (1961).

Defendants cite a March 2025 incident in Orlando, Florida, where anti-LGBT protestors allegedly disrupted a worship service at an "unapologetically gay" church. Mot. 15-16, 29. To the extent this incident is similar, a single comparator does not establish selective prosecution. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456 (1962); *see also United States v. Catlett*, 584 F.2d 864, 866 (8th Cir. 1978) (denying hearing based on mere allegation of selective discrimination). The incident also appears to be different in potentially material respects. Unlike in Orlando, Defendants targeted a federal law-enforcement officer because of actions he took in the course of his official duties. The United States has every right to prioritize the prosecution of threats to law enforcement. *Cf.* U.S.S.G. § 3A1.2(a) (sentencing enhancement when the victim is "a government officer").[2]

---

[2] The United States also has declined to bring FACE Act charges against other individuals who have disrupted religious services while expressing arguably anti-government views. *See Liz Lykins,* California Jews and Christians sue disrupters of pro-Israel event, World (Nov. 10, 2025), https://tinyurl.com/3c6bjyds.

**3.** Defendants complain that they have suffered a "discriminatory effect [from] the administration's policies" regarding the FACE Act. Mot. 30. They rely on a Department of Justice memorandum instructing prosecutors to avoid bringing "abortion-related" FACE Act charges unless there are "significant aggravating factors." Mot. 4, 26 (discussing Memorandum from Chad Mizelle, Chief of Staff to the Att'y Gen. of the U.S., to Kathleen Wolfe, Supervisory Official of the Civil Rights Div. 1 (Jan. 24, 2025)), perma.cc/UY45-YQFB. ("FACE Act Memorandum"). According to Defendants, the FACE Act Memorandum "is explicitly discriminatory." Mot. 26.

Not so. At the outset, this Court has no power to pass judgment on the FACE Act Memorandum or the Department of Justice's enforcement priorities. "[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974). The Executive must conduct thorough investigations and "balance many factors when devising arrest and prosecution policies," including "inevitable resource constraints and regularly changing public-safety and public-welfare needs." *Texas*, 599 U.S. at 680. As such, the Executive's "decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States,* 470 U.S. 598, 607 (1985). "[S]eparation of powers concerns prohibit [courts] from reviewing a prosecutor's charging decisions absent a prima facie showing that it rested on an impermissible basis, such as gender,

race or denial of a constitutional right." *United States v. Palmer*, 3 F.3d 300, 305 (9th Cir. 1993). Because Defendants' prosecution does not result from denial of the First Amendment rights, the FACE Act Memorandum is beyond the scope of judicial review.

Regardless, the FACE Act Memorandum is a lawful exercise of the Executive Branch's absolute and unreviewable prosecutorial discretion. The First Amendment allows the United States to outlaw protests that use "force or threat of force or … physical obstruction" to interfere with those who are "obtaining or providing reproductive health services" or "exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship." 18 U.S.C. § 248(a); *see, e.g.*, *United States v. Hart*, 212 F.3d 1067, 1073 (8th Cir. 2000). Because all FACE Act violations encompass conduct that is unprotected by the First Amendment, 18 U.S.C. § 248(d)(1), the United States does not violate the First Amendment by prioritizing prosecution of a "subset" of the constitutionally unprotected conduct that the Act prohibits. *Virginia v. Black*, 538 U.S. 343, 363 (2003) (A "State may regulate only that obscenity which is the most obscene due to its prurient content.").

Whether the FACE Act Memorandum is "discriminatory" is also an academic question. Defendants have not identified a single person who stormed an abortion clinic, physically obstructed, injured, intimidated, or

interfered with protected individuals, and was not prosecuted. Every person they discuss was prosecuted—even if those prosecutions ended in pardons or acquittals. Nor would any such people be similarly situated to Defendants because he would be prosecuted under Section 248(a)(1), while Defendants are being prosecuted under Section 248(a)(2) and Section 241.

Defendants cite two cases supposedly establishing that the United States' "discriminatory approach to the FACE Act could not be plainer," but these cases are inapposite. Mot. 28. Oddly, they discuss *Yick Wo. v. Hopkins*, 118 U.S. 356 (1886), where local authorities granted business licenses to 80 non-Chinese applicants while withholding licenses from 200 similarlysituated Chinese applicants. The Supreme Court held that the authorities violated the Equal Protection Clause because there was "no reason" for this discrepancy "except hostility to the race and nationality" of the Chinese applicants. *Id.* at 374. The case had nothing to do with the First Amendment, and Defendants here do not assert that the United States is prosecuting them because of their race.

