**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NEKIMA VALDEZ LEVY ARMSTRONG, *et al.*,<br><br>Defendants. | No. 0:26-cr-00025-LMP-DLM<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT AUSTIN'S MOTION TO DISMISS FOR FAILURE TO STATE AN OFFENSE**<br><br>**(DOC. 97)** |

# TABLE OF CONTENTS


INTRODUCTION ........ 1

PROCEDURAL HISTORY ........ 2

LEGAL STANDARD ........ 4

ARGUMENT ........ 6

I. Count One States an Offense ........ 6

A. The Indictment Adequately Alleges All Three Elements of a Section 241 Violation ........ 7

B. Austin's Motives for Participating in the Alleged Section 241 Conspiracy Are Irrelevant ........ 11

II. Count Two States an Offense ........ 14

A. The Indictment Adequately Alleges All Three Elements of a FACE Act Violation. ........ 15

B. The FACE Act Does Not Require that Austin Acted "Because Of" Religious Exercise ........ 17

III. The Indictment Adequately Alleges Aiding-and-Abetting Liability ........ 22

CONCLUSION ........ 24

## INTRODUCTION

On January 18, 2026, a mob descended on Cities Church in St. Paul, Minnesota, disrupting Sunday services in a premeditated attack. The mob had identified the church's pastor as a federal immigration official. Upon its arrival, the mob trespassed into the church, and physically seized control of a large portion of the nave at the front of the chapel and refused requests to leave. They disrupted the service by blowing whistles and participating in loud chants, which the congregants perceived as threatening and intimidating. Mob members physically obstructed congregants who attempted to move throughout or exit the church and get to their children in a basement classroom. Some congregants feared for their lives, and in the chaos, one fleeing congregant slipped on an icy, unused sidewalk and suffered an elbow injury.

According to the superseding indictment, Austin was a member of this mob and conspired with his codefendants to use force, threat of force, and physical obstruction to interfere with congregants' right of worship at Cities Church. The indictment charges Austin with conspiring against rights in violation of 18 U.S.C. § 241 and violating the Freedom of Access to Clinic Entrance Act ("FACE Act"), 18 U.S.C. § 248(a)(2). Austin moves to dismiss both charges. Doc. 97 ("Mot.").

Austin primarily argues that both counts should be dismissed because the indictment did not allege enough specific facts. It is an elementary principle of criminal law, however, that indictments are "sufficient" if they set forth the offense in the words of the statute itself." *Hamling v. United States*, 418 U.S. 87, 118 (1974). That is true regardless of whether the charged crimes are specific-intent crimes or arise out of so-called "expressive activity." Mot. 5.

Austin's remaining arguments are meritless. He insists that the Section 241 charge should be dismissed because his motive was to protest federal immigration policy, not to disrupt religious worship per se. However, the indictment plainly alleges that Austin *intended* to storm Cities Church and engage in the coordinated conduct that he and his codefendants committed while at the church. Austin's *motives* for doing so make no difference. As to the FACE Act charge, Austin similarly argues that he did not act "because of" hostility towards religious exercise. Mot. 5. However, as the plain text of the FACE Act makes clear, Section 248(a)(2) lacks a "'because of' element require[ing] that the prohibited conduct be motivated by the victim's religious exercise." *Id*.

Accordingly, the motion to dismiss should be denied in its entirety.

## PROCEDURAL HISTORY

On January 29, 2026, a grand jury returned a two-count indictment against Defendant and eight co-defendants. *See generally* Doc. 144. Count

One alleges that Defendant conspired against rights in violation of 18 U.S.C. § 241. Count Two alleges that Defendant violated the FACE Act, 18 U.S.C. § 248(a)(2). On February 26, a grand jury returned a superseding indictment ("indictment") charging the same two counts. Doc. 144.

The indictment details Defendant's participation in the conspiracy to storm of Cities Church, disrupt religious worship, and menace its congregants and pastor. It alleges that Defendants Nekima Valdez Levy Armstrong and Chauntyll Louisa Allen organized "Operation Pullup," which specifically targeted Cities Church. Doc. 144 at 7. Armstrong and Allen led a "pre-operation briefing" at a shopping center, where they informed Defendant "about the target of their operation … and provided instruction on how the operation would be conducted." *Id.* at 9.