Defendants also rely on *Frederick Douglass Foundation, Inc. v. District of Columbia*, 82 F.4th 1122, 1134-1135 (D.C. Cir. 2023), where plaintiffs were arrested for chalking "Black Pre-Born Lives Matter" on a sidewalk, in violation of a local vandalism ordinance. Mot. 28. They brought a First Amendment claim, arguing that other protesters chalked "Black Lives Matter" on the

sidewalks but were not arrested. *Frederick Douglass Found.,* 82 F.4th at 1147. The district court dismissed the claim, and the D.C. Circuit reversed, explaining that the government allegedly "[a]llow[ed] the expression of one message while silencing another." *Id.* at 1142. Unlike the FACE Act, which regulates conduct, the vandalism ordinance regulated speech itself—it imposed a "neutral time, place, or manner restriction" on speech "in a public forum." *Id.* at 1140, 1142. The D.C. Circuit accordingly held that the "government may not play favorites *in a public forum*." *Id.* at 1143 (emphasis added). Such concerns are absent here. Churches are not public fora.

Further, the Eighth Circuit has rejected selective-prosecution claims where defendants have made themselves the focus of federal law enforcement attention by publicizing their illegal actions. In *United States v. Ojala*, 544 F.2d 940, 944 (8th Cir. 1976), the Eighth Circuit addressed that the prosecution of a prominent public figure who very publicly "announced his purposeful refusal to comply with [filing tax returns] because of his political views." The Court emphasized that "initiating an investigation and prosecution because of such an announcement by a public figure falls well within the degree of prosecutorial discretion which is historically a part of our criminal justice system." *Id.* Likewise, in *Catlett*, 584 F.2d at 865, the Court held that the defendant did not have a right to discovery into the decision to prosecute based on the mere allegation that he had been singled out for his

exercise of First Amendment rights. The court again emphasized that the defendant had gained significant notoriety for his anti-war protests and accompanying failure to pay federal taxes. *Id.* at 866. "The decision to prosecute, therefore, rest[ed] upon the amount of publicity one's protest receive[d], not upon the exercise of one's first amendment right to free speech." *Id.* at 868. And in *United States v. Eklund*, 733 F.2d 1287, 1294 (8th Cir. 1984), which also involved allegations of high-level DOJ officials driving the prosecution of defendant for being a vocal and public resister of the requirement to register for the draft, the Court held that "selectivity based upon the amount of publicity a prosecution will receive falls well within the exercise of prosecutorial discretion."

Defendants' selective-prosecution argument boils down to a normative assertion that this prosecution "is unjust." Mot. 31. Because they lack evidence that their constitutionally protected viewpoint, rather than their constitutionally unprotected conduct—conduct which they heavily publicized and for which they proudly claimed credit—drove the United States' exercise of prosecutorial discretion, this Court should deny their motion.

## II. <u>This Prosecution Is Not Vindictive.</u>

### A. Legal Standard

**1.** The Fifth Amendment's Due Process Clause prohibits vindictive prosecutions. *United States v. Leathers*, 354 F.3d 955, 961 (8th Cir. 2004).

Vindictiveness is akin to "bad faith or maliciousness." *United States v. Hirsch*, 360 F.3d 860, 864 (8th Cir. 2004). A prosecution is unconstitutionally vindictive when "charges [are] brought *solely* to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion." *United States v. Goodwin*, 457 U.S. 368, 379 (1982) (emphasis added). *See also United States v. Williams*, 793 F.3d 957, 963 (8th Cir. 2015) ("Vindictive prosecution occurs when a prosecutor seeks to punish a defendant *solely* for exercising a valid legal right.") (emphasis added). Defendants must show that they "would not have been prosecuted … *but for* the vindictive motive of prosecutors to punish [them] for successfully exercising [their] right[s]" under the First Amendment. *Wilson*, 262 F.3d at 317.

"The burden of proof of … vindictive prosecution is on the defendant." *United States v. Kelley*, 152 F.3d 881, 885 (8th Cir. 1998). Because prosecutors have "broad discretion … in carrying out their duty to enforce criminal statutes," a defendant bears a "heavy" "evidentiary burden" to establish vindictiveness. *Leathers*, 354 F.3d at 961. To establish vindictiveness, a defendant may provide "objective evidence of the prosecutor's vindictive or improper motive" or "in *rare* instances, [may] rely on a presumption of vindictiveness if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." *United States v. Chappell*, 779 F.3d 872, 879 (8th Cir. 2015).

### B. The United States Is Prosecuting Defendants Because They Allegedly Committed Multiple Federal Felonies.

The law is clear: "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute … generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). When a defendant alleges that his prosecution "violate[s] the First Amendment," "the existence of probable cause will suggest that the prosecution would have occurred even without a retaliatory motive." *Hartman v. Moore*, 547 U.S. 250, 254, 261 (2006). Accordingly, "[t]here can be no prosecutorial vindictiveness" if the prosecutor brought charges due to adequate "evidence or some objective reason other than to punish the defendant for exercising his legal rights." *United States v. Campbell*, 410 F.3d 456, 462 (8th Cir. 2005). Thus, courts rarely, if ever, will find retaliation or vindictiveness where prosecutors had probable cause to indict a defendant. Defendants have not cited a single case where an indictment supported by probable cause has been dismissed at the pretrial stage on vindictive-prosecution grounds, and the United States has not located any.