After receiving instructions from Armstrong and Allen, Defendant and his codefendants traveled to Cities Church. *Id.* at 11. Armstrong interrupted the service, and in accordance with her instructions, Defendant then "led and/or joined with [his] co-conspirators in various chants … while gesturing in an aggressive and hostile manner, which congregants and the pastor perceived as threats of violence and a potential prelude to a mass shooting." *Id.* at 12. Defendant "physically obstruct[ed] [congregants] as they attempted to exit and/or move about within the Church." *Id.* at 12-13. He also "approached the

pastor and congregants in a menacing manner" and "loudly berated the pastor." *Id.* at 13.

## LEGAL STANDARD

Rule 12(b)(3) imposes minimal burdens on the Government. The Rule allows a defendant to move to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). To defeat a motion to dismiss under Rule 12(b)(3), the Government must show that an "indictment adequately states an offense." *United States v. Sewell*, 513 F.3d 820, 821 (8th Cir. 2000). An adequate indictment must "contain[] all of the essential elements of the offense charged, fairly inform[] the defendant of the charges against which he must defend, and allege[] sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *Id.*

The adequacy standard is not a high bar. "An indictment will ordinarily be held sufficient unless it is so defective that it cannot be said, by any reasonable construction, to charge the offense for which the defendant was convicted." *Sewell*, 513 F.3d at 821; *see also United States v. Just*, 74 F.3d 902, 904 (8th Cir. 1996) (same). Thus, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself." *Hamling*, 418 U.S. at 118. An indictment is "insufficient only if an essential element of substance is omitted." *United States v. White*, 241 F.3d 1015, 1021 (8th Cir. 2021) (quotation marks omitted). As with all other indictments, the United States

must allege each element of the offense and is insufficient only if it fails to do so.

Contrary to Austin's assertion, the Government does not need to satisfy a heightened pleading standard because this case supposedly involves "expressive conduct." Mot. 5. Rule 7 requires only that an indictment contain "the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Rule contains no exception to this pleading standard when a defendant claims his alleged crimes are "expressive conduct."

Austin does not identify any rule, statute, or precedent supporting his theory that Rule 12 "requires the Court to assess whether the indictment alleges clear, particularized facts" when "charged conduct arises in the context of protest activity." Mot 2. Rules 7 and 12 do not mention expressive conduct. Sections 241 and 248 do not address pleading standards. Neither do the cases Austin cites. *See* Mot. 5-6. In *Noto v. United States*, 367 U.S. 290, 300 (1961), the Supreme Court reversed a conviction due to insufficient evidence, and in *United States v. Spock*, 416 F.2d 165, 179 (1st Cir. 1969), the court held that the defendant was entitled to a verdict of acquittal because his speech was constitutionally protected.

Because "[i]t is possible to find some kernel of expression in almost every activity a person undertakes," *Dallas v. Stanglin*, 490 U.S. 19, 25 (1989), Austin's theory would require the Government to meet extra-textual

heightened pleading standards in indictments alleging "an apparently limitless variety of conduct," *United States v. O'Brien*, 391 U.S. 367, 376 (1968). The law does not impose such burdensome requirements on Austin.

## ARGUMENT

### I. Count One States an Offense

Section 241 provides as follows: "If two or more persons conspire to injure, oppress, threaten, or intimidate any person … in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same … , they shall be fined … or imprisoned." 18 U.S.C. § 241. For purposes of the § 241 offense alleged in Count One, there are three elements that must be proved:

1. two or more persons reached an agreement or understanding to injure, oppress, threaten, or intimidate others in the free exercise or enjoyment of the First Amendment right of religious freedom at a place of religious worship, or because they have engaged in the exercise of that right;

2. the defendant voluntarily and intentionally joined in the agreement, knowing its purpose and intending to help accomplish that purpose; and

3. The targeted victim(s) were present in a State, Territory, Commonwealth, Possession, or District of the United States.

*See United States v. McDermott*, 29 F.3d 404, 408 (8th Cir. 1994); *Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* at 205 (2025) (corrected, modified). Although it has done so here, the United States is not required to allege—or even prove—an overt act. *United States v. Rehak*, 2008 WL 2828886, at *10 (D. Minn. July 21, 2008).