The United States had probable cause to indict Defendants. The grand jury, which "functions as a neutral body to determine whether there is probable cause to indict." *Milliman v. Minnesota*, 774 F.2d 247, 251 (8th Cir. 1985),

reviewed the evidence and indicted Defendants. Circuit Judge Grasz similarly determined that "the Complaint and Affidavit clearly establish probable cause" for several Defendants' arrest. *In re United States*, 2026 WL 185713, at *1 (8th Cir. Jan. 23, 2026) (Grasz, J., concurring). Because probable cause supported an indictment, the charges against Defendants are "justif[able] as a proper exercise of prosecutorial discretion" and were not brought "solely" to punish them for any exercise of their First Amendment rights or for "doing something that the law plainly allowed [them] to do." *Goodwin*, 457 U.S. at 380 n.12 and 384. Defendants' vindictive-prosecution claim fails.

### C. Defendants Have Not Provided Objective Evidence of Actual Vindictiveness.

Despite the existence of probable cause, Defendants assert that they "would not have been prosecuted but for the Justice Department's animus against them." Mot. 36. Their evidence of vindictive prosecution is weak. *See* Mot. 17-24.

Defendants discuss the United States' 2025 immigration-enforcement operation in Minnesota, focusing on three incidents in which ICE agents shot protestors or foreign nationals. Mot. 18-19, 36. These incidents are irrelevant. Although they may have inspired Defendant's protest in Cities Church, they plainly do not evince "the Justice Department's animus" against Defendants who had not yet committed the alleged crimes. Mot. 18-19. ICE is a component

of the Department of Homeland Security, not the Department of Justice, and any alleged misconduct by ICE agents cannot be imputed to federal prosecutors. Likewise, Secretary of Homeland Security Kristi Noem did not speak on behalf of the Department of Justice in responding to these incidents. *See* Mot. 18-19.

Defendants observe that the United States indicted some Defendants shortly after President Trump made a social-media post on January 20, 2026, describing people who participated in the "Church Raid" as "troublemakers who should be thrown in jail." Mot. 20. At the most, this social-media post establishes that both the President and the Department of Justice believed that Defendants should be indicted. That is unsurprising given that, as the grand jury found, there is probable cause to believe Defendants committed multiple federal felonies and because both the President and the Department of Justice must enforce federal law.

Additionally, Defendants cast this post as "the trigger for everything that followed, including the initial Complaint, the Indictment, and the Superseding Indictment." Mot. 37. But they undermine their own claim by noting that "federal agents started interviewing witnesses … on Monday, January 19th, [and] *there was already a decision made to use the FACE Act*." Mot. 16 (emphasis added). It is temporally impossible for President to have

commanded in a January 20 social-media post that the United States make a January 19 decision to bring FACE Act charges.

Time travel is the least of Defendants' problems. Their remaining "evidence" of vindictive prosecution consists of two policy statements and some decontextualized remarks by a single attorney, which have nothing to do with the FACE Act or this prosecution.

Defendants condemn the National Security Presidential Memorandum issued by President Trump on September 25, 2025, and then-Attorney General Bondi's implementation of that Memorandum. Mot. 21. *See* President Donald J. Trump, *National Security Presidential Memorandum/NSPM-7: Countering Domestic Terrorism and Organized Political Violence* (Sept. 25, 2025 ("NSPM-7); Attorney General Pamela Bondi, *Memorandum for All Federal Prosecutors* (Dec. 4, 2025) ("Bondi Memorandum") § 1. These memoranda set forth policies that guide the Executive Branch's exclusive exercise of prosecutorial discretion and are not subject to judicial review. More fundamentally, they are irrelevant and come nowhere close to establishing vindictive prosecution.

The President issued NSPM-7 on September 25, 2025—several months before Operation Metro Surge began. NSPM-7 instructs the Attorney General and other Cabinet members to develop a strategy to "investigate, prosecute, and disrupt entities and individuals engaged in acts of political violence and intimidation designed to suppress lawful political activity or obstruct the rule

of law" and to "prioritize" prosecution of thirteen criminal statutes, including Section 241 but notably excluding the FACE Act and any immigration-offenses. NSPM-7 at 3, 4. A memorandum that was issued *before* the events that inspired Defendants' conduct and that does not mention the FACE Act or immigration law cannot establish animus against Defendants.