### A. The Indictment Adequately Alleges All Three Elements of a Section 241 Violation

Defendant's motion to dismiss Count One should be denied because the indictment alleges "all of the essential elements" under Section 241. *Sewell*, 513 F.3d at 821.

*First*, the indictment alleges the existence of an agreement to injure, oppress, threaten, or intimidate. Austin "conspired and agreed" with his co-conspirators "to injure, oppress, threaten, and intimidate multiple persons." Doc. 144 at 4. Four of his co-conspirators "organized the operation targeting [Cities] Church," and all the co-conspirators met at a prearranged location for a "pre-operation briefing." *Id.* At this briefing, two of the co-conspirators provided instructions "about the target of their operation" and "on how the operation would be conducted." *Id.* at 4-5. In accordance with these instructions, the co-conspirators then traveled to, entered, and disrupted worship in Cities Church. *Id.* at 6-16.

*Second*, the superseding indictment alleges that Austin intentionally joined the conspiracy with the intent to disrupt worship. Doc. 144, at 6, ¶ 8. Defendant argues that the indictment has failed to plead that he knowingly participated in the conspiracy. That is untrue. Count One alleges intent, namely, that all of the defendants "conspired and agreed with one another to oppress, threaten, and intimidate multiple persons, including the clergy, staff, and congregants of the Cities Church, in the free exercise and enjoyment of the rights and privileges secured to them by the laws of the United States." Doc. 144, at ¶ 6. The indictment also alleges that Defendants engaged in a variety of overt acts "[i]n furtherance of the conspiracy and to accomplish the object thereof." *Id.* at ¶ 8.

The United States need not allege specific facts at this time. *Hamling*, 418 U.S. at 118; *Sewell* 513 F.3d 821. Regardless, it has done so. As discussed above, the indictment alleges that Austin attended the "pre-op briefing," received "instruction on how the operation would be conducted," and—pursuant to such instructions—entered Cities Church, acted "in an aggressive and hostile manner," "physically occup[ied]" the main aisle, and "loudly berated the pastor." The United States does not have to prove—much less allege in an indictment—that Austin "organized the protest, planned its objectives, selected the location for the purpose of interfering with worship, instructed others, or agreed in advance to deprive congregants of religious

exercise." Mot. 9. *See United States v. Hewitt*, 999 F.3d 1141, 1147 (8th Cir. 2021) ("mutual knowledge with joint action" can be "probative of conspiratorial agreement").

Under settled law, Defendants are presumed to intend the natural and probable consequences of their actions. *See United States v. Mahoney*, 247 F.3d 279, 283 (D.C. Cir. 2001) (holding that defendant's actions contributed to the obstruction of an abortion clinic and that evidence of intent was sufficient because obstruction was a "foreseeable and intended consequence of his action[s]"); *United States v. Dillard*, 795 F.3d 1191, 1201 (10th Cir. 2015) (holding that the FACE Act's intent requirement may be satisfied from evidence of the act itself because "normally the actor is presumed to have intended the natural consequences of his deeds"). Likewise, intent may be inferred from circumstantial evidence, including all the defendant's words, acts, and omissions. *See United States v. Magleby*, 241 F.3d 1306, 1312. (10th Cir. 2001).

The indictment also alleges specifically that all Defendants, including Austin, intended to interfere with the exercise of federal constitutional or statutory rights, "namely, exercise of the First Amendment right of religious freedom at a place of religious worship, as secured by" the FACE Act. Doc. 144 at 4-5. Austin received instructions on how "to conduct a takeover-style attack" of Cities Church and acted in accordance with those instructions. Doc. 144 at

6. A "conspiracy to violate the FACE Act falls squarely within § 241's prohibition against conspiracies to violate a 'right' secured by the 'laws of the United States.'" *United States v. Oropesa*, 159 F.4th 912, 918 (11th Cir. 2025).

*Third*, the superseding indictment alleges that against the victims, *i.e.*, the congregants and pastors of Cities Church, were present in Saint Paul, Minnesota, within the District and State of Minnesota. Doc. 144 at 2, 3, ¶¶ 1-2, 6.