Defendants seem to suggest that the Bondi Memorandum demonstrates that prosecutors view them as domestic terrorists because of their anti-ICE viewpoints and related conduct, that is incorrect. The Bondi Memorandum (at 1-2) defined "domestic terrorism" and observed that "some culpable actors" such as "certain Antifa-aligned extremists" have "extreme viewpoints on immigration." That is factually correct. Several months before then-Attorney General Bondi issued her memorandum, domestic terrorists belonging to an Antifa cell attacked or assisted an attack on an ICE facility, which resulted in the attempted murder of a federal officer. In 2026, a jury convicted eight of these Antifa members of material support of terrorism, and others pleaded guilty. *United States v. Arnold*, No. 4:25-cr-00259 (N.D. Tex.). The Bondi Memorandum alluded to these domestic terrorists and by no means insinuated that anyone with "extreme viewpoints on immigration" is a domestic terrorist. Moreover, Defendants have not been charged with any terrorism-related offenses.

Defendants further rely on news reports of various remarks allegedly made by an Associate Deputy Attorney General. (*See, e.g.*, Mot. 22.) The referenced statements also do not establish vindictiveness. Even assuming the reporting was accurate, the alleged remarks establish nothing more than efforts by the Department to enforce the law vigorously for the benefit of the public. That's the job description for every prosecutor.

Defendants argue that this prosecution is vindictive because DHS deemed certain information to be "of interest" when executing a search of Defendant Emmar Pineada-Moreno's cell phone. Mot. 23. However, this was nothing more than an internal cataloging of information revealing whom she was interacting with before and immediately after the church takeover. Such information is relevant to the conspiracy charge. It is also typical law enforcement work.

Lastly, Defendants observe that Minnesota state prosecutors declined to press charges because they concluded "that the current evidence is insufficient … under Minnesota state statutes." Mot. 24. The FACE Act and Section 241 are not Minnesota state statutes, and state prosecutors lack authority to bring criminal charges thereunder. That state prosecutors decided not to bring charges under unspecified state statutes does not suggest there is no probable cause to believe that Defendants have violated federal law. Moreover, the United States has explained that the Minnesota's Attorney General and St.

Paul's City Attorney's decisions not to file state charges against Defendants appears to reflect partisan and discriminatory application of state law. Doc. 867 at 24-29. Their non-prosecution of state law does not provide a basis for questioning the Government's due application of federal law.

### D. Defendants Are Not Entitled to a Presumption of Vindictiveness.

A "presumption of regularity supports … prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted). A "defendant seeking to overcome that presumption faces a heavy burden." *United States v. Fenner*, 600 F.3d 1014,1021 (8th Cir. 2010) (discussing the presumption of regularity in grand-jury proceedings).

Defendants cannot meet this heavy burden. As discussed above, they are incorrect that they have been "prosecuted because of their expressions against the Trump Administrations unprecedented ICE operations in Minnesota." Mot. 37. This prosecution is supported by probable cause, and their conduct is unprotected by the First Amendment.

Even if a presumption of vindictiveness arises, this Court should deny Defendants' motion. The presumption can "be overcome by objective evidence justifying the prosecutor's action[s]." *United States v. Graham*, 323 F.3d 603,

608 (8th Cir. 2003). As discussed above, the objective evidence demonstrates the existence of probable cause justifying the charges against Defendants.

## III. <u>This Court Should Not Allow Discovery Regarding the Selective and Vindictive Prosecution Claims.</u>

Defendants seek "targeted discovery in support of their claims of selective and vindictive prosecution" and an evidentiary hearing. This Court should deny their requests.

Discovery "imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. They "must establish a prima facie case of selective prosecution before discovery of materials requested in connection with the claim can be compelled." *Parham*, 16 F.3d at 846. As discussed above, Defendants cannot establish a prima facie case of selective prosecution, so "the burden [does not] shift[] to the government to disprove defendant's case at an evidentiary hearing." *Wilson*, 806 F.3d at 176.

Likewise, this Court should not order discovery into the vindictive-prosecution claim. There is no need for a hearing or discovery into the United

States' motives because, given the existence of probable cause, Lemon has failed to "raise a significant doubt that the government's decision to prosecute was [not] vindictive." *United States v. Abdi*, 2024 WL 323577, at *4 (D. Minn. Jan. 29, 2024).[3]

[3] Defendants' proposed discovery requests call for attorney work product or documents protected by executive or attorney-client privilege, which the United States. Mot. 47 (App. A). The United States reserves the right to raise these and other objections to Defendants' proposed discovery requests if this Court orders discovery. Any objections at this time would be premature.

## CONCLUSION

Defendants' motion to dismiss for selective and vindictive prosecution should be denied.[4]

DATED: October 16, 2026.

DANIEL N. ROSEN
United States Attorney

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Deputy Assistant Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/ Joshua R. Zuckerman*
JOSHUA R. ZUCKERMAN
Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: joshua.zuckerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[4] This brief contains 4,672 words, excluding the caption, table of contents, and signature block.