Notwithstanding the indictment's allegation of Section 241's three elements, Austin argues that the United States has failed to allege unspecified "essential elements" because it "rel[ies] on" unspecified "collective references" to Defendant's co-conspirators. Mot. 10. The United States's use of the terms "defendants," "co-conspirators," and "agitators" as shorthand for lists of all 38 indicted co-conspirators does not negate the fact that indictment adequately alleged all three elements as to Austin. Even though the United States is not required to allege overt acts, the indictment provides some details how Austin conspired with several identified individuals by, for example, attending a briefing led by and receiving instructions from his co-conspirators Armstrong and Allen. Doc. 144 at 4-5.

Because the indictment alleges all three elements of a Section 241 violation, Austin's motion to dismiss Count One should be denied.

### B. Austin's Motives for Participating in the Alleged Section 241 Conspiracy Are Irrelevant

Austin seeks dismissal of Count One because "the pleaded objective" of the conspiracy was to express "opposition to federal immigration enforcement," not "to stop worship, disrupt religious practice, or intimidate congregants because they were engaged in religious exercise." Mot. 8. That argument "ignores th[e] elementary distinction between intent and motive." *Rosemond v. United States*, 572 U.S. 65, 88 (2014) (Alito, J., concurring in part and dissenting in part). The indictment alleges that Ausin *intended* to interfere with the exercise of religious freedom at a place of religious worship. His *motives* for doing so are irrelevant.

Intent and motive are "fundamentally distinct concepts." *Rosemond*, 572 U.S. at 88 (Alito, J., concurring in part and dissenting in part). Intent "refers to the mental state required by the particular statute which makes the act a crime." *United States v. Kabat*, 797 F.2d 580, 587 (8th Cir. 1986). Motive, in contrast, "reflects the ultimate end sought which compelled the defendant to act." *Id.* "Once … intent has been proven, it is immaterial that a defendant may also have had some secondary, or even overriding" motive. *Id.* By way of illustration, "[w]hen Jean Valjean stole a loaf of bread … he certainly intended to commit theft," even though his motive was "to feed his starving family." *Rosemond*, 572 U.S. at 88 (Alito, J., concurring in part and dissenting in part).

Section 241 is a specific-intent statute, not a specific-motive statute. It "require[s] that the offender must act with a specific *intent* to interfere with the federal rights in question," *United States v. Guest*, 383 U.S. 745, 754-55 (1966) (emphasis added), *i.e.*, an "intent to accomplish the precise criminal act that [he] is later charged with," *United States v. Robertson*, 606 F.3d 943, 954 (8th Cir. 2010). Section 241 does not, however, require that the offender must act with a specific *motive* to interfere with federal rights. *See Anderson v. United States*, 417 U.S. 211, 226 (1974) ("A single conspiracy may have several purposes, but if one of them—whether primary or secondary—be the violation of a federal law, the conspiracy is unlawful under federal law.").

Because Section 241 contains an intent requirement, not a motive requirement, the United States need not allege that Austin entered into "an agreement to interfere with religious worship as such." Mot. 8. The cases Austin cites confirm this. In *Guest*, the defendants were charged with conspiring to interfere with black citizens' right of interstate travel. The Supreme Court noted that although the prosecution must prove a "specific intent to interfere with a Federal right," that did not require showing of racial animus: "if the predominant purpose of the conspiracy is to impede or prevent the exercise of the right of interstate travel … then, whether or not motivated by racial discrimination, the conspiracy becomes a proper object of [Section 241]." *Guest*, 383 U.S. at 760. And in *Anderson*, defendants conspired to rig a

county election, which resulted in false votes being cast in a federal election. 417 U.S. at 225. The Supreme Court held that defendants "err[ed] in seeking to attach significance to the fact that the primary motive behind their conspiracy was to affect the result in the local rather than the federal election." *Id.*

As *Guest* and *Anderson* instruct, the United States does not have to allege that Austin acted out of religious animus or that his primary motive was "deprivation of religious exercise." Mot. 9. Nor does it matter whether Austin's motive was to participate in a "political protest" or to express his "opposition to federal immigration enforcement and a federal official."[1] Mot 7-8. His "motives do not negative [his] intent under section 241." *United States v. Ehrlichman*, 546 F.2d 910, 931 n.98 (D.C. Cir. 1976).

What matters is whether Austin's *intent* was to interfere with religious exercise, and the indictment alleges that intent. Austin received instruction on how to travel to Cities Church and disrupt a worship service, and he in fact disrupted the service by menacing congregants and the pastor. His "[k]nowledge of location" or "setting," *id.* at 8-9, reinforces that he

---

[1] As the Supreme Court repeatedly has recognized, political motives are not a defense to generally applicable criminal laws. *See United States v. O'Brien*, 391 U.S. 367 (1968); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 578 (1991) (Scalia, J., concurring) (collecting cases).

"purposefully" intended or "consciously desire[d]" to interfere with religious exercise, *United States v. Bailey*, 444 U.S. 394, 404-05 (1980). That is all the indictment must allege, and it does so.

## II. <u>Count Two States an Offense</u>

Section 248(a)(2) of the FACE Act contains the following three elements:

(1) A defendant used force or threat of force or physical obstruction

(2) The defendant intentionally injured, intimidated or interfered with or attempted to injure, intimidate or interfere with any person

(3) That person was lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship.

*See* 18 U.S.C. § 248(a)(2). The indictment adequately alleges these three elements. Contrary to Austin's reading of the statute, there is no additional element requiring that he acted "[b]ecause of … the victim's religious exercise." Mot. 11 (quotation marks omitted). He mistakenly relies on the very different language in subsection 248(a)(1), the clinic-access provision, which has a "because of" element. The indictment further adequately alleges aiding-and-abetting liability. Austin's motion to dismiss Count Two therefore should be denied.

### A. The Indictment Adequately Alleges All Three Elements of a FACE Act Violation.

Austin's motion to dismiss Count Two should be denied because the indictment alleges "all of the essential elements" under Section 248(a)(2). *Sewell*, 513 F.3d at 821.

*First*, the indictment states that Austin used "force, threat of force, and physical obstruction." Doc. 144 at 18. That is enough to defeat a motion to dismiss because, again, "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself." *Hamling*, 418 U.S. at 118. The United States plainly has alleged force, threat of force, or physical obstruction and therefore is not seeking to "impose liability based on location alone" or due to Austin's mere presence at Cities Church. Doc. 12.

The United States is not required to plead specific "facts sufficient to satisfy the statute's definition" of "physical obstruction," Mot. 13-14, but it nevertheless did. The FACE Act defines "physical obstruction" as "rendering impassable ingress to or egress from … a place of religious worship, or rendering passage to or from such a … place of religious worship unreasonably difficult or hazardous." 18 U.S.C. § 248(e)(4). As Austin acknowledges, the indictment alleges that he "stood in or near aisles during the service." Mot. 13. Specifically, the indictment alleges that Austin "stood with other agitators in and around the main aisles in the Church to intimidate the Church members

and obstruct their freedom of movement [and] approached the pastor and congregants in a menacing manner." Doc. 144 at 13. The "physical obstruction" element does not require conduct that rises to the level of "chaining oneself to block an entrance." Mot. 12. Whether the obstruction was successful is "beside the point." *New York v. Rescue*, 705 F. Supp. 3d 104, 124 (S.D.N.Y. 2023).

*Second*, the indictment alleges that Austin intentionally injured, intimidated, or interfered with Cities Church's congregants and pastor.[2] The indictment states that Defendant "intentionally injured, intimidated, and interfered with … multiple persons." Doc. 144 at 4. More allegations are not required because the language used "track[s] the statutory language" and is therefore "sufficient." *Sewell*, 513 F.3d at 821. Nevertheless, the indictment again went beyond the bare minimum by further alleging that Austin sought to "intimidate" and "menac[e]" the pastor and congregants and that he interfered with their religious worship by "loudly berat[ing] the pastor" during the religious service. Doc. 144 at 13.

---

[2] Austin does not dispute that the indictment adequately alleges this element. On the contrary, he acknowledges that the "indictment alleges that [he] … confronted the pastor." Mot. 10. *See New York v. Operation Rescue Nat.*, 273 F.3d 184, 195 (2d Cir. 2001) (allegations that defendant "often confronts patients at close range" pleaded a civil FACE Act violation).

*Third*, the indictment alleges that Austin's victims were lawfully exercising the First Amendment right of religious freedom at a place of religious worship. Cities Church "is a Christian house of worship" and that Defendant and his co-conspirators disrupted "a liturgical service." Doc. 144 at 2.

Because the indictment alleges all three elements of a Section 248(a)(2) FACE Act violation, Austin's motion to dismiss should be denied.

### B. The FACE Act Does Not Require that Austin Acted "Because Of" Religious Exercise

The Court should reject Austin's effort to rewrite the FACE Act by grafting a "because of" requirement onto Section 248(a)(2). Under Austin's version of the FACE Act, he cannot be held liable for storming Cities Church, harassing its pastor and congregants, and physically obstructing terrified worshippers who sought to flee unless he "sought to prevent prayer [or] disrupt worship as such." Mot. 15. But the FACE Act does not "require[] that the prohibited conduct be undertaken because the victim was exercising or seeking to exercise religious freedom." Mot. 14. Instead, the FACE Act criminalizes any use of "force or threat of force or … physical obstruction" that "intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship,"

regardless of whether a defendant intends to interfere with religious worship as such. 18 U.S.C. § 248(a)(2).

**1.** Section 248(a)(2) lacks what Austin calls a "motive requirement." Mot. 14. Statutory context makes this clear.

The FACE Act prohibits three categories of conduct. Specifically, Section 248(a) provides that "whoever—"

> (1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person *because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services*;
>
> (2) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of religious worship; or
>
> (3) intentionally damages or destroys the property of a facility, or attempts to do so, *because such facility provides reproductive health services*, or intentionally damages or destroys the property of a place of religious worship,
>
> shall be subject to the [criminal] penalties provided in subsection (b).

18 U.S.C. § 248(a) (emphasis added).

Subsection (a)(2), in notable contrast, contains no motive requirement or "because of" language; the word "because" is absent. Thus, a defendant who

uses force, threat of force, or physical obstruction to intentionally injure, intimidate, or interfere with the exercise of religion in a church is guilty of violating subsection (a)(2) regardless of whether he is motivated by religious animus, political grievances, an employment dispute with the church's board, or a completely irrational motive such as a parking ticket. In other words, a defendant's motive is irrelevant.

"The different language" in subsections (a)(1) and the reproductive-health-facilities clause of (a)(3) on one hand, and (a)(2) on the other, confirms "that they have different meanings." *Iowa v. Wright*, 154 F.4th 918, 944 (8th Cir. 2025). While subsection (a)(1) and the reproductive-health-facilities clause of subsection (a)(3) contain a motive requirement, subsection (a)(2) does not. Subsection (a)(1) prohibits only conduct motivated by the "express purpose of preventing such persons from obtaining or providing reproductive health services." *United States v. Wilson*, 2 F. Supp. 2d 1170, 1171 (E.D. Wis. 1998). It does not prohibit all "force or threat of force or … physical obstruction" at or near reproductive-health facilities, such as a financially motivated armed robbery of a doctor. Likewise, the reproductive-health-facilities clause of subsection (a)(3) applies only to defendants who destroy property "because such facility provides reproductive health services." 18 U.S.C. § 248(a). It does not extend to all destruction of the property of reproductive-health facilities, such as random acts of vandalism.

Congress included a motive requirement in subsection (a)(1) and the reproductive-health-facilities clause of (a)(3), which "shows that when Congress intended" to create a motive requirement for prohibited conduct under the FACE Act, "it knew how to do so." *Custis v. United States*, 511 U.S. 485, 492 (1994). But the "omission of similar language" from subsection (a)(2) "indicate[s] that [Congress] did not intend" to create a corresponding motive requirement for attacks on worshippers. *Id.*

The omission of a motive requirement from subsection (a)(2) reflects a deliberate congressional choice to treat attacks on houses of worship, clergy, and congregants differently from attacks on reproductive-health facilities, doctors, and patients. The place-of-religious-worship clause of subsection(a)(3) reflects the purposeful nature of Congress's decision. The reproductive-health-facilities clause prohibits the "intentional[]" destruction of "the property of a facility, or attempts to do so, *because such facility provides reproductive health services*." 18 U.S.C. § 248(a)(3) (emphasis added). Thus, while the FACE Act prohibits "spraypaint[ing] threatening messages on crisis-pregnancy centers" because the perpetrator wants to promote abortion rights, *Oropesa*, 159 F.4th at 913, it does not prohibit spraypainting a crisis pregnancy center because a vandal thinks the center is ugly. In contrast, the place-of-religious-worship clause of subsection (a)(3) prohibits any "intentional[]" destruction of "the property of a place of religious worship," without exception. *Id.* The

desecration of a temple is categorically prohibited under the FACE Act, regardless of whether the perpetrator is an antisemite who spraypaints a swastika on the door or is an architecture critic who thinks the temple's door would look better if adorned with red spray paint.

**2.** Austin argues that the indictment should be dismissed because his motive was to express "opposition to federal immigration policy" rather than to "target congregants because they were engaged in religious exercise." Mot. 14-15. He overlooks the absence of a motive requirement in subsection (a)(2), Mot. 14-15, and again ignores the "elementary distinction between intent and motive." *Rosemond*, 572 U.S. at 88 (Alito, J., concurring in part and dissenting in part).

Eighth Circuit precedent does not support Austin's argument that "FACE Act convictions have been upheld only where" the prohibited conduct was "undertaken because of the victim's exercise of religious freedom." Mot. 12. There has never been a prosecution under subsection (a)(2) in the Eighth Circuit. The cases Austin cites (Mot. 12) were brought under subsection (a)(1) and therefore say nothing about subsection (a)(2)'s lack of a motive requirement. Austin misreads *United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996), as upholding a FACE Act conviction. Mot. 12. *Dinwiddie* is a civil case brought under subsection (a)(1), and the Eighth Circuit held that (as here) politically motivated speech loses its constitutional protection when the

speaker physically obstructs protected individuals. *Dinwiddie*, 76 F.3d at 924-926. *United States v. Hart*, 212 F.3d 1067, 1070-1072 (8th Cir. 2000), upheld criminal liability for a bomb threat under subsection (a)(1) and, like *Dinwiddie*, recognizes that a defendant's political motivations does not grant him a free pass to use force, threats of force, or physical obstruction.

Perhaps Ausin sought to highlight that in these subsection (a)(1) cases, FACE Act liability has been upheld only where the defendant engaged in the prohibited conduct because of the victim's efforts to obtain or provide reproductive-health services. That would be correct; subsection (a)(1) has a "because of" element. Subsection (a)(2) does not.

## III. **The Indictment Adequately Alleges Aiding-and-Abetting Liability**

The indictment also invokes aiding-and-abetting liability under 18 U.S.C. § 2, which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Under Section 2, "those who provide knowing aid to persons committing federal crimes, with the intent to facilitate the crime, are themselves committing a crime." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.,* 511 U.S. 164, 181 (1994).

The indictment alleges that Austin and his co-conspirators "each aid[ed] and abett[ed] one another." Doc. 144 at 18. That "track[s] the statutory

language" of Section 2. *Sewell*, 513 F.3d at 821. The United States must prove at trial that Austin had "advance knowledge that another person would engage in conduct prohibited by the FACE Act." Mot. 15. It does not have to allege anything more at the indictment stage.

In any event, the indictment details how Austin aided and abetted his co-conspirators' FACE Act violations. A "person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission." *Rosemond*, 572 U.S. at 76. The indictment alleges that Austin met with his co-conspirators and received instructions on how "to conduct a takeover-style attack" on Cities Church. Doc. 144 at 6. That shows Defendant's intent. The indictment also alleges Defendant then participated in that attack. *Id.* at 6-16. That establishes Defendant's "requisite act."

## CONCLUSION

For the foregoing reasons, Austin's motion to dismiss for failure to state an offense should be denied.[3]

DATED: October 16, 2026.

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

HARMEET K. DHILLON
Assistant Attorney General

ROBERT J. KEENAN
Acting Dep. Asst. Attorney General

NEVILLE S. HEDLEY
Acting Senior Litigation Counsel

*/s/ Joshua R. Zuckerman*
JOSHUA R. ZUCKERMAN
Attorney
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
Telephone: (202) 514-3847
E-Mail: joshua.zuckerman@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

[3] This brief contains 4,988 words, excluding the caption, table of contents, and signature block